## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

Case No. 4:24-cv-342-AW

PATRICK HORSMAN,

     Plaintiff,

v.

BRETT JEFFERSON,
RYAN ANDREWS, and
ANDREWS LAW FIRM, P.A.,

     Defendants.

_____/

## <u>FIRST AMENDED COMPLAINT</u>

Plaintiff Patrick Horsman files this First Amended Complaint against Defendants Brett Jefferson, Ryan Andrews, and Andrews Law Firm, P.A. ("Andrews Law").

## <u>INTRODUCTION</u>

1.    Jefferson and Andrews maliciously used fake names to spread damaging lies about Plaintiff online, ruining his reputation. Jefferson is a repeat offender with a history of defamation who continues to defame victims despite previous legal consequences, demonstrating that prior punitive damages were insufficient to deter him. As a result of Defendants' lies, Plaintiff's career has been destroyed. He is seeking $40 million in compensatory damages and $160 million in punitive damages from Jefferson to hold him accountable for his malicious actions.

## PARTIES

2. Plaintiff Horsman is a natural person and a citizen of Puerto Rico.

3. Defendant Jefferson is a natural person and a citizen of Florida.

4. Defendant Andrews is a natural person and a citizen of Florida.

5. Defendant Andrews Law is a Florida corporation with a principal place of business at 822 N. Monroe Street, Tallahassee, FL 32303, and is therefore a citizen of Florida.

## JURISDICTION AND VENUE

6. There is complete diversity between the parties under 28 U.S.C. § 1332. Plaintiff is a citizen of Puerto Rico and Defendants are citizens of Florida.

7. The amount in controversy requirement of 28 U.S.C. § 1332 is satisfied as more than $75,000 is at issue, exclusive of costs, interest and attorneys' fees.

8. Jefferson is subject to both general and specific personal jurisdiction in Florida. This is because, at the time of the complaint's filing, Jefferson was a resident and citizen of Florida, maintaining substantial and continuous contact with the state since at least early 2021. His activities during this period included residing in Florida, being physically present in Florida, engaging in electronic communications from within and directed into Florida, and conducting a significant portion of discussions, transactions, and lawsuit-related activities within Florida. Furthermore, Jefferson's publication of defamatory material was purposefully directed at Florida.

His wrongful acts within Florida ensured that the defamatory statements were accessible and widely viewed in Florida.

9.     Defendant Andrews is subject to general and specific personal jurisdiction in Florida, as he has been a resident and citizen of the state at all relevant times, and he undertook all actions relevant to this matter from within Florida.

10.     Citizens of Florida accessed, read, and understood the defamatory statements while residing in Florida.

11.     Andrews Law is Andrews' employer, operating solely in Florida, and the only Andrews Law office is located in Tallahassee, Florida.

12.     Venue is proper in this Court.

## FACTS COMMON TO ALL ALLEGATIONS

13.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

### Jefferson's Motive for Defaming Plaintiff

14.     Jefferson's motive for defaming Plaintiff stems from Jefferson's 2020 threat to ruin Plaintiff's career unless Plaintiff paid him $3.65 million to cover Jefferson's investment loss in a startup company.

15.     In May 2019, Jefferson, through a corporate entity, loaned $2.5 million to an Arizona-based CBD startup, Integrated CBD, LLC ("Integrated CBD"), where Plaintiff was a principal and investor.

16.    Jefferson was enthusiastic about his investment in Integrated CBD and he encouraged others to invest as well, ultimately leading to an additional $1.15 million being loaned to the company.

17.    By November 2019, regulatory action caused the CBD market to crash, forcing Integrated CBD into a liquidation ordered by the senior lender, a common outcome for CBD startups at that time.

19.    When Integrated CBD failed, both Jefferson and Plaintiff lost their investments. Jefferson and his associates lost $3.65 million as junior lenders, and Plaintiff lost $1.3 million as an equity investor.

20.    Jefferson felt particularly embarrassed in front of his associates because he had not only recommended the failed investment but also negotiated an intercreditor agreement which essentially waived the junior lenders' legal recourse.

21.    By August 2020, when Jefferson realized his investment was lost, he became hostile towards Plaintiff and threatened to ruin his career if he and his associates were not repaid the $3.65 million.

22.    When Plaintiff declined, Jefferson threatened to disparage him to investors involved in "all" of Plaintiff's "deals" if the payment was not made.

23.    In August 2020, Jefferson escalated his threats against Plaintiff, explicitly stating his intent to destroy Plaintiff's career if he and his associates were

not repaid. Jefferson has a history of making violent threats, which he admitted to under oath. He enlisted Andrews to pressure Plaintiff for payment.

24.    On August 19, 2020, Jefferson sent Plaintiff the following email:

I am completely fed up with your bullshit. Everything you do has an excuse to why (sic) it wrong. But the simple (sic) the fact is you are a crook. Plain and simple a crook…

In addition, I will (sic) contacting CNBC to sell you "Patrick the scam artist" to American Greed so they can also alert everyone. Please note that I will also be contacting major media contacts I have to make sure that know about your antics. Finally, I know you think you are well protected because you showed up with some "super lawyer" but after everything I have learned it won't be hard to get you put away. Ryan [Defendant Ryan Andrews] has been speaking with some "whistleblowers" former employees, **and to put into plain English, you are fucked. Patrick Fuck You we are going to war!!**

(Emphasis added).

25.    Jefferson has a documented history of violence, reckless behavior, and using his wealth to harm others. For example, after being ordered to pay compensatory and punitive damages for defamation, Jefferson declared that he would only pay the judgment in coins, a deliberately disrespectful tactic that highlights his malicious character.

26.    Jefferson's defamation tactics have grown more sophisticated due to his collaboration with Andrews, who has acted as his agent and co-conspirator.  To conceal his involvement in the defamation campaign, Jefferson routed payments to the USA Herald's operator through the Andrews Law Firm trust account. Andrews

was formerly employed by the USA Herald's operator. This close relationship between Jefferson, Andrews, and the USA Herald's operator facilitated the publication of defamatory material about Plaintiff.

<u>The August 27, 2022 Defamatory Remcoda Article</u>

27.    On August 27, 2022, Jefferson and Andrews made defamatory statements about Plaintiff to the USA Herald's operator during phone calls. They then instructed the operator to publish and re-publish these statements online using the pseudonym "Catherine Davis."

28.    "Catherine Davis" and "Jeff Watterson" are among a roster of pseudonyms, with AI-generated images, that Jefferson and Andrews use to publish defamatory content about their adversaries including Plaintiff:



The pseudonym Jeff Watterson's AI-generated USA Herald likeness (on left) is inconsistent with its AI-generated LinkedIn photograph (on right).

29.     On August 27, 2022, after Jefferson and Andrews made defamatory statements about Plaintiff to the USA Herald's operator during phone calls, Andrews drafted, edited, and revised a defamatory article about Plaintiff dated August 27, 2022, while in Florida, both for himself and on behalf of Jefferson. This article mirrored the defamatory content they conveyed to the USA Herald's operator.

30.     Andrews, acting on behalf of himself and Jefferson, used his Andrews Law email to send defamatory material about Plaintiff to the USA Herald's operator, who then published it online as instructed by Jefferson and Andrews (the "August 27, 2022 Defamatory Remcoda Article").

31.     Accordingly, Jefferson and Andrews used the pseudonym "Catherine Davis" to publish the August 27, 2022 Defamatory Remcoda Article online with the help of the USA Herald's operator. This article contained the defamatory content created by Andrews.

32.     The August 27, 2022 Defamatory Remcoda Article, titled "Patrick Horsman and partner Russel [sic] Gross [sic] involvement in $3.7M alleged fraud," is defamatory. The headline falsely implicates both Plaintiff and Gross in a $3.7 million fraud purportedly related to *Remcoda, LLC v. Ridge Hill Trading Ltd.*, No. 1:21-cv-00979 (S.D.N.Y. filed Feb. 3, 2021).

33.    The August 27, 2022 Defamatory Remcoda Article prominently displayed a misappropriated photograph of Plaintiff directly beneath the false headline alleging his involvement in a $3.7 million fraud.

34.    The first sentence of the August 27, 2022 Defamatory Remcoda Article falsely states: "A lawsuit between Remcoda, LLC, and defendants... Russel [sic] Gross, and the *involvement of his partner*, *Patrick Horsman*, is *ever evolving*." (Emphasis added). But Plaintiff was never named in the Remcoda lawsuit or even mentioned anywhere in any complaint in that case.

35.    April 25, 2022 Second Amended Complaint in the Remcoda case does not mention "Unicorn Health LLC," despite its reference in the August 27, 2022 Defamatory Remcoda Article.

36.    The August 27, 2022 Defamatory Remcoda Article falsely claims that "Russel [sic] Gross, and his business partner Patrick Horsman's company Unicorn Health, were allegedly working with the defendants from the start... Russel [sic] Gross and Horsman's company allegedly received payment of their fee from Remcoda's funds that the defendants wrongfully withheld."

37.    These statements in the August 27, 2022 Defamatory Remcoda Article are false and inconsistent with the Second Amended Complaint, their supposed source. This is a comparison of the allegations in the Second Amended with the defamatory statements in the August 27, 2022 Defamatory Remcoda Article:

| Second Amended Complaint at ¶ 75 | Defamatory Statements in the Defamatory Article |
|---|---|
| Gross, ***upon information and belief,*** was working with Defendants from the start when he introduced Plaintiff to Ridge Hill as part of Defendants' scheme. Gross, ***upon information and belief,*** received payment of his fee from Plaintiff's funds that Defendants have wrongfully withheld. (Emphasis added). | Russel Gross, ***and his business partner Patrick Horsman's company Unicorn Health***, were allegedly working with the defendants from the start when they introduced Remcoda to Ridge Hill as part of their overall alleged scheme. Russel [sic] Gross ***and Horsman's company*** allegedly received payment of his fee from Remcoda's funds that the defendants wrongfully withheld. (Emphasis added). |

38.    In the August 27, 2022 Defamatory Remcoda Article, Jefferson and Andrews deliberately altered the allegations from paragraph 75 in the Second Amended Complaint, removing "upon information and belief" (indicating a lack of direct evidence) and replacing it with false statements about Plaintiff and Unicorn Health.

39.    In the August 27, 2022 Defamatory Remcoda Article, Jefferson and Andrews misleadingly stated that the Remcoda Lawsuit is "ever evolving," while prominently displaying Plaintiff's photo under this headline, thereby creating the false impression that Plaintiff is involved in the alleged $3.7 million fraud.

40.    Jefferson and Andrews' actions in September 2022, after receiving a cease and desist letter, further demonstrate their malicious intent. After receiving a cease and desist letter, Jefferson and Andrews instructed the USA Herald's operator

to further publish and republish the defamatory content, this time through a new pseudonym, "Rich Williams." Jefferson and Andrews directed the USA Herald's operator to contact Valuewalk to republish online under a different publication to further disseminate the defamatory content. The republishing by Valuewalk, as directed by Jefferson and Andrews, occurred on September 6, 2022.

41.    To further damage Plaintiff's reputation, Jefferson and Andrews purchased sophisticated search engine optimization services to rank the defamatory content in top positions pursuant to a Google search of Plaintiff's name.

<u>The May 29, 2023 Defamatory LGBCoin Article</u>

42.    On May 27, 2023, Jefferson initiated another round of defamation by emailing the USA Herald's operator from his joeyrocks99@protonmail.com address a legal document, the Second Amended Complaint, that did not accuse Plaintiff of any wrongdoing. *De Ford v. Koutoulas, et al* No. 6:22-cv-00652 (M.D. Fla. Filed Apr. 1, 2022) (the "LGBCoin lawsuit").

43.    On May 28, 2023, Jefferson and Andrews provided the USA Herald's operator with defamatory information about Plaintiff during a phone call, or calls. They instructed the USA Herald's operator to publish and republish this material in a fake news story attributed to a fictitious journalist.

44.    The next day, Andrews emailed the defamatory content discussed on the calls to the USA Herald's operator from his Andrews Law email address. This

was done on behalf of both himself and Jefferson, with the intention of publishing,

republishing, and further disseminating the defamatory material.

45.    On May 29, 2023, Jefferson and Andrews published the defamatory

article titled "Patrick Horsman & Business Partner Thomas McLaughlin Wrapped

up in LGBCoin Class Action Lawsuit" under the pseudonym "Catherine Davis."

They knew Plaintiff was not a party in the 104-page Second Amended Complaint.

> https://web.archive.org/web/20230926013630/https://usaherald.com/patrick-
> horsman-business-partner-thomas-mclaughlin-wrapped-up-in-lgbcoin-class-
> action-lawsuit/ (visited November 8, 2024).

46.    The May 29, 2023 Defamatory LGBCoin Article refers to a "104 page

class-action lawsuit," which is the 104 page Second Amended Complaint dated July

19, 2022 in which Plaintiff is not a party.

47.    The May 29, 2023 Defamatory LGBCoin Article falsely states:

> Thomas McLaughlin, co-founder of LGBCoin and business partners
> with Patrick Horsman at Coral Defi (Coral Capital Management, LLC),
> is accused of fraud along with unjust enrichment in a 104 page class-
> action lawsuit filed on behalf of investors that lost money in an alleged
> cryptocurrency scam.

48.    The statement is false as Plaintiff was not "accused of fraud" or unjust

enrichment in the 104-page class-action lawsuit. Moreover, Plaintiff did not engage

in any fraud.

49.    The May 29, 2023 Defamatory LGBCoin Article also falsely states:

> The class action lawsuit alleges that Coral Defi, Coral Capital LLC,
> Coral Capital Management LLC, all owned by Patrick Horsman (he is

11

listed at the Managing Member/Co-Founder), defrauded investors in the LGBCoin Cryptocurrency Pump & Dump scheme and attempted to hide their role through a complex web of transactions.

50.    In the May 29, 2023 Defamatory LGBCoin Article, Jefferson and Andrews further falsely state that Plaintiff owns Coral DeFi, Coral Capital LLC, and Coral Capital Management LLC, and that these companies "defrauded investors." This is false. The 104-page complaint does not allege any fraud by Plaintiff or these companies. The only claim against the "Coral Defendants" is unjust enrichment, and Plaintiff is not even a party to that claim per the actual pleading.

51.    On May 30, 2023, Jefferson and Andrews instructed the USA Herald's operator to impersonate a fictitious journalist named "Jeff Watterman" and email Aaron Zigler, Plaintiffs' attorney in the LGBCoin lawsuit, the following:

> Our publication has previously covered a number of scams that Patrick Horsman, the Managing Member of Coral DeFi, has been involved in.  We published an article yesterday on the case and would appreciate if you would give us updates on the case so we can keep it in the news cycle: https://usaherald.com/patrick-horsman-business-partner-thomas-mclaughlin-wrapped-up-in-lgbcoin-class-action-lawsuit/
>
> You may want to consider amending your complaint to add Patrick Horsman individually since he is the one that is operating the Coral companies but largely stays behind the scenes.

The "May 30, 2023 Defamatory Email."

52.    The May 30, 2023 Defamatory Email falsely claims that Plaintiff was involved in "a number of scams." This so-called "coverage" deceptively refers to

the defamatory articles published by Defendants or on Defendants' behalf under
pseudonyms. By suggesting that Zigler amend the complaint to add Plaintiff,
Jefferson and Andrews demonstrated their knowledge that, despite falsely stating
otherwise, Plaintiff was not even a party in the Second Amended Complaint.

53.     On May 30, 2023, Jefferson emailed the USA Herald's operator from
his joeyrocks99@protonmail.com address. He attached a pleading from a Florida
case involving Plaintiff, which prompted this response:

> Under the first 15k I will do another article on the LGBCoin case,
> pushing to get the lawyer to add Horsman [Plaintiff] individually and I
> will work to shift social media to pointing Horsman [Plaintiff] as the
> "guy behind the iron curtain."   FYI I have already gotten crypto media
> outlets to pick up the story, check it: https://cryptosaurus.tech/patrick-
> horsman-and-business-partner-thomas-mclaughlin-wrapped-up-in-
> lgbcoin-class-action-lawsuit/
>
> I'll do the Bachow v Horsman article for another $15k, it's a 74 page
> complaint and needs a lot of research.  We'll write 2 articles on it.   It
> will take 3-4 days to get the first article one, need to fully research.  Will
> tie it into the other 2 articles.  Deal?

54.     On June 7, 2023, Jefferson and Andrews instructed the USA Herald's
operator to republish the defamatory content from the May 29, 2023 Defamatory
LGBCoin Article in a press release. As directed, the operator then emailed Jacobson
Strategy and requested a republication with specific instructions on how to
disseminate the defamatory content, including the use of keywords "Patrick
Horsman Coral" in the title and throughout. Jacobson Strategy then republished the
defamatory content as ordered by Jefferson and Andrews.

55.    In June 2023, Jefferson and Andrews purchased additional search engine optimization, syndications, backlinking, and reciprocal cross-linking to ensure the widespread dissemination of the May 29, 2023 Defamatory LGBCoin Article. One such republication appeared on June 26, 2023, and can be found at https://menafn.com/1106513149/Patrick-Horsman-Of-Coral-Capital-Slapped-With-Class-Action-Lawsuit (visited November 8, 2024).

56.    Jefferson's defamation campaign against Plaintiff was not an isolated incident. He has a documented history over many years of using similar tactics, including pseudonyms, encrypted communications, and fabricated allegations, to defame others and destroy their reputations. This pattern of behavior demonstrates his malicious intent.

57.    Jefferson severely damaged Plaintiff's reputation, built over his entire career. By mid-2024, Plaintiff identified at least 45 websites hosting or syndicating the defamatory content published by Jefferson and Andrews.

58.    Jefferson and Andrews' defamation campaign caused millions of dollars in damages to Plaintiff across various areas, with the damage numbers substantiated by an expert witness.

- **Economic Losses**: Plaintiff was ousted from multiple businesses, lost equity, and faced client redemptions. Business partners severed ties, Plaintiff was barred from meetings and had his email access revoked due to the defamatory allegations which were prominently featured in a Google search of Plaintiff's name. Other ventures refused to work with him, and he lost the ability to raise capital.

- **Financial Difficulties**: Financial institutions closed his accounts, denied him new ones, and refused credit, loans, and trading accounts. Banks canceled his credit lines and loans, and investment opportunities dried up.

- **Social and Personal Impact**: Plaintiff was asked to resign from his country club and was denied membership in another. The false accusations of fraud deterred investors and partners, causing significant reputational and financial harm. His income drastically decreased, and his future business prospects diminished.

59.    Andrews Law, as Andrews' employer at all relevant times, is vicariously liable for Andrews' actions conducted within the scope of his employment. Andrews Law actively participated in, condoned, approved, and ratified Andrews' conduct related to publishing defamatory statements about Plaintiff. However, a significant portion of Andrews' conduct, acting individually, as Jefferson's agent, or pursuant to a conspiracy with Jefferson, fell outside the scope of legitimate legal representation.

60.    Jefferson and Andrews conspired and entered into an agreement to jointly take steps for the common goal of ruining Plaintiff's reputation and severely damaging Plaintiff's future economic prospects.

61.    At all relevant times, the USA Herald's operator acted as an agent for both Jefferson and Andrews.

## COUNT ONE – DEFAMATION PER SE

### The August 27, 2022 Defamatory Remcoda Article against all Defendants, Jointly and Severally

62.    Plaintiff incorporates by reference all the allegations in Paragraphs 1-61 as if fully set forth herein.

63.    Jefferson and Andrews published false statements to third parties regarding Plaintiff materially in the form of the content in the August 27, 2022 Defamatory Remcoda Article.

64.    Jefferson and Andrews' publications and re-publications of defamatory content regarding Plaintiff include:

I.    **August 27, 2022**: Jefferson and Andrews made verbal statements to the USA Herald's operator during phone calls, instructing him to publish the defamatory content online using the pseudonym "Catherine Davis."

II.    **August 27, 2022**: Andrews emailed the USA Herald's operator with the text of the August 27, 2022 Defamatory Remcoda Article, again instructing him to publish it online under the pseudonym "Catherine Davis."

III.    **August 27, 2022**: Jefferson and Andrews published the defamatory content online via the USA Herald website, as assisted by the USA Herald's operator, using the "Catherine Davis" pseudonym.

IV.    **September 6, 2022**: The USA Herald's operator, acting on behalf of Jefferson and Andrews, and using the pseudonym "Rich Williams," emailed Valuewalk to further publish online and request additional dissemination of the defamatory content.

V.    **September 6, 2022**: Jefferson and Andrews republished and further disseminated the defamatory content online through Valuewalk.

65.    Jefferson and Andrews acted with actual malice, ill-will, and bad intentions in publishing the false and defamatory content about Plaintiff.

66.    Andrews Law is vicariously liable for Andrews' conduct.

67.    Defendants' conduct directly and proximately damaged Plaintiff, resulting in economic losses, damage to his reputation, and emotional distress.

68.    Defendants' actions were fraudulent, malicious, and oppressive, warranting the imposition of punitive damages in an amount to be determined by the trier of fact.

**COUNT TWO – DEFAMATION PER SE**
**The May 29, 2023 Defamatory LGBCoin Article**
**against all Defendants, Jointly and Severally**

69.    Plaintiff incorporates by reference all the allegations in Paragraphs 1-61 as if fully set forth herein.

70.    Jefferson and Andrews published false statements to third parties regarding Plaintiff materially in the form of the content in the May 29, 2023 Defamatory LGBCoin Article.

71.    Jefferson and Andrews' publications and re-publications include:

I.    **May 28, 2023**: Jefferson and Andrews made verbal statements to the USA Herald's operator during phone calls, instructing him to publish the defamatory content online using the pseudonym "Catherine Davis."

II.    **May 29, 2023**: Andrews emailed the USA Herald's operator with the text of the May 29, 2023 Defamatory LGBCoin Article, again instructing him to publish it online under the pseudonym "Catherine Davis."

17

III. **May 29, 2023**: Jefferson and Andrews published the defamatory content online via the USA Herald website, as assisted by the USA Herald's operator, using the "Catherine Davis" pseudonym.

IV. **May 30, 2023**: The USA Herald's operator, acting on Jefferson and Andrews' behalf, emailed defamatory content about Plaintiff to Plaintiffs' attorney in the LGBCoin case, using the pseudonym "Jeff Watterman."

V. **June 7, 2023**: Jefferson and Andrews republished defamatory content on the USA Herald website in a press release linked to the May 29, 2023 Defamatory LGBCoin Article.

VI. **June 7, 2023**: The USA Herald's operator, acting on Jefferson and Andrews' behalf, emailed Jacobson Strategy to further publish and request additional publication and dissemination of the defamatory content.

VII. **June 26, 2023**: Jefferson and Andrews republished online and further disseminated the defamatory content through Menafn, via Jacobson Strategy, as requested by the USA Herald's operator.

72.    Jefferson and Andrews acted with actual malice, ill-will, and bad intentions in publishing the false and defamatory content about Plaintiff.

73.    Andrews Law is vicariously liable for Andrews' conduct.

74.    Defendants' conduct directly and proximately damaged Plaintiff, resulting in economic losses, damage to his reputation, and emotional distress.

75.    Defendants' actions were fraudulent, malicious, and oppressive, warranting the imposition of punitive damages in an amount to be determined by the trier of fact.

## COUNT THREE - DEFAMATION BY IMPLICATION
### The August 27, 2022 Defamatory Remcoda Article
### against all Defendants, Jointly and Severally

76.    Plaintiff incorporates by reference all the allegations in Paragraphs 1-61 as if fully set forth herein.

77.    Jefferson and Andrews published false statements to third parties regarding Plaintiff materially in the form of the content in the August 27, 2022 Defamatory Remcoda Article.

78.    Jefferson and Andrews' publications and re-publications include:

I.    **August 27, 2022**: Jefferson and Andrews made verbal statements to the USA Herald's operator during phone calls, instructing him to publish the defamatory content online using the pseudonym "Catherine Davis."

II.    **August 27, 2022**: Andrews emailed the USA Herald's operator with the text of the August 27, 2022 Defamatory Remcoda Article, again instructing him to publish it online under the pseudonym "Catherine Davis."

III.    **August 27, 2022**: Jefferson and Andrews published the defamatory content online via the USA Herald website, as assisted by the USA Herald's operator, using the "Catherine Davis" pseudonym.

IV.    **September 6, 2022**: The USA Herald's operator, acting on behalf of Jefferson and Andrews, and using the pseudonym "Rich Williams," emailed Valuewalk to further publish online and request additional dissemination of the defamatory content.

V.    **September 6, 2022**: Jefferson and Andrews republished and further disseminated the defamatory content online through Valuewalk.

79.    Jefferson and Andrews acted with actual malice, ill-will, and bad intentions in publishing the false and defamatory content about Plaintiff.

80.    In addition to publishing false statements, Jefferson and Andrews strategically presented information to create a defamatory impression of Plaintiff by:

- **Juxtaposing facts**: Jefferson and Andrews placed Plaintiff's photograph directly beneath a headline falsely alleging his involvement in a $3.7 million fraud, implying his connection to the fraudulent scheme.

- **Omitting facts**: Jefferson and Andrews failed to mention that Plaintiff was not named or involved in the Remcoda lawsuit, further solidifying the false impression.

- Even if some statements were technically true, they were presented in a misleading manner to create a false impression for the average reader. This deliberate manipulation of information further demonstrates Jefferson and Andrews' malicious intent to defame Plaintiff.

81.    Andrews Law is vicariously liable for Andrews' conduct.

82.    Defendants' conduct directly and proximately damaged Plaintiff, resulting in economic losses, damage to his reputation, and emotional distress.

83.    Defendants' actions were fraudulent, malicious, and oppressive, warranting the imposition of punitive damages in an amount to be determined by the trier of fact.

## COUNT FOUR - DEFAMATION BY IMPLICATION

### The May 29, 2023 Defamatory LGBCoin Article
### against all Defendants, Jointly and Severally

84.    Plaintiff incorporates by reference all the allegations in Paragraphs 1-61 as if fully set forth herein.

85.    Jefferson and Andrews published false statements to third parties regarding Plaintiff materially in the form of the content in the May 29, 2023 Defamatory LGBCoin Article.

86.    Jefferson and Andrews' publications and re-publications include:

I.    **May 28, 2023**: Jefferson and Andrews made verbal statements to the USA Herald's operator during phone calls, instructing him to publish the defamatory content online using the pseudonym "Catherine Davis."

II.    **May 29, 2023**: Andrews emailed the USA Herald's operator with the text of the May 29, 2023 Defamatory LGBCoin Article, again instructing him to publish it online under the pseudonym "Catherine Davis."

III.    **May 29, 2023**: Jefferson and Andrews published the defamatory content online via the USA Herald website, as assisted by the USA Herald's operator, using the "Catherine Davis" pseudonym.

IV.    **May 30, 2023**: The USA Herald's operator, acting on Jefferson and Andrews' behalf, emailed defamatory content about Plaintiff to Plaintiffs' attorney in the LGBCoin case, using the pseudonym "Jeff Watterman."

V.    **June 7, 2023**: Jefferson and Andrews republished defamatory content on the USA Herald website in a press release linked to the May 29, 2023 Defamatory LGBCoin Article.

VI.    **June 7, 2023**: The USA Herald's operator, acting on Jefferson and Andrews' behalf, emailed Jacobson Strategy to further publish and request additional publication and dissemination of the defamatory content.

VII.   **June 26, 2023**: Jefferson and Andrews republished online and further disseminated the defamatory content through Menafn, via Jacobson Strategy, as requested by the USA Herald's operator.

87.    Jefferson and Andrews acted with actual malice, ill-will, and bad intentions in publishing the false and defamatory content about Plaintiff.

88.    In addition to publishing false statements, Jefferson and Andrews strategically presented information to create a defamatory impression of Plaintiff by:

- Employing deceptive tactics to falsely implicate Plaintiff in a fraudulent scheme connected to the LGBCoin lawsuit. For instance, the May 29, 2023 Defamatory LGBCoin Article misleadingly states that Plaintiff's business partner was "accused of fraud" in a 104-page class-action lawsuit. This wording creates the false impression that Plaintiff was also accused of fraud in that pleading, even though he was not.

- Implying that Plaintiff was named in the lawsuit's Second Amended Complaint while deliberately omitting the fact that he was not, Jefferson and Andrews created a false association between Plaintiff and fraudulent activities. This manipulative tactic, combining juxtaposition and omission of crucial information, unfairly damaged Plaintiff's reputation.

89.    Andrews Law is vicariously liable for Andrews' conduct.

90.    Defendants' conduct directly and proximately damaged Plaintiff, resulting in economic losses, damage to his reputation, and emotional distress.

91.    Defendants' actions were fraudulent, malicious, and oppressive, warranting the imposition of punitive damages in an amount to be determined by the trier of fact.

## COUNT FIVE – CIVIL CONSPIRACY
### against all Defendants, Jointly and Severally

92.    Plaintiff incorporates by reference all the allegations in Paragraphs 1-61 as if fully set forth herein.

93.    Jefferson and Andrews formed an agreement to commit an unlawful act or to commit a lawful act by unlawful means. These acts include a calculated, concerted, and malicious effort to inflict maximum damage to Plaintiff's reputation:

- **Concealment and false personas**: Hiding behind fake identities and publishing defamatory content through phony news stories.

- **Engaging others**: Enlisting others, using false names, to republish and spread the defamatory content further.

- **SEO optimization**: Employing search engine optimization tactics to amplify the reach of the defamatory statements, maximizing damage to Plaintiff's reputation and career.

94.    These malicious tactics reveal a deliberate and coordinated campaign by Jefferson and Andrews to destroy Plaintiff's reputation and livelihood. Their actions, undertaken as part of a civil conspiracy, demonstrate a clear intent to inflict harm.

95.    Jefferson and Andrews committed overt acts, as set forth herein, in pursuance and furtherance of the conspiracy.

96.    Andrews Law is vicariously liable for Andrews' conduct.

97.    Plaintiff was damaged as a result of the acts committed under the conspiracy.

## COUNT SIX – AIDING AND ABETTING
### against Jefferson

98.    Plaintiff incorporates by reference all the allegations in Paragraphs 1-61 as if fully set forth herein.

99.    As alleged herein, or in the alternative, Andrews is the primary wrongdoer, and Jefferson is the aider and abetter.

100.    As the aider and abetter, Jefferson has knowledge of the underlying violations and wrongful acts committed by Andrews, as described herein.

101.    Jefferson, as the aider and abetter, has knowledge of the underlying violations and wrongful acts committed by Andrews, as the primary wrongdoer, in the commission of the wrongdoing.

102.    Plaintiff was damaged as a result of the misconduct discussed herein.

## COUNT SEVEN – AIDING AND ABETTING
### against Andrews and Andrews Law

103.    Plaintiff incorporates by reference all the allegations in Paragraphs 1-61 as if fully set forth herein.

104.    As alleged herein, or in the alternative, Jefferson is the primary wrongdoer, and Andrews is the aider and abetter.

105.   As the aider and abetter, Andrews has knowledge of the underlying violations and wrongful acts committed by Jefferson, as described herein.

106.   Andrews, as the aider and abetter, has knowledge of the underlying violations and wrongful acts committed by Jefferson, as the primary wrongdoer, in the commission of the wrongdoing.

107.   Andrews Law is vicariously liable for Andrews' conduct.

108.   Plaintiff was damaged as a result of the misconduct discussed herein.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment in his favor and against Defendants, jointly and severally, as follows:

A.   Compensatory damages in the amount of at least $40 million, payable jointly and severally by all Defendants;

B.   Punitive damages in the amount of $160 million, payable by Defendant Jefferson;

C.   Prejudgment interest;

D.   Costs of collection; and,

E.   Such other and further relief as this Court deems just and proper.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

By:    */s/ Kenneth E. Chase*
Kenneth E. Chase
Florida Bar No. 017661
kchase@chaselaw.com
Chase Law & Associates, P.A.
2700 North Military Trail, Suite 150
Boca Raton, FL 33431
Telephone: (305) 402-9800

*Counsel for Plaintiff Patrick Horsman*

<u>**CERTIFICATE OF SERVICE**</u>

I, Kenneth E. Chase, hereby certify that I served the foregoing via CM/ECF

on November 29, 2024 which serves electronic notice on all counsel of record and

registered CM/ECF users.

By:    */s/ Kenneth E. Chase*
Kenneth E. Chase

# EXHIBIT A

## Patrick Horsman and partner Russel Gross involvement in $3.7M alleged fraud

By **Catherine Davis** - August 27, 2022



A lawsuit between plaintiff Remcoda, LLC, and defendants Ridge Hill Trading (PTY) LTD, Ataraxia Capital Partners PTY LTD, Russel Gross, and the involvement of his partner, Patrick Horsman, is ever evolving.

Remcoda agreed to Gross's terms and provided proof of funds as requested. Satisfied that Remcoda could afford to enter into the transaction and that he would receive his fee, Gross introduced Remcoda to Gunawardhana and Fletcher according to the lawsuit. Gross advised Remcoda that Gunawardhana and Fletcher were agents of Ridge Hill, one of his purported "proprietary manufacturing supply relationships" that would be able to immediately provide Remcoda with nitrile examination gloves.

## Signup for the USA Herald exclusive Newsletter

First Name

First Name

Email Address:

Email Address

Sign up

Prior to Remcoda's transaction with Ridge Hill, however, Remcoda allegedly contracted with Unicorn Health LLC ("Unicorn"), owned by Gross's business partner Patrick Horsman, to act as a broker and introduce Remcoda to potential PPE suppliers. The contract between Remcoda and Unicorn, titled "Procurement Agreement," which was signed by Gross on behalf of Unicorn, expressly described Unicorn's role as being limited to "introduc[ing] the Purchaser [Remcoda] directly to [Unicorn's] supply relationships."

Further allegations detailed in the lawsuit reveal that on July 16th, 2020, Ridge Hill provided a commercial invoice to Remcoda reflecting their order of 629,100 boxes of blue gloves and 722,980 of black gloves for a total purchase price of $9,261,748, which Remcoda would pay in two 50% installments pursuant to the terms of the agreement. On July 20th, Remcoda wired the 50% deposit in the amount of $4,630,874 to Ridge Hill and, pursuant to the agreement, Ridge Hill was required to have the gloves ready for delivery to Remcoda by July 31st.

On July 23rd, in furtherance of the defendant's alleged scheme, Gunawardhana sent Remcoda photographs of boxes of gloves allegedly allocated for Remcoda's order. According to the lawsuit, on July 27th, Gunawardhana again falsely advised Remcoda that "[w]e have got all the stock allocated to us today" and that the goods have already passed an inspection.

Ridge Hill, however, refused to provide proof of such inspection, vaguely claiming that another inspection would be performed. At the same time, on July 27th, Gunawardhana attempted to unilaterally change the terms of the agreement by demanding that Remcoda immediately wire to Ridge Hill the balance of the purchase price (another $4,630,874) without their receipt and acceptance of an inspection report, according to the lawsuit. Remcoda refused and demanded that Ridge Hill perform as outlined in their agreement.

To assuage Remcoda's growing concerns, and further conceal their scheme, according to the lawsuit, on July 28th, Gross provided Remcoda with information allegedly vouching for the bona fides of Ridge Hill, including advising Remcoda that Ridge Hill along with Ataraxia were part of a "family group" based in Australia. Gross represented that two individuals, Sharad Sri and Asanth Sebastian, are owners and partners of Ridge Hill and Ataraxia, and together they manage the personal protective equipment supply chain and offer customers contract, legal, funding and financial support for personal protective equipment.

Gross is alleged to have touted his work with Gunawardhana, Fletcher, Ridge Hill and Ataraxia in offering connections, financial scale, quality control and experience that "most in the PPE market do not." Unknown to Remcoda at the time, Remcoda alleged the only information that Gross relayed that was true was that Ridge Hill and Ataraxia are one in the same.

Also on July 28th, Gunawardhana is alleged to have sent Remcoda a fraudulent email from Vaidyanathan falsely claiming that "government intervention" in Vietnam was delaying Remcoda's order, but assuring that the De Raj Entities' "connections at the most senior level in VGloves and the relevant government ministries" would provide a "big advantage" and the gloves would be ready for

Despite repeatedly advising Remcoda that Ridge Hill had sourced and secured full stock of all of the gloves that they had ordered, Ridge Hill failed to deliver the gloves by July 31st, as required by the agreement. Instead, with knowledge that Remcoda had time sensitive commitments to supply the gloves to its customers and to repay its lender, the defendants were alleged to have pressed forward with their fraudulent scheme to prevent Remcoda from defaulting Ridge Hill and taking steps to obtain a refund of the deposit by continuing to misrepresent that delivery of gloves was imminent.

In furtherance of this scheme, on July 31st – two days after the supposedly scheduled inspection – the lawsuit alleges Gunawardhana now claimed that Ridge Hill could not obtain any black gloves to deliver to Remcoda, despite Gross, Gunawardhana and Fletcher's representations as Ridge Hill's agents that all stock was secured, and offered to provide additional blue gloves as replacements.

By August 25th, Remcoda had still not received an inspection report, the gloves had not been delivered, and Ridge Hill had entirely failed to perform. Accordingly, by letter to Ridge Hill, copying the De Raj Entities, dated August 25th, 2020, Remcoda terminated the agreement and demanded repayment of the $4,630,874 that they had paid.

The defendants were alleged to have already converted and misused Remcoda's deposit for their own personal benefit, and had no intention of fully refunding the deposit. Instead, according to the lawsuit, to maintain their scheme and forestall Remcoda from taking action, the defendants attempted to shift Remcoda's attention to the De Raj Entities and Nateshan to create further delay, wear Remcoda down, and allegedly retain as much of the deposit as possible.

Russel Gross, and his business partner Patrick Horsman's company Unicorn Health, were allegedly working with the defendants from the start when they introduced Remcoda to Ridge Hill as part of their overall alleged scheme. Russel Gross and Horsman's company allegedly received payment of their fee from Remcoda's funds that the defendants wrongfully withheld.



**Catherine Davis**

Catherine Davis is a contributor to the USA Herald. She covers politics and reports on issues of the times.

ALSO ON **USAHERALD-COM**

| Billionaire Investor Cathie Wood Says … | Coinbase user loses $11.6 Million of … | Hillsborough County Police Make 100+ … | Bitc<br>$22,… |
|---|---|---|---|
| 9 months ago • 1 comment | 10 months ago • 1 comment | 7 days ago | 2 mor |
| The price of Bitcoin — the largest cryptocurrency by | A Coinbase user has lost $11.6 million worth of Bitcoin | Human trafficking, notably sex trafficking, continues to | Bitco<br>$22,0 |

# EXHIBIT B

# Russell Gross of Unicorn Health, owned by Patrick Horsman, sued for alleged 3.7M fraud

By **Catherine Davis** - August 27, 2022



9/6/22, 1:31 PM
Case 4:24-cv-00342-AW-MAF    Document 29    Filed 11/29/24    Page 34 of 45
Russell Gross of Unicorn Health owned by Patrick Horsman, sued for alleged 3.7m fraud - USA Herald

A lawsuit brought by plaintiff Remcoda, LLC, and defendants Ridge Hill Trading (PTY) LTD, Ataraxia Capital Partners PTY LTD, Russel Gross of Unicorn Health (owned by Patrick Horsman), alleges $3.7M in fraud.

As a quick summary, according to allegations in the lawsuit, Remcoda agreed to provide nitrile examination gloves for use as personal protective equipment to two of the country's largest food distribution companies during the summer of 2020, while the Covid-19 Pandemic was still in full swing. Gross ultimately offered to introduce Remcoda to his relationships in exchange for a 5% fee of the total purchase price.

Remcoda agreed to Gross's terms and provided proof of funds as requested. Satisfied that Remcoda could afford to enter into the transaction and that he would receive his fee, Gross introduced Remcoda to Gunawardhana and Fletcher according to the lawsuit. Gross advised Remcoda that Gunawardhana and Fletcher were agents of Ridge Hill, one of his purported "proprietary manufacturing supply relationships" that would be able to immediately provide Remcoda with nitrile examination gloves.

## Signup for the USA Herald exclusive Newsletter

First Name

First Name

Email Address:

Email Address

Sign up

Prior to Remcoda's transaction with Ridge Hill, however, Remcoda allegedly contracted with Unicorn Health LLC ("Unicorn"), owned by Gross's business partner Patrick Horsman, to act as a broker and introduce Remcoda to potential PPE suppliers. The contract between Remcoda and Unicorn, titled "Procurement Agreement," which was signed by Gross on behalf of Unicorn, expressly described Unicorn's role as being limited to "introduc[ing] the Purchaser [Remcoda] directly to [Unicorn's] supply relationships."

Further allegations detailed in the lawsuit reveal that on July 16th, 2020, Ridge Hill provided a commercial invoice to Remcoda reflecting their order of 629,100 boxes of blue gloves and 722,980 of black gloves for a total purchase price of $9,261,748, which Remcoda would pay in two 50% installments pursuant to the terms of the agreement. On July 20th, Remcoda wired the 50% deposit in the amount of $4,630,874 to Ridge Hill and, pursuant to the agreement, Ridge Hill was required to have the gloves ready for delivery to Remcoda by July 31st.

On July 23rd, in furtherance of the defendant's alleged scheme, Gunawardhana sent Remcoda photographs of boxes of gloves allegedly allocated for Remcoda's order. According to the lawsuit, on July 27th, Gunawardhana again falsely advised Remcoda that "[w]e have got all the stock allocated to us today" and that the goods have already passed an inspection.

Ridge Hill, however, refused to provide proof of such inspection, vaguely claiming that another inspection would be performed. At the same time, on July 27th, Gunawardhana attempted to unilaterally change the terms of the agreement by demanding that Remcoda immediately wire to Ridge Hill the balance of the purchase price (another $4,630,874) without their receipt and acceptance of an inspection report, according to the lawsuit. Remcoda refused and demanded that Ridge Hill perform as outlined in their agreement.

To assuage Remcoda's growing concerns, and further conceal their scheme, according to the lawsuit, on July 28th, Gross provided Remcoda with information allegedly vouching for the bona fides of Ridge Hill, including advising Remcoda that Ridge Hill along with Ataraxia were part of a "family group" based in Australia. Gross represented that two individuals, Sharad Sri and Asanth Sebastian, are owners and partners of Ridge Hill and Ataraxia, and together they manage the personal protective equipment supply chain and offer customers contract, legal, funding and financial support for personal protective equipment.

Gross is alleged to have touted his work with Gunawardhana, Fletcher, Ridge Hill and Ataraxia in offering connections, financial scale, quality control and experience that "most in the PPE market do not." Unknown to Remcoda at the time, Remcoda alleged the only information that Gross relayed that was true was that Ridge Hill and Ataraxia are one in the same.

Also on July 28th, Gunawardhana is alleged to have sent Remcoda a fraudulent email from Vaidyanathan falsely claiming that "government intervention" in Vietnam was delaying Remcoda's order, but assuring that the De Raj Entities' "connections at the most senior level in VGloves and the relevant government ministries" would provide a "big advantage" and the gloves would be ready for delivery shortly. In forwarding the fraudulent email to Remcoda, Gunawardhana falsely assured them that an inspection of the gloves had been scheduled for July 30th, and the goods would be shipped on August 8th.

Despite repeatedly advising Remcoda that Ridge Hill had sourced and secured full stock of all of the gloves that they had ordered, Ridge Hill failed to deliver the gloves by July 31st, as required by the agreement. Instead, with knowledge that Remcoda had time sensitive commitments to supply the gloves to its customers and to repay its lender, the defendants were alleged to have pressed forward with their fraudulent scheme to prevent Remcoda from defaulting Ridge Hill and taking steps to obtain a refund of the deposit by continuing to misrepresent that delivery of gloves was imminent.

In furtherance of this scheme, on July 31st – two days after the supposedly scheduled inspection – the lawsuit alleges Gunawardhana now claimed that Ridge Hill could not obtain any black gloves to deliver to Remcoda, despite Gross, Gunawardhana and Fletcher's representations as Ridge Hill's agents that all stock was secured, and offered to provide additional blue gloves as replacements.

By August 25th, Remcoda had still not received an inspection report, the gloves had not been delivered, and Ridge Hill had entirely failed to perform. Accordingly, by letter to Ridge Hill, copying the De Raj Entities, dated August 25th, 2020, Remcoda terminated the agreement and demanded repayment of the $4,630,874 that they had paid.

The defendants were alleged to have already converted and misused Remcoda's deposit for their own personal benefit, and had no intention of fully refunding the deposit. Instead, according to the lawsuit, to maintain their scheme and forestall Remcoda from taking action, the defendants attempted to shift Remcoda's attention to the De Raj Entities and Nateshan to create further delay, wear Remcoda down, and allegedly retain as much of the deposit as possible.

Russel Gross of Unicorn Health, which is owned by Patrick Horsman, is alleged to have been working with the defendants from the start when they introduced Remcoda to Ridge Hill as part of their overall alleged scheme.  The USA Herald is researching whether it was Russel Gross and/or Horsman's company that allegedly received payment of their fee from Remcoda's funds that the defendants wrongfully withheld.

9/6/22, 1:31 PM
Case 4:24-cv-00342-AW-MAF Document 29 Filed 11/29/24 Page 37 of 45
Russell Gross of Unicorn Health Owned by Patrick Horsman, sued for alleged 3.7m fraud - USA Herald



1  2  >

**Catherine Davis**

Catherine Davis is a contributor to the USA Herald. She covers politics and reports on issues of the times.

ALSO ON **USAHERALD-COM**

**Florida Restaurant Owner Bans Biden …**

a year ago • 1 comment

The deaths of 13 American Marines, coupled with the

**Elon Musk's Neuralink Could Implant The …**

9 months ago • 1 comment

Elon Musk has announced that Neuralink — his brain-

**New Ac Sexual**

12 days a

The story discrimin

9/6/22, 1:31 PM
Case 4:24-cv-00342-AW-MAF Document 29 Filed 11/29/24 Page 38 of 45
Russell Gross of Unicorn Health Owned by Patrick Horsman, Sued for Alleged 3.7m Fraud - USA Herald

# EXHIBIT C



🔍 Subscribe ☰

Home » Technology

# Patrick Horsman Of Coral Capital Slapped With Class Action Lawsuit

By Rich Williams

Published on Jun 28, 2023, 12:27 pm



**National (June 26, 2023) –** Patrick Horsman, Managing Partner and Co-Founder of Coral Capital, an alternative investment platform focused on digital assets and decentralized finance applications, has been accused of fraud and unjust enrichment in a class-action lawsuit filed by Zigler Law Group.

The 104 page class-action lawsuit, filed on behalf of investors who lost money in an alleged cryptocurrency scam, alleges that Horman and his business partner defrauded investors in the "LGBCoin crypto pump-and-dump scheme" and attempted to hide their role through a complex web of transactions.

While investing in alternative assets can be risky, there are opportunities to invest in innovative technologies that can change the world. One such example is the small-cap company at the forefront of AI-driven drug discovery, which has already discovered new treatments for multiple myeloma and liver cancer in record time. With high-profile investors like Bill Gates and Steve Cohen, this company could be worth considering for those looking to invest in cutting-edge medical research. Visit **Behind the Markets** This paragraph is AI-generated advertising.

Pump-and-dump schemes involve fraudsters who typically spread false or misleading information to create a buying frenzy that will pump up the price of a stock and then dump shares of the stock by selling their own shares at the inflated price.

According to the lawsuit, the LGBCoin is a cryptocurrency co-created by Horsman and his business partners that is a blockchain-based digital asset known as "ERC-20 tokens," created using the Ethereum blockchain. The LGBCoin was primarily traded against Ether, the native currency of the Ethereum blockchain network onUniswap, Binance, Coinbase, and other decentralized exchanges that allow anyone to list a token.

The complaint alleges that Letsgobrandon.com Foundation, LGBCoin, Ltd, Koutoulas, and Horsman of Coral Capital sought to capitalize on the publicity surrounding the "Let's Go Brandon" chant and conspired to violate provisions of the Securities Act and its Florida State law analog by selling the unregistered LGBCoins.

In addition, the complaint alleges that Horsman (and his business partners) solicited sales of LGBCoins by making false and misleading statements concerning NASCAR's approval of the LGBCoin sponsorship of Brandon Brown, the digital asset's growth prospects, and financial benefits for LGBCoin investors, as well as using celebrity promoters to lure in unsuspecting investors so that Horsman and other insiders

could sell the unregistered LGBCoin securities in violation of federal and state securities laws.

The action was filed in the U.S. District Court for the Middle District of Florida and captioned De Ford et. al. v. Koutoulas et al., Case No. 6:22-cv-652, asserts claims under § 12(a)(1) of the Securities Act of 1933 (the "Securities Act") and under §517.07 of the Florida Securities and Investment Protection Act for the sale of unregistered securities, as well as other Florida State law claims (including conspiracy, unjust enrichment, negligent misrepresentation, and promissory estoppel), on behalf of investors who purchased the LGBCoin unregistered securities, which were sold as LGBCoins on various cryptocurrency exchanges from November 2, 2021 through March 15, 2022. On January 5, 2022, NASCAR announced it would not approve LGBCoin's sponsorship of NASCAR driver Brandon Brown. In the wake of this news, the price of LGBCoin fell to Class Period lows.

Though this isn't the first time that Horman has been accused of fraud, this is by far his most high-profile accusation to date. According to Horsman's personal LinkedIn profile, the self-proclaimed "serial entrepreneur and investor" is still a Managing Partner at Coral Capital in San Juan, Puerto Rico.

Do you know which under-the-radar stocks the top hedge funds and institutional investors are investing in right now? Click here to find out.

## Who Is Patrick Horman?

Horsman was born in St. John, Nebraska and grew up in Halifax, Nova Scotia. He and his family moved to Scottsdale, Arizona when he was fifteen. Horsman attended Desert Mountain High School in Scottsdale where he played on the Basketball, Golf, Track and Cross-Country teams. He graduated from Desert Mountain in 1998.

After high school, Patrick attended the University of Arizona, where he graduated Magna Cum Laude in 2002 with a triple major in finance, accounting and entrepreneurship.

After graduation, Horsman co-founded Blue Sands Securities with his business partner, Michael Cooney. The company was created to serve as a placement agent for alternative investment funds, raising over $15 billion from institutional investors.

The company was the first business he launched after college, as well as Horsman's first encounter with accusations of fraud.

Allegations were made against Horsman while at Blue Sands Securities alleging negligent misrepresentation, breach of implied covenant of good faith, unjust enrichment and fraud. He was permitted to resign from the organization, though he faced disciplinary actions.

In March of 2017, Horsman consented to sanctions and to the entry of findings that he purchased shares in eleven initial public offerings (IPOs) in three personal brokerage accounts held at three FINRA member firms.

The findings stated that FINRA rules prohibit a person associated with a member from purchasing a new issue in any account in which such person associated with a member has a beneficial interest. The findings also stated that Horsman orally disclosed four outside brokerage accounts to his member firm, but he failed to promptly notify the firm of the accounts in writing. Horman was fined and suspended accordingly.

Horssman received attention again in 2020 when a lawsuit alleged that he had lied about the prospects of the investment of his cannabidiol company, Integrated CBD. Further, the lawsuit claimed that Horman used an emergency pandemic-relief loan (Paycheck Protection Program) to buy a private jet and fund other lavish expenses, despite having laid off the company's staff.

Integrated AG, the Horman-founded parent company of Integrated CBD, filed for Chapter 11 bankruptcy protection on January 20, 2021, and disclosed over $20 million in outstanding debt, the Phoenix Business Journal reported.

The full list of companies that Horman is publicly affiliated include:

- Coral Capital
- Horsman Holdings
- Octopus Investments
- Merion Investment Management
- The Arizona Coyotes (NHL hockey team)
- Innovation Shares
- Integrated AG

- Blue Sand Securities
- Cashmere Capital
- Verified Organic
- Safe Shepherd
- Bay Front Development
- Integrated CBD

---

**Media Contact**

Rich Williams

T: 702-613-0824

E: Rich@Protonmail.com

(Free Video) The 2 Secrets To Finding Small-Cap, Hidden Gem Stock Opportunities To Dramatically Grow Your Portfolio Going Into Q4 .

‹ The Biden Administration Is Evaluating A Wider Chip Ban On China
› U.S. Public Pension Funds Could Be $21 Billion Richer Right Now

## Related Articles

**Is Bitcoin's Lack Of Volatility A Blessing Or A Curse For Investors?**

**Crypto Stocks Are Hot Right Now, But Should You Invest?**

**Ethereum-Based BTCX Token Raises $1.5M to Build the World's First Bitcoin Xin Blockchain**

**Introducing TON Space – Self-Custody Wallet in Telegram, Available to Developers Now**

# Never Miss A Story!

Subscribe to ValueWalk Newsletter. We respect your privacy.

Your email address

Subscribe

We won't send you spam. Unsubscribe at any time.