## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DISTRICT

|  |  |  |
|---|---|---|
| PATRICK HORSMAN, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 4:24-cv-00342-AW-MAF |
| BRETT JEFFERSON, RYAN ANDREWS, and ANDREWS LAW FIRM, P.A., | § § § § | |
| Defendants. | § § | |

## DEFENDANT BRETT JEFFERSON'S MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW

Defendant Brett Jefferson, by and through his undersigned counsel, and pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure, hereby moves to dismiss Plaintiff Patrick Horsman's Amended Complaint, and in support thereof states as follows:

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

Plaintiff, who resides in Puerto Rico, seeks to use this forum to settle a personal vendetta against Defendant Brett Jefferson, a resident of North Carolina. This is the second lawsuit Plaintiff has filed against Mr. Jefferson for defamation arising out of the faithful re-publication of allegations in public lawsuits. This time,

Plaintiff chose Florida as the forum because his defamation claims would be timed-barred in both Puerto Rico and North Carolina. But Mr. Jefferson is not subject to personal jurisdiction in Florida, and venue is not proper here.

The Court should dismiss the Amended Complaint for three independent reasons.

*First*, this Court lacks personal jurisdiction over Mr. Jefferson. There is no general personal jurisdiction because Mr. Jefferson is a resident of North Carolina and not "at home" in Florida; neither is Plaintiff, who is domiciled in Puerto Rico. Nor is there specific personal jurisdiction because Plaintiff does not allege that Mr. Jefferson committed any tort, let alone that the commission of a tort caused an injury within Florida. All the alleged defamatory statements, which merely recounted allegations in two public lawsuits that involve Plaintiff or his business dealings, were substantially true. That is also fatal to Plaintiff's claims for civil conspiracy and aiding and abetting, as those claims require an underlying tort to survive.

*Second*, this district is not the proper venue for resolving Plaintiff's claims. As courts in the Eleventh Circuit and elsewhere recognize, venue for an internet defamation case is generally proper in the district where the plaintiff resides and the defamatory material is published. Because Plaintiff resides in Puerto Rico and has not alleged that the online articles had any nexus to Florida, the District of Puerto Rico is the only potentially proper venue. That dooms Plaintiff's claims because,

when a case is transferred to cure a lack of personal jurisdiction or improper venue under 28 U.S.C. § 1406(a), the transferee court applies its own statute of limitations. As such, Plaintiff's claims would be time-barred because Puerto Rico has a one-year statute of limitations for defamation claims and both articles were published more than one year before this case commenced. Transfer would be futile and dismissal is appropriate under Rule 12(b)(3) and 28 U.S.C. § 1406(a).

*Third*, *and in the alternative*, Plaintiff fails to plausibly state a claim for defamation, civil conspiracy, or aiding and abetting against Mr. Jefferson based on the accurate recitation of legal allegations set forth in the two articles. Dismissal is therefore proper under Rule 12(b)(6).

For these reasons, the Amended Complaint should be dismissed pursuant to Rules 12(b)(2) and 12(b)(3) or alternatively, pursuant to Rule 12(b)(6).

## BACKGROUND

This background is drawn from the Amended Complaint and matters the Court may consider on a motion to dismiss without converting it to a motion for summary judgment. "There are two exceptions to this conversion rule: (1) the incorporation-by-reference doctrine and (2) judicial notice." *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276 (11th Cir. 2023).

Under the first exception, the Court may consider documents that (1) Plaintiff refers to in the complaint, (2) are central to the Plaintiff's claims, and (3) are

undisputed. *Id.* This exception applies to Exhibits 1, 5, and 6, which are specifically referenced by Plaintiff in the Amended Complaint.

Under the second exception, the Court may take judicial notice of public documents, including court records. *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n.4 (11th Cir. 2015) ("Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage."); *Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (holding as proper district court's decision to take judicial notice of complaint on motion to dismiss); *Nix v. ESPN, Inc.*, 2018 WL 8802885, at *6 (S.D. Fla. Aug. 30, 2018) (taking judicial notice of complaint filed in suit referenced in alleged defamatory article). This exception applies to Exhibits 2, 3, 4, and 7, which are public court records in the lawsuits discussed in the articles at issue.[1]

## A.    The Parties

Plaintiff is a resident of Puerto Rico. Am. Compl. ¶ 2. Although Plaintiff alleges that Mr. Jefferson is a resident of Florida, Mr. Jefferson has been a resident of North Carolina since before Plaintiff filed his complaint. Declaration of Brett Jefferson ("Jefferson Decl.") ¶¶ 2-8; *see* ECF No. 14 (affidavit of service identifying Mr. Jefferson's "residence or usual place of abode" in North Carolina and stating

---

[1] We recognize the Court cast doubt on its ability to consider certain court records at this stage under the incorporation-by-reference exception. We respectfully submit that the Court may nevertheless consider them under the judicial notice exception.

"[r]esidency was confirmed"). Ryan Andrews is a resident of Florida and his law firm, Andrews Law, P.A., is based in Florida. Am. Compl. ¶¶ 4-5. Plaintiff does not plead the residency of non-party USA Herald through which the alleged defamatory statements were published, nor name the USA Herald or its operator as defendants here even though they ultimately published the purported defamatory statements.

### B. The Remcoda Article

Plaintiff alleges he was defamed by an August 27, 2022 article (the "Remcoda Article") discussing certain allegations in *Remcoda, LLC v. Ridge Hill, et al.*, Case No. 1:21-cv-00979 (S.D.N.Y.). Am. Compl. ¶ 31 & Ex. A. Plaintiff claims the following statements in the Remcoda Article were defamatory:

- "Patrick Horsman and partner Russel [sic] Gross [sic] involvement in $3.7M alleged fraud." *Id.* ¶ 32 (alterations in original).

- "A lawsuit between Remcoda, LLC, and defendants . . . . Russel [sic] Gross, and the *involvement of his partner, Patrick Horsman, is ever evolving.*" *Id.* ¶ 34 (alterations and emphasis in original).

- "Russel [sic] Gross, and his business partner Patrick Horsman's company Unicorn Health, were allegedly working with the defendants from the start . . . Russel [sic] Gross and Horsman's company allegedly received payment of their fee from Remcoda's funds that the defendants wrongfully withheld." *Id.* ¶ 36 (alterations in original).

Plaintiff claims these statements were defamatory because they were inconsistent with the operative pleading in *Remcoda* at that time—the Second Amended Complaint. *Id.* ¶¶ 32-39. The Remcoda Article does not, however, attribute the statements to any pleading or submission and merely states that they were alleged in

*Remcoda*. Am. Compl. Ex. A.

All these statements appeared in documents filed in *Remcoda* before the Remcoda Article was published. The Second Amended Complaint filed on April 25, 2022 alleges a scheme in which the defendants, including Russell Gross, were alleged to have fraudulently persuaded persons to invest substantial sums of money in a plan to buy personal protective equipment ("PPE") during the COVID-19 pandemic. Ex. 1. In his motion to dismiss the prior operative complaint filed on November 10, 2021, Mr. Gross identified Unicorn Health LLC ("Unicorn") as his company and explained that Unicorn acted as a broker for the sale of PPE underlying the scheme. Ex. 2 at 1 ("In early June 2020, Plaintiff was introduced to Defendant Gross, whose company Unicorn Health LLC ('Unicorn') has manufacturing and supply relationships for PPE[.]"). In his motion to dismiss the Second Amended Complaint filed on July 21, 2022, Mr. Gross again explained that the *Remcoda* lawsuit concerns a failed transaction in which Unicorn, and Mr. Gross as its agent, operated as the PPE broker between the plaintiff and Mr. Gross' co-defendants. Ex. 3 at 1. And in support of this motion, Mr. Gross' counsel submitted a declaration in which he referred to Plaintiff as "Unicorn partner Patrick Horseman [sic]" and attached an email that Plaintiff received from an agent of one of Mr. Gross' co-defendants. Ex. 4 ¶ 19(i).

C.    **The LGBCoin Article**

Plaintiff likewise alleges he was defamed by a May 29, 2023 article (the "LGBCoin Article") discussing certain allegations in *De Ford v. Koutoulas, et al.*, No. 6:22-cv-00652 (M.D. Fla.). Am. Compl. ¶ 45.[2] Plaintiff alleges the following statements in the LGBCoin Article were defamatory:

- "Thomas McLaughlin, co-founder of LGBCoin and business partners with Patrick Horsman at Coral Defi (Coral Capital Management, LLC), is accused of fraud along with unjust enrichment in a 104 page class-action lawsuit filed on behalf of investors that lost money in an alleged cryptocurrency scam." *Id.* ¶ 47.

- "The class action lawsuit alleges that Coral Defi, Coral Capital LLC, Coral Capital Management LLC, all owned by Patrick Horsman (he is listed at the Managing Member/Co-Founder), defrauded investors in the LGBCoin Cryptocurrency Pump & Dump scheme and attempted to hide their role through a complex web of transactions." *Id.* ¶ 49.

Plaintiff claims these statements were defamatory because they also were inconsistent with the Second Amended Complaint in *De Ford. Id.* ¶¶ 48, 50. Yet, the Second Amended Complaint names Coral DeFi, Coral Capital LLC, and Coral Capital Management LLC as defendants, identifies Plaintiff and Thomas McLaughlin as founders of Coral DeFi and Coral Capital LLC, identifies Plaintiff as the registered executive of Coral Capital Management LLC, and alleges that Mr. McLaughlin and the Coral entities were involved in a fraudulent scheme to "pump

---

[2] Plaintiff did not attach the LGBCoin Article to his Amended Complaint and instead supplied an archival link. The article located at that link is attached as Exhibit 5.

and dump" cryptocurrency. Ex. 6 ¶ 32-34, 57, 132-157, 177-178, 187 n.65, 266-269.

And the Third Amended Complaint filed on April 14, 2023 names Plaintiff as a defendant and alleges that Plaintiff is the managing partner and co-founder of Coral DeFi, that Coral DeFi is "Horsman's firm," and that Plaintiff engaged with others, including Mr. McLaughlin, in the fraudulent "pump and dump" scheme described in the Second Amended Complaint. *See, e.g.*, Ex. 7 ¶¶ 31-34, 41-42, 97, 103-104, 110, 129, 252, 400-402, 409.[3]

Plaintiff alleges Mr. Jefferson and the Andrews Defendants worked together to defame Plaintiff based on the publication of these statements by the USA Herald and its operator. Am. Compl. ¶ 60.

## ARGUMENT

## I.    The Complaint Should Be Dismissed Because the Court Lacks Personal Jurisdiction over Mr. Jefferson

The Court "has personal jurisdiction over non-Floridians to the same extent a Florida court would, subject to federal due process requirements." *Nature Coast Dev. Grp. v. U.S. Specialty Ins.*, 2022 WL 11589413, at *2 (N.D. Fla. Sept. 2, 2022) (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008)). "That means

---

[3] In its March 30, 2023 order, the court granted a motion to dismiss for lack of personal jurisdiction filed by Mr. McLauglin and the Coral entitles. *De Ford v. Koutoulas*, 2023 WL 2709816, at *8-10 (M.D. Fla. Mar. 30, 2023). As a result, the plaintiffs noted in the Third Amended Complaint that they were "evaluating bringing claims against the Coral corporate entities and Thomas McLaughlin within the District of Puerto Rico." Ex. 7 ¶ 77 n.8.

[the Court] must dismiss the claims against them if the complaint does not allege a proper basis for jurisdiction under Florida's long-arm statute." *Id.*

A nonresident defendant may be subject to personal jurisdiction under Florida's long-arm statute in two scenarios:

(1) A defendant may be "subject to 'general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity' in Florida," and

(2) A defendant may be "subject to 'specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida'—for conduct specifically enumerated" by statute.

*Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (quoting *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203-04 (11th Cir. 2015)); Fla. Stat. § 48.193. Florida's long-arm statute "must be strictly construed, and any doubts about applicability of the statute resolved in favor of the defendant and against a conclusion that personal jurisdiction exists." *Island Wifi Ltd., LLC v. AT&T Mobility Nat'l Accts. LLC*, 2021 WL 210536, at *1 (S.D. Fla. Jan. 19, 2021) (quoting *Gadea v. Star Cruises, Ltd*., 949 So. 2d 1143, 1150 (Fla. 3d DCA 2007)).

In either case, the Court may not exercise jurisdiction over a defendant unless doing so would "comport[] with the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Hinkle v. Cont'l Motors, Inc.*, 268 F. Supp. 3d 1312, 1319 (M.D. Fla. 2017), *aff'd sub nom. Hinkle v. Cirrus Design*

*Corp.*, 775 F. App'x 545 (11th Cir. 2019). The "Due Process" question is a separate inquiry that "imposes a more restrictive requirement" than Florida's long-arm statute. *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 859-60 (11th Cir. 2013) (quoting *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1207 (Fla. 2010)).

Plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction" over a nonresident defendant. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "When a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Id.* (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).

## A.    The Court Lacks General Personal Jurisdiction Over Mr. Jefferson

The Court lacks general personal jurisdiction over Mr. Jefferson because he is not a resident of Florida and Plaintiff alleges no other substantial and not isolated activities by Mr. Jefferson within this state to render him "at home."

The general jurisdiction prong of Florida's long-arm statute provides jurisdiction over any claims against "[a] defendant who is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). The "substantial and not isolated activity"

requirement is "the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Fourteenth Amendment" of the United States Constitution. *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 n.6 (11th Cir. 2002). Florida courts therefore examine whether the defendant's activities in the forum state are so continuous and systematic as to render the defendant "at home." *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1134 (Fla. 3d DCA 2018) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)). An individual is typically "at home" in the state where they are domiciled. *Daimler*, 571 U.S. at 139.

Mr. Jefferson is not "at home" in Florida. As an initial matter, Mr. Jefferson is not a resident of Florida; Mr. Jefferson is a resident of North Carolina. Jefferson Decl. ¶¶ 2-8. Indeed, Plaintiff's affidavit of service for the Summons reflects that Plaintiff left the Summons with Mr. Jefferson's spouse at his "residence or usual place of abode" in North Carolina. ECF No. 14. The affidavit further states: "Vehicle parked in the driveway displaying NC tag . . . Residency was confirmed." *Id*. Because Mr. Jefferson is not a resident of Florida, he cannot be subject to general jurisdiction under Florida's long-arm statute on this basis. *Novak v. Weichselbaum*, 2021 WL 3036369, at *4 (M.D. Fla. Apr. 26, 2021) ("Defendants are not residents of Florida and are, therefore, not domiciled in Florida. This alone warrants a finding that the Court does not have general jurisdiction over Defendants.").

Nor does Plaintiff allege that Mr. Jefferson has engaged in "substantial and not isolated activity" within Florida to otherwise subject him to general jurisdiction notwithstanding that he is a nonresident. "It is clear . . . that a very high threshold must be met in order for general jurisdiction to be exercised over a nonresident defendant in Florida." *Pathman v. Grey Flannel Actions, Inc.*, 741 F. Supp. 2d 1318, 1323 (S.D. Fla. Oct. 1, 2010) (citing *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408 (1984)). Indeed, it is only the "exceptional case" where an individual's contacts with a forum might be so extensive to support general jurisdiction where they are domiciled elsewhere. *Daimler*, 571 U.S. at 139 n.19; *see also Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (noting that "the Second Circuit has yet to find such a case.").

This is not the exceptional case. Plaintiff alleges in a singular paragraph that Mr. Jefferson was physically present in Florida, engaged in electronic communications from within and directed towards Florida, conducted a significant portion of the underlying activities within Florida, and purposefully directed the defamatory statements at Florida. Am. Compl. ¶ 8. It is unclear which of these vague and conclusory allegations Plaintiff is relying on to establish general jurisdiction, but even taken together, they fail to satisfy the exacting burden of the general jurisdiction inquiry. *Nat'l Air Cargo Grp., Inc. v. UPS Worldwide Forwarding, Inc.*, 2023 WL 3778243, at *5 (S.D. Fla. Mar. 2, 2023) ("[T]he Amended Complaint

contains no allegations from which the Court could conclude that this is such an exceptional case. The allegation that Defendant 'conducts business in Palm Beach County, Florida' is vague and conclusory and says nothing about whether Defendant 'is engaged in '<u>substantial and not isolated activity within</u>' Florida.'' (emphasis in original)); *Pathman*, 741 F. Supp. 2d at 1323 (holding that occasionally traveling to Florida on business, visiting Florida as a tourist, and communicating into Florida insufficient to establish general jurisdiction). As a result, Plaintiff fails to carry his burden of pleading a prima facie case of general jurisdiction over Mr. Jefferson.[4]

### B.    The Court Lacks Specific Personal Jurisdiction Over Mr. Jefferson

The Court also lacks specific personal jurisdiction over Mr. Jefferson under Florida's long-arm statute because: (1) Plaintiff fails to state a cause of action, and (2) Plaintiff fails to allege that he suffered an injury in Florida.

### 1.    The Court Lacks Specific Personal Jurisdiction Over Mr. Jefferson Because Plaintiff Fails to State a Cause of Action

Plaintiff relies on Florida's "tortious act" provision, Fla. Stat. § 48.193(1)(a)2, to allege specific jurisdiction over Mr. Jefferson. Am. Compl. ¶ 8 (alleging

---

[4] Mr. Jefferson has owned real property in Florida since 2018 where he has spent limited time in 2024. Jefferson Decl. ¶ 11. These contacts are also insufficient to constitute "substantial and not isolated" activity within Florida. *Skorupski v. Dale C. Rossman, Inc.*, 2008 WL 4724680, at *5 n.48 (M.D. Fla. Oct. 20, 2008) ("By itself, ownership of property is insufficient to subject a nonresident defendant to the jurisdiction of the courts of this state, unless the cause of action arose out of such ownership.") (citing *Nichols v. Paulucci*, 652 So. 2d 389, 393 n.5 (Fla. 5th DCA 1995)).

jurisdiction because alleged wrongful acts occurred in Florida). "In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine 'whether the allegations of the complaint state a cause of action.'" *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (citations omitted); *Nature Coast Dev. Grp.*, 2022 WL 11589413, at *2 ("Although jurisdictional and merits analyses are distinct, assessing jurisdiction under Florida's long-arm statute requires determining whether the complaint actually alleges a claim to invoke jurisdiction." (citations omitted)). "Thus, the long-arm statute is satisfied only if the complaint states a plausible claim [for relief]." *Nature Coast Dev. Grp.*, 2022 WL 11589413, at *2.

For a claim to be plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A claim is not plausible if the complaint alleges conduct "'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557). And a court need not take a plaintiff's allegations as true if they are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Plaintiff fails to state a plausible cause of action against Mr. Jefferson for defamation, civil conspiracy, or aiding and abetting.

14

### a. Plaintiff Fails to Plead a Cause of Action for Defamation

Plaintiff brings claims based on the statements in the Remcoda and LGBCoin Articles for (1) defamation *per se*; and (2) defamation by implication. Am. Compl. ¶¶ 62-91. It is well settled under Florida law that falsity is a required element of a plaintiff's prima facie case under either theory. *Turner v. Wells*, 879 F.3d 1254, 1267 (11th Cir. 2018) ("under Florida law, '[a] false statement of fact is the <u>sine qua non</u> for recovery in a defamation action.'" (emphasis in original)); *id.* at 1269 (for defamation by implication, "[t]he inquiry turns on whether the 'gist' of the publication is false."). Plaintiff has not met his burden to plead falsity to support either of his claims.

### i. Plaintiff Fails to Plead a Cause of Action for Defamation *Per Se*

Plaintiff's claims for defamation *per se* fail under Florida law. "To state a claim for defamation *per se*, a plaintiff must plausibly allege that the defendant (1) published, (2) to a third party, (3) a false statement about the plaintiff, (4) that rises to the level of defamation *per se*." *Clowdus v. Am. Airlines, Inc.*, 2022 WL 18458134, at *3 (S.D. Fla. Oct. 12, 2022), *aff'd*, 2023 WL 5011731 (11th Cir. Aug. 7, 2023).

"A statement can support a claim of defamation, or defamation *per se*, only if the statement is false." *Id.* (citing *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863,

865 (11th Cir. 2015) and *Cape Publ'n Inc. v. Reakes*, 840 So. 2d 277, 279-80 (Fla. 5th DCA 2003)). Falsity, however, exists only if "the publication is substantially and materially false, not just if it is technically false." *Id.* (citation omitted). Whether a statement is false is a question of law for the court. *Turner*, 879 F.3d at 1262-63. Plaintiff's claims fail because there are no false statements in the Remcoda and LGBCoin Articles that would support a defamation *per se* claim.

The Remcoda Article merely recites allegations that were made in *Remcoda*. Plaintiff claims three of these statements are false because they are inconsistent with the Second Amended Complaint in *Remcoda*:

- "Patrick Horsman and partner Russel [sic] Gross [sic] involvement in $3.7M alleged fraud." *Id.* ¶ 32 (alterations in original).

- "A lawsuit between Remcoda, LLC, and defendants . . . . Russel [sic] Gross, and the *involvement of his partner, Patrick Horsman, is ever evolving*." *Id.* ¶ 34 (alterations and emphasis in original).

- "Russel [sic] Gross, and his business partner Patrick Horsman's company Unicorn Health, were allegedly working with the defendants from the start . . . Russel [sic] Gross and Horsman's company allegedly received payment of their fee from Remcoda's funds that the defendants wrongfully withheld." *Id.* ¶ 36 (alterations in original).

These statements, however, accurately recite allegations made in filings in *Remcoda* before the Remcoda Article was published. The Second Amended Complaint alleges a scheme in which the defendants, including Mr. Gross, fraudulently persuaded persons to invest in a plan to buy PPE during the COVID-19 pandemic. Ex. 1. And in his own filings, Mr. Gross explained that Unicorn was his company, identified

Plaintiff as a "Unicorn partner," submitted evidence reflecting Plaintiff's dealings with the co-defendants, and described his own role as agent for Unicorn in brokering sales of PPE. Ex. 2 at 1; Ex. 3 at 1; Ex. 4 ¶ 19(i).

Moreover, by the time the Remcoda Article was published, the case was on its third complaint, the court had dismissed some claims and sustained others, and multiple motions to dismiss were still pending, so the statement that the lawsuit was "ever evolving" was accurate. That these allegations do not all appear in the Second Amended Complaint is beside the point because the Remcoda Article does not refer to any specific filing in *Remcoda*. Am. Compl. Ex. A. Accordingly, Plaintiff cannot state a plausible claim of defamation *per se* based on the statements in the Remcoda Article.

The LGBCoin Article recites allegations that were made in *De Ford*. Plaintiff claims two such statements are false because they also were not contained in the Second Amended Complaint in *De Ford*:

- "Thomas McLaughlin, co-founder of LGBCoin and business partners with Patrick Horsman at Coral Defi (Coral Capital Management, LLC), is accused of fraud along with unjust enrichment in a 104 page class-action lawsuit filed on behalf of investors that lost money in an alleged cryptocurrency scam." *Id.* ¶ 47.

- "The class action lawsuit alleges that Coral Defi, Coral Capital LLC, Coral Capital Management LLC, all owned by Patrick Horsman (he is listed at the Managing Member/Co-Founder), defrauded investors in the LGBCoin Cryptocurrency Pump & Dump scheme and attempted to hide their role through a complex web of transactions." *Id.* ¶ 49.

17

Yet the Second Amended Complaint names the Coral entities as defendants, identifies Plaintiff as a founder of these entities (or in the case of Coral Capital Management LLC, as a registered executive) along with Mr. McLaughlin, and alleges that Mr. McLaughlin and the Coral entities were involved in a fraudulent scheme to "pump and dump" cryptocurrency. Ex. 6 ¶ 32-34, 57, 132-157, 177-178, 187 n.65, 266-269. And the Third Amended Complaint filed on April 14, 2023—over a month before the LGBCoin Article—names Plaintiff as a defendant and alleges that he is the managing partner and co-founder of Coral DeFi, that Coral DeFi is "Horsman's firm," and that he engaged with others, including Mr. McLaughlin, in this fraudulent scheme. Ex. 7 ¶¶ 31-34, 41-42, 97, 103-104, 110, 129, 252, 400-402, 409.

While the LGBCoin Article incorrectly attributes these statements to the Second Amended Complaint, and not the Third Amended Complaint, that only means that this attribution is "technically false"; it does not mean that the statements themselves are "substantially and materially false" because they mirror the allegations asserted in *De Ford* before the LGBCoin Article was published. *Clowdus*, 2022 WL 18458134, at * 3. Plaintiff therefore also cannot state a plausible claim of defamation *per se* based on the statements in the LGBCoin Article.

### ii.    Plaintiff Fails to Plead a Cause of Action for Defamation by Implication

Plaintiff's claims for defamation by implication also fail under Florida law.

To plead a cause of action for defamation by implication, a plaintiff must allege that literally true statements "are juxtaposed in such a way as to imply a false and defamatory connection between them" or "omit facts in such a way as to create a false and defamatory implication, or 'gist.'" *Utterback v. Morris*, 2024 WL 3809368, at *3 (N.D. Fla. July 24, 2024), *report and recommendation adopted,* 2024 WL 3799423 (N.D. Fla. Aug. 12, 2024). "Florida law entrusts courts with determining whether the defendant's published words are reasonably susceptible to the implication alleged by the plaintiff." *Id.* (citations omitted). It therefore "falls to courts in the first instance to determine whether the reasonable implications derived from a defendant's statements are as the plaintiff alleges." *Id.* (citations omitted). The purported implications that Plaintiff alleges can be derived from the Remcoda and LGBCoin Articles do not meet this requirement.

Plaintiff claims that the Remcoda Article juxtaposes facts in a manner that falsely implies that Plaintiff was involved in the PPE scheme at issue in *Remcoda*. Am. Compl. ¶ 80. There is no false implication, however, because Mr. Gross has been sued for perpetrating this scheme and he alleged in his prior court filings that he operated as an agent of Unicorn in brokering PPE sales, identified Plaintiff as a "Unicorn partner," and submitted documents evidencing Plaintiff's involvement. Ex. 4 ¶ 19(i). Moreover, the Remcoda Article qualifies its summary of *Remcoda* by stating that Mr. Gross and Plaintiff were involved in an "*alleged* fraud" and Mr.

Gross and their company Unicorn "were *allegedly* working with defendants from the start" and "*allegedly* received payment of their fee from Remcoda's funds that the defendants wrongfully withheld." Am. Compl. Ex. A (emphasis added); *see Utterback*, 2024 WL 3809368, at *5 ("Defendant indicated that the money laundered by Plaintiff 'allegedly' had some drug connection. This is an important qualification. It indicates to a reasonable person that Defendant is unsure about this fact, and that anyone should take Defendant's statements with the understanding that they may not be accurate.").

Plaintiff also claims that the Remcoda Article falsely implies he was a party in *Remcoda* by omitting that he was not named as a party in that lawsuit. Am. Compl. ¶ 80. This claim fails because the Remcoda Article includes factual statements that show that Plaintiff was not, in fact, named as a party. *Id.* Ex. A ("A lawsuit between *plaintiff* Remcoda, LLC, *and defendants* Ridge Hill Trading (PTY) LTD, Ataraxia Capital Partners PTY LTD, Russel Gross, *and the involvement of his partner, Patrick Horsman*, is ever evolving." (emphasis added)). Moreover, a statement or implication "does not have to be perfectly accurate" to bar a claim of defamation by implication; only the 'gist' or the 'sting'" of the implication must be true." *Utterback*, 2024 WL 3809368, at *6. The "gist" of the implication here is that *Remcoda* concerns allegations of fraud involving Plaintiff's business partner and Plaintiff's company. Plaintiff does not deny—and filings in *Remcoda* show—

that this implication is true.

Plaintiff claims that the LGBCoin Article juxtaposes facts in a manner that falsely implies that he was involved in the fraudulent scheme at issue in *De Ford*. Am. Compl. ¶ 88. There is no false implication here either because Plaintiff was in fact named as a defendant in Third Amended Complaint filed in *De Ford* detailing Plaintiff's alleged involvement in this scheme. Ex. 7. Moreover, the LGBCoin Article merely states that Plaintiff's business partner, Mr. McLaughlin, and their corporate entities—not Plaintiff himself—were "accused of fraud along with unjust enrichment . . . in an *alleged* cryptocurrency scam" in a class-action lawsuit that "*alleges* that Coral Defi, Coral Capital LLC, Coral Capital Management LLC, all owned by Patrick Horsman . . . defrauded investors," Ex. 5 (emphasis added), which is entirely consistent with the allegations made in *De Ford*. Exs. 6-7. That the LGBCoin Article references the Second Amended Complaint, rather than the Third Amended Complaint, does not change the outcome because the "gist" of the implication is the same: these individuals and entities are all alleged to be involved in the fraudulent scheme at issue in *De Ford*.

Plaintiff has therefore failed to state a plausible claim for defamation *per se* or defamation by implication to permit the exercise of specific jurisdiction over Mr. Jefferson.

### iii.  Because Plaintiff Has Not Alleged Falsity, He Has Failed to Meet His Pleading Burden

In his opposition to the Andrews Defendants' prior motion to dismiss, Plaintiff claimed that even if the alleged statements were technically or substantially true, they are still sufficient to support a prima facie case of defamation because they were published with "ill will." ECF No. 18 at 23. In doing so, Plaintiff tries to preempt his burden to plead falsity by demanding an initial analysis of potential affirmative defenses.

A "plethora of cases exist which proclaim that a required element of defamation is a false statement made about another." *Cape Publ'n, Inc.*, 840 So. 2d at 279-80 (citations omitted). Precedent from the Eleventh Circuit makes clear that falsity is an essential part of the plaintiff's prima facie case of defamation. *Turner*, 879 F.3d at 1269. Facts establishing an underlying false statement must therefore be plausibly pled, in the first instance, to satisfy the falsity element and to state a prima facie claim for defamation under both Rule 12(b)(6) and Florida law. And these factual allegations must be sufficiently asserted in the pleading before any consideration of a defendant's potential affirmative defenses. *See, e.g., Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1317 (S.D. Fla. 2020) ("To state a claim for defamation, a plaintiff must plausibly allege . . . falsity"); *see also Linafelt v. Beverly Enters-Fla., Inc.*, 745 So. 2d 386, 388 (Fla. 1st DCA 1999) (noting that prima facie case for defamation—including falsity—must be shown before consideration of

affirmative defenses).

A claim for defamation is therefore properly dismissed under Rule 12(b)(6) where the complaint fails to plausibly allege facts showing that a false statement of fact underlies the alleged defamation claim. *See, e.g.*, *Turner*, 879 F.3d at 1269 ("There is no false statement of fact here to support a defamation claim"); *see also Warner v. Schmidt*, 2011 WL 2784492, at *1 (M.D. Fla. 2011) (dismissing defamation claim, in part, for plaintiff's failure to sufficiently plead falsity of the allegedly defamatory statements); *Bongino*, 477 F. Supp. 3d at 1319 (dismissing defamation claim where no reasonable interpretation of a news article would establish falsity); *Geller v. Von Hagens*, 2010 WL 4867540, at *3 (M.D. Fla. 2010) (dismissing defamation claim under Rule 12(b)(6) where plaintiff failed to sufficiently plead falsity of the alleged statements).

Plaintiff's attempt to preempt this burden flows from Florida state court decisions that have "create[d] confusion . . . when the decisions state that truth is not a complete defense to defamation unless it is accompanied by good motives." *Cape Publ'n, Inc.*, 840 So. 2d at 279 n.2. The decisions that underlie that confusion, however, generally arise at a later stage where material issues of fact exist as to the truthfulness of the alleged statement. In other words, these decisions inject the "good motive" component into the analysis only after a plaintiff had, in the first instance, sufficiently pled facts establishing the falsity element of defamation for the purposes

of complying with Rule 12(b)(6). *See, e.g.*, *Lipsig v. Ramlawi*, 760 So. 2d 170, 183 (Fla. 3d DCA 2000); *see also Drennen v. Westinghouse Elec. Corp.*, 328 So. 2d 52, 54-55 (Fla. 1st DCA 1976).

Article I, Section 4 of Florida's Constitution does not alter the conclusion that dismissal is warranted at the pleading stage under Rule 12(b)(6). The plain language contemplates evidentiary burdens that a defendant bears at later stages of the litigation, and not matters relevant to evaluating whether a party has plausibly pleaded facts to establish all the required elements of a defamation claim in the first place. Fla. Const., Art. I, s. 4 ("In all criminal prosecutions and civil actions for defamation the truth *may be given in evidence*. If the matter charged as defamatory is true and was published with good motives, the party *shall be acquitted or exonerated*.") (emphasis added). It does not, as Plaintiff suggests, relieve him of the burden to adequately allege all elements of his prima facie case for defamation, including that the statements are substantially and materially false. For all the reasons above, Plaintiff has failed to do so.

> **b.    Plaintiff Fails to Plead a Cause of Action for Civil Conspiracy or Aiding and Abetting**

In the Amended Complaint, Plaintiff asserts two new claims against Mr. Jefferson, both of which require that Plaintiff establish an *independent* tort.

Plaintiff claims that Mr. Jefferson and the Andrews Defendants are liable for civil conspiracy. Am. Compl. ¶¶ 92-97. "Florida does not recognize civil conspiracy

as a freestanding tort." *Banco*, 237 So. 3d at 1136. Instead, the "gist of a civil conspiracy is not the conspiracy itself, but the underlying civil wrong occurring pursuant to the conspiracy and which results in the plaintiff's damages." *Id.* The only freestanding tort that Plaintiff alleges here is defamation, which fails for all the above reasons. Plaintiff's civil conspiracy claims therefore also fails. *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1120 n.6 (S.D. Fla. 2021) ("[A] conspiracy to defame claim cannot stand where, as here, the defamation action fails. There being no defamation—the gist of the defamation conspiracy—there can be no conspiracy claim.").

The same is true for Plaintiff's aiding and abetting claim. Am. Compl. ¶¶ 98-102. To state a claim for aiding and abetting a tort in Florida, "a plaintiff must allege: (1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter [sic]; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012). As a result, there must be an underlying tort to support an aiding and abetting claim in Florida. *In re Hussing*, 659 B.R. 609, 623 (Bankr. S.D. Fla. 2024) ("A predicate to those four elements, of course, is 'an actionable underlying tort or wrong.'" (citation omitted)); *Hickman v. Variable Annuity Life Ins.*, 2019 WL 5802661, at *3 (M.D. Fla. June 5, 2019) (noting that aiding and abetting claim "fails for the same

reasons, i.e., there is no underlying tort remaining in this case."). Because Plaintiff's

defamation claim fails, so too does his aiding and abetting claim.[5]

> **2.    The Court Lacks Specific Personal Jurisdiction Over Mr. Jefferson Because Plaintiff Fails to Allege that Mr. Jefferson Caused Injury in Florida**

For Plaintiff to establish specific jurisdiction, he must also plead that Mr.

Jefferson's alleged conduct "cause[d] an injury within Florida." *Louis Vuitton*, 736

F.3d at 1353. Plaintiff has not done so. Plaintiff lives in Puerto Rico, not Florida.

Am. Compl. ¶ 2. He does not otherwise plead that any of his alleged injuries have

any connection to Florida rather than Puerto Rico. *Id.* ¶ 58.

And he proffers only conclusory allegations that the Articles were accessible and

accessed in Florida, which is insufficient to show an injury in Florida. *Catalyst

Pharms., Inc. v. Fullerton*, 748 F. App'x 944, 947 (11th Cir. 2018) ("A party

asserting jurisdiction in Florida over a nonresident defendant for a defamation claim

must make a prima facie showing that that the purported defamatory statements were

not merely accessible to, but also 'accessed by a third party in Florida.'" (citation

omitted) (emphasis in original)); *McCall v. Zotos*, 2023 WL 3946827, at *5 (11th

---

[5] Plaintiff presumably added claims for civil conspiracy and aiding and abetting to avail himself of the benefits of co-conspirator jurisdiction. Plaintiff, however, cannot rely on this principal to establish a prima facie case of jurisdiction over Mr. Jefferson for the same reasons: he has not adequately pleaded an underlying tort. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1218 (11th Cir. 1999) (holding that failure to allege underlying tort was fatal to plaintiff's attempt to establish co-conspirator jurisdiction over defendant).

Cir. June 12, 2023) (affirming dismissal for lack of jurisdiction where the allegedly tortious internet post was "accessible in" but did not "target" Florida). Plaintiff's allegations therefore fall short of establishing that the alleged conduct caused an injury in Florida to support the exercise of specific jurisdiction over Mr. Jefferson.

For these reasons, the Court should decline to exercise personal jurisdiction over Mr. Jefferson and dismiss Plaintiff's case pursuant to Rule 12(b)(2). In doing so, the Court need "not address federal due process dimension of personal jurisdiction." *Nature Coast Dev. Grp.*, 2022 WL 11589413, at *3 (citing *Stonepeak Partners, LP v. Tall Tower Cap., LLC*, 231 So. 3d 548, 558 (Fla. 2d DCA 2017)).

## II.    The Amended Complaint Should Be Dismissed Pursuant to Rule 12(b)(3) for Improper Venue

Federal courts are empowered to dismiss a case under Rule 12(b)(3) where the case is filed in an improper venue. Under the general venue statute, venue is proper in:

(1)    a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2)    a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3)    if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3). None of these venue requirements are met here.

*First*, this case falls outside Section 1391(b)(1) because Defendants are not all residents of Florida. Mr. Jefferson is a resident of North Carolina, while the other Defendants are residents of Florida. *Compare* Jefferson Decl. ¶¶ 2-8 (Mr. Jefferson is a resident of North Carolina), *with* Am. Compl. ¶¶ 4-5 (the Andrews Defendants are residents of Florida). In fact, there is no venue that would be proper under Section 1391(b)(1) because Defendants do not all reside in the same state.

*Second*, this case falls outside Section 1391(b)(2) because Plaintiff fails to allege that a substantial part of the events giving rise to the claims took place here. For defamation claims, "courts generally hold that venue under [Section 1391(b)(2)] is proper in the district where the injured party resides and the defamatory statements were published." *Cap. Corp. Merch. Banking v. Corp. Colocation, Inc.*, 2008 WL 4058014, at *3 (M.D. Fla. Aug. 27, 2008) (collecting cases). Plaintiff does not reside in this district; he resides in Puerto Rico. Am. Compl. ¶ 2. He does not allege that he suffered any economic or reputational harm in this district rather than in Puerto Rico. And he does not allege that the purported defamatory statements were published in this district—indeed, Plaintiff does not allege any facts about where the publication occurred because he does not identify the location of the USA Herald. To the contrary, Plaintiff alleges only that the Articles were published on the USA Herald's website and were therefore accessible in Florida and accessed by Florida residents. *Id.* ¶¶ 8, 10. These conclusory allegations, which apply equally to nearly all websites,

are insufficient to show that venue is proper in this district. Instead, based on the allegations in the Amended Complaint, the only district in which venue would be proper under Section 1391(b)(2) is the District of Puerto Rico where Plaintiff resides.

*Third*, this case falls outside Section 1391(b)(3) because there are judicial districts in which this case could have been brought. In particular, because venue is proper in online defamation cases in the district where the injured party resides, Plaintiff could have tried to bring this case in the District of Puerto Rico. *McDowell v. Ham*, 2011 WL 2560342, at *2 (N.D. Fla. May 23, 2011) ("Section 1392(b)(3) does not apply because that provision is only applicable when there is no district in which the action may otherwise be brought."), *report and recommendation adopted*, 2011 WL 2560328 (N.D. Fla. June 28, 2011).[6]

For these reasons, venue is improper in this district under Section 1391(b), and the only district in which venue would be proper is the District of Puerto Rico.

\*     \*     \*

Because the Court lacks personal jurisdiction over Mr. Jefferson and venue is otherwise not proper here, the Court should dismiss the Amended Complaint because transferring the case to a different district would be futile. Under 28 U.S.C.

---

[6] Even if Section 1391(b)(3) were available to Plaintiff, it does not provide for venue in this district because, as explained above, the Court lacks personal jurisdiction over Mr. Jefferson.

§ 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Section 1406(a) operates "where a suit is filed in federal court in a district in which venue or personal jurisdiction is improper." *Manley v. Engram*, 755 F.2d 1463, 1467 (11th Cir. 1985). When a case is transferred under Section 1406(a), the transferee court must apply the law of the forum in which it sits, including the applicable statute of limitations. *Id.*; *James Ventures, L.P. ex rel. Alpert v. Timco Aviation Servs., Inc.*, 315 F. App'x 885, 888 (11th Cir. 2009) ("When the transferor court lack[s] personal jurisdiction over the defendant, the transferee court must apply the law of the state in which it sits."); *see also Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 588 (8th Cir. 2007) (recognizing that under § 1406(a) no circuit court has applied "the law of the transferor forum to rescue a case with jurisdictional defects in the original court from a statute of limitations bar in the transferee forum.").

The rationale for this rule is "quite simple":

> A transfer under § 1406(a) is based not on the inconvenience of the transferor forum but on the impropriety of that forum. If the state law of the forum in which the action was originally commenced is applied following a § 1406(a) transfer, the plaintiff could benefit from having brought the action in an impermissible forum.

*Manley*, 755 F.2d at 1467 (citation omitted).

If there were a transfer here, the transferee court would need to apply the law of the forum in which it sits to Plaintiff's claims. As explained above, the only potential transferee court in which venue is proper is the District of Puerto Rico. Puerto Rico has a one-year statute of limitations for defamation claims running from the date of publication. *Miller v. Tyler Louthan*, 2024 WL 1230255, at *7 (D.P.R. Mar. 22, 2024) ("Defamation claims are subject to the one-year statute of limitations set for tort actions under Article 1802 of the Puerto Rico Civil Code. . . . [T]he Supreme Court of Puerto Rico has determined that 'a cause of action for defamation accrues immediately upon the occurrence of the tortious act.'" (quoting *Cacho-González v. Santarrosa*, 203 D.P.R. 215, 225 (P.R. 2019)). Plaintiff's claims would be time-barred under Puerto Rico law because both the Remcoda Article and the LGBCoin Article were published more than one year before Plaintiff filed this lawsuit. The Remcoda Article was published on August 27, 2022, and the LGBCoin Article was published on May 29, 2023. Am. Compl. ¶¶ 31, 45. Plaintiff did not commence this lawsuit until August 27, 2024—two years after the Remcoda Article was published and more than one year after the LGBCoin Article was published. As such, transfer would be futile and therefore not in the interest of justice because Plaintiff's claims would be time-barred under the applicable forum law of the only potential transferee court. *See, e.g.*, *Daniel v. Langley*, 2014 WL 6978874, at *2 (N.D. Fla. Dec. 9, 2014) (holding this district was an improper venue and dismissing

31

because the statute of limitations in the proper venue ran before plaintiff filed action).[7]

### III.    The Amended Complaint Should Be Dismissed Pursuant to Rule 12(b)(6) Because Plaintiff Fails to State a Defamation Claim Against Mr. Jefferson

Alternatively, Plaintiff's claims should be dismissed under Rule 12(b)(6) for failure to state a claim for the reasons set forth in Section I.B.1, above, which we incorporate by reference here. *See Nature Coast Dev. Grp., LLC*, 2022 WL 11589413, at *3 (dismissing claims against certain defendants for lack of personal jurisdiction and the same claims against others on the merits).

### CONCLUSION

For these reasons, the Amended Complaint should be dismissed pursuant to Rules 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. Alternatively, the Amended Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

---

[7] To the extent that Plaintiff argues that a different venue would be proper, such as North Carolina, where Mr. Jefferson resides, or Arizona, where the parties have a pending lawsuit, the outcome would be the same. *Oldham v. Univ. of N. Carolina*, 2023 WL 3984031, at *17 (M.D.N.C. June 13, 2023) ("Under North Carolina law, defamation claims for libel and slander carry a one-year statute of limitations."); *Benedict v. Google LLC*, 2024 WL 3427161, at *4 (D. Ariz. July 16, 2024) ("Under Arizona law, the statute of limitations for a defamation claim is one year after the defamation action accrues.").

**CERTIFICATE OF COMPLIANCE OF LOCAL RULE 7.1(F)**

I HEREBY CERTIFY that, in accordance with Local Rule 7.1(F) of the United States District Court for the Northern District of Florida, the foregoing motion to dismiss and supporting memorandum of law contains 7,994 words.

**CERTIFICATE OF ATTORNEY CONFERENCE - NOT REQUIRED**

I HEREBY CERTIFY that, pursuant to Local Rule 7.1(D), no attorney conference is required because this motion would determine the outcome of a case or claim.

Dated: December 6, 2024                              Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
101 East College Avenue
Post Office Drawer 1838
Tallahassee, FL 32301
Phone 850-222-6891
Fax 850-521-1379

*/s/ David C. Ashburn*
**DAVID C. ASHBURN, ESQ.**
Fla. Bar No. 0708046
ashburnd@gtlaw.com
jessica.turner@gtlaw.com

and

**WOLLMUTH MAHER & DEUTSCH LLP**

David H. Wollmuth (*pro hac vice* forthcoming)
Joshua M. Slocum (*pro hac vice* forthcoming)

Maxwell G. Dillan (*pro hac vice*
forthcoming)
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
dwollmuth@wmd-law.com
jslocum@wmd-law.com
mdillan@wmd-law.com

***Attorneys for Defendant Brett
Jefferson***