**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**

Case No. 4:24-cv-342-ACW-MAF

PATRICK HORSMAN,

Plaintiff,

v.

BRETT JEFFERSON,
RYAN ANDREWS, and
ANDREWS LAW FIRM, P.A.,

Defendants.
_______________________________________/

**PLAINTIFF PATRICK HORSMAN'S OPPOSITION**
**TO DEFENDANT BRETT JEFFERSON'S MOTION TO DISMISS**

Plaintiff Patrick Horsman respectfully files this Opposition to Defendant Brett Jefferson's Motion to Dismiss the First Amended Complaint ("FAC").

## INTRODUCTION

Defendant Jefferson moves to dismiss under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), arguing that the Court lacks personal jurisdiction, venue is improper, and that Plaintiff failed to state a claim upon which relief can be granted. Defendants' arguments lack merit. The FAC alleges sufficient facts to establish personal jurisdiction under Florida's long-arm statute and the Due Process Clause of the Fourteenth Amendment. Jefferson failed to properly move to dismiss on grounds of lack of personal jurisdiction and he is estopped from denying his

Florida residency. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), as substantial events giving rise to the claims occurred in Florida. Plaintiff adequately stated claims for defamation per se, defamation by implication, civil conspiracy, and aiding and abetting, easily satisfying the plausibility standard required under Rule 12(b)(6). Accordingly, Jefferson's motion to dismiss should be denied in its entirety.

## LEGAL STANDARD

### I. Standard for Dismissal Under Fed. R. Civ. P. 12(b)(2).

Determining whether a court has personal jurisdiction over a defendant involves a two-step analysis: (1) whether personal jurisdiction exists under Florida's long-arm statute, and (2) whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013). Under Florida's long-arm statute, a court has general personal jurisdiction over a defendant if the defendant has engaged in "substantial and not isolated activity within" Florida. § 48.193(2), Fla. Stat. When "a defendant is subject to the general jurisdiction of the court, the defendant must respond in that court to any cause of action, regardless of where the cause of action arose." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). Alternatively, specific personal jurisdiction applies if the defendant commits "a tortious act within the

state." § 48.193(1)(a)(2), Fla. Stat.

The constitutional due process requirement is met when a defendant engages in "significant activities" within the forum state, thereby enjoying the "benefits and protections" of the state's laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). When a defendant benefits from the protections of the forum state's laws, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum." *Id.*

## II. Standard for Dismissal Under Fed. R. Civ. P. 12(b)(3).

Pursuant to 28 U.S.C. § 1391(b)(2), venue in a civil action is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." On a Rule 12(b)(3) motion, the plaintiff bears "the burden of showing that venue in the forum is proper." *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). The court must accept the plaintiff's allegations regarding venue as true unless the defendant contradicts these allegations by affidavit, in which case the court may consider evidence outside the pleadings. Where conflicting evidence exists regarding venue, "[t]he court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.*

## III. Standard for Dismissal Under Fed. R. Civ. P. 12(b)(6).

A Rule 12(b)(6) motion to dismiss should be denied when the complaint

contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The court accepts the factual allegations as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008). A court should not grant a motion to dismiss if the factual allegations are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ARGUMENT

### I. The Allegations in the FAC Establish a Prima Facie Case for Personal Jurisdiction Over Jefferson.

To establish personal jurisdiction, a plaintiff must "allege sufficient facts to make out a prima facie case of jurisdiction." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999). Plaintiff alleges that this Court has both general and specific jurisdiction over Jefferson in Florida. FAC ¶ 8. The Court has general jurisdiction because Jefferson was a Florida resident and citizen when the complaint was filed, maintaining substantial and continuous contacts with the state since at least early 2021. These contacts include residing in Florida, being physically present in the state, conducting electronic communications within and directed to Florida, and engaging in significant discussions, transactions, and lawsuit-related activities

in Florida. FAC ¶ 8. The Court also has specific jurisdiction because Jefferson purposefully directed tortious activities at Florida. FAC ¶ 10.

Jefferson's defamatory articles were accessed, read, and understood by Florida residents. FAC ¶¶ 10, 26. Jefferson also engaged Florida-based attorneys, Defendants Andrews and Andrews Law, to draft, edit, and revise defamatory content. FAC ¶ 29. While in Florida, Andrews, acting on Jefferson's behalf, emailed defamatory material to the operator of the USA Herald following a May 28, 2023 phone call involving Jefferson, Andrews, and the operator. FAC ¶¶ 43–44. This defamatory content was published on May 29, 2023, in the LGBCoin Article. FAC ¶ 45. These allegations demonstrate Jefferson's substantial and deliberate connections to Florida, satisfying both Florida's long-arm statute and the constitutional requirements for personal jurisdiction.

## II. The Rule 12(b)(2) Motion to Dismiss Should Be Denied Because Jefferson Failed to Submit an Affidavit or Declaration in Support of the Motion.

A movant seeking dismissal under Rule 12(b)(2) must submit an affidavit or declaration to controvert the facts alleged in the complaint. When no affidavit is provided, the facts alleged in the complaint regarding personal jurisdiction are deemed true "to the extent that they are uncontroverted by the defendant's" affidavit. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990); accord *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

Here, Jefferson failed to submit an affidavit or declaration in support of his motion. [1] As a result, the allegations in the FAC regarding personal jurisdiction are uncontroverted and must be accepted as true. These allegations sufficiently demonstrate Jefferson's substantial and continuous contacts with Florida and his purposeful direction of tortious activities toward the state.

Because Plaintiff has adequately alleged facts establishing personal jurisdiction, and Jefferson failed to meet the evidentiary burden to controvert these allegations, the motion to dismiss under Rule 12(b)(2) should be denied.

## III. Jefferson is Estopped from Denying His Status as a Florida Resident Based on His Representations in Prior Florida Lawsuits.

Judicial estoppel is an equitable doctrine allowing courts to prevent a party from asserting a claim "inconsistent with a claim taken by that party in a previous proceeding" to "protect the integrity of the judicial process." *Stephens v. Tolbert*,

---

[1] ECF 17 is a declaration by Jefferson dated October 16, 2024. While Jefferson failed to incorporate this declaration by reference, even he had incorporated it, the content of that document is insufficient to shift the burden to Plaintiff because in that declaration, Jefferson failed to assert any facts as of the relevant date when the Complaint was filed. *See Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir. 1991) (holding that "personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed").

Jefferson's October 16, 2024 declaration only states that his "permanent residence is in North Carolina" as of October 16, 2024. ECF 17, ¶ 5. This declaration does not contain any assertion of fact regarding Jefferson's residency or citizenship as of August 27, 2024 when this lawsuit was filed. Jefferson's assertion that, approximately two months later, he wound up as a resident of North Carolina is fundamentally deficient and ineffective in challenging personal jurisdiction.

471 F.3d 1173, 1177 (11th Cir. 2006) (citing to *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1335 (11th Cir. 2005)). “The circumstances under which judicial estoppel should be invoked are not reducible to a general formulation of principle.” *Id.* Courts “traditionally look[] at three factors: (1) whether a later position asserted by a party was clearly inconsistent with an earlier position; (2) whether a party succeeded in persuading a court to accept an earlier position, “so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled”; and (3) whether the party with an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.*

Jefferson has repeatedly sworn in Florida lawsuits that he was a Florida resident at all relevant times. These sworn representations were accepted by Florida courts when determining venue and jurisdiction, and they were pivotal in allowing his lawsuits to proceed under Florida venue statutes, such as Fla. Stat. § 47.051. Judicial estoppel precludes Jefferson from now asserting North Carolina residency to evade liability in this case. His inconsistent position undermines the judicial process and would provide him with an unfair advantage if allowed. Jefferson’s prior representations of Florida residency, made under oath, bind him to that position in the current proceeding.

### A. Jefferson Swore that He was a Florida Resident In Multiple Florida Lawsuits.

Jefferson, through his attorney Andrews of Andrews Law, caused the following lawsuits to be filed in Gadsden County, Florida, which remain pending in Palm Beach County, Florida:

(1) *Jack Jefferson Carlisle, as Trustee of The Jefferson Family Dynasty Trust Dated August 17, 2021 v. Massachusetts Mutual Life Insurance Company and New York Life Insurance Company*, Case No. 2024002557, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida ("Jefferson Family Trust Lawsuit"), filed June 23, 2023.

(2) *Brett R. Jefferson and Jack Jefferson Carlisle, as Trustee of The Jefferson Family Dynasty Trust Dated August 17, 2021 v. Brian S. Grodin and Hugo A. Tomasio*, Case No. 2024CA004887, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida ("Jefferson Individual Lawsuit"), filed October 9, 2023.[2]

Chase Decl., ¶ 1-4, Ex. 1-4.

On October 23, 2023, Jefferson stated as follows in a lawsuit he filed in Gadsden County Circuit Court Florida, **"Plaintiff, Brett R. Jefferson, was at all relevant times a resident of the State of Florida."** *Jefferson v. Grodin and Tomasio*, Case No. 2023-CA-000771, *see* Chase Decl., ¶ 4, Ex. 1 (emphasis added). Jefferson continued, "Mr. Jefferson was often located in Florida during the

[2] Both lawsuits were originally filed in the Circuit Court of the Second Judicial Circuit in and for Gadsen County, Florida but were ultimately transferred to the Fifteenth Judicial Circuit in and for Palm Beach County, Florida by stipulation of the parties.

negotiation of the Policies… on or about February 22, 2023 [] Plaintiff [Jefferson] finally received a current snapshot of all the moving pieces involved in the Policies and financing… Unfortunately, however, the story does not end there in terms of Defendants' failure and/or refusal to perform its duties and responsibilities (including fiduciary duties) owed toward Plaintiff." *Id.* ¶¶ 7, 26, 29.

On April 26, 2024, Jefferson stated as follows: **"Plaintiff, Brett R. Jefferson, was at all relevant times a resident of the State of Florida."** *Jefferson v. Grodin and Tomasio*, Case No. 2023-CA-000771, *see* Chase Decl., ¶ 5, Ex. 5 (emphasis added). Jefferson continued, "Venue is proper because the conspiratorial, tortious, and wrongful acts of Defendants giving rise to this action were directed to, and did, cause harm to Plaintiffs in Florida." *Id.* ¶ 13.

Jefferson's nephew, Jack Carlisle, who has never resided in Florida Carlisle filed a lawsuit in Gadsden County Florida on June 23, 2023 as the Trustee of the Jefferson Family Dynasty Trust dated August 17, 2021, in which Carlisle alleged, **"Non-Party, Brett R. Jefferson, is and at all relevant times has been a resident of the State of Florida."** *Carlisle v. Massachusetts Mutual Life Ins. Co., et al.*, Case No. 2023-CA-000545, *see* Chase Decl., ¶ 6, Ex. 3 (emphasis added). Carlisle further asserted, "… pursuant to Fla. Stat. § 626.99(4)… Plaintiff is entitled to free look rights and all relief available under Fla. Stat. § 626.99(4)… Pursuant to Fla. Stat. § 47.051, venue is proper for this action in Gadsden County, Florida."

Carlisle further stated, "Non-Party, Catherine Jefferson, is and at all relevant times has also been a resident of the State of Florida. Mrs. Jefferson is the wife of Brett Jefferson, the settlor of The Jefferson Family Dynasty Trust Dated August 17, 2021… [Defendants] required Mrs. Jefferson (as the insured) and the Trustee of the Trust (as the policyowner) to sign certain 'policy delivery receipts,' including on or about October 12, 2021 and January 10, 2022… It was not until on or about February 22, 2023 that Mrs. Jefferson final received a current snapshot of all the moving pieces involved in the Policies and financing…" *Id.* ¶¶ 12, 19, 22.

On September 29, 2023, Carlisle stated, "Indeed in 2021, Brett Jefferson negotiated for and obtain certain whole life insurance policies for proposed insured Catherine Jefferson, to be owned by the Trust…August 2, 2023… Defendants finally and for the first time ever provided plaintiff with a copy of the Policies… requesting rescission of the Policies pursuant to Fla. Stat. § 626.99(4). Copies of Plaintiff's rescission letters, dated August 4, 2023 and [] August 5, 2023, are attached hereto… **Jefferson had told [Defendants] he would soon be moving to Florida and intended to make Florida his primary and permanent residence)**- and thus safely assumed at all relevant times… **that the Policies were Florida policies**; and the only Nevada connection Mr. Jefferson was aware of was that the Trust was a Nevada trust, but he was never informed or given any reason to believe that this could or

would result in the Policies being Nevada policies. **Regardless, and while Florida law still clearly applies to the Policies and this action**." 2, 4, page 5 Footnote,

These representations were corroborated by Carlisle's sworn testimony on December 10, 2024, confirming their accuracy. Chase Decl, ¶ 11, Ex. 8. Carlisle Dep. 130:20–132:1. This includes all allegations in the Jefferson Family Trust Lawsuit regarding Jefferson's status as a Florida resident "at all relevant times." Jefferson Family Trust Lawsuit Compl. ¶ 11; Jefferson Family Trust Lawsuit FAC ¶ 14; Jefferson Individual Lawsuit Compl. ¶ 7; Jefferson Individual Lawsuit FAC ¶ 7.

### B. Jefferson's Actions Demonstrate Purposeful Availment of Florida Law During the Relevant Time Period.

Jefferson's deliberate actions further support his Florida residency. He invoked protections under Florida law by filing lawsuits in Florida courts, citing entitlement to "free look" rights under Fla. Stat. § 626.99(4). Jefferson Family Trust Lawsuit FAC ¶ 27. He also demanded rescission of insurance policies based on Florida's statutory provisions and received relevant policy documents while in Florida. Jefferson Family Trust Lawsuit FAC ¶ 27. These events, including receiving a comprehensive policy overview on February 23, 2023, occurred while Jefferson maintained his Florida residency. Jefferson Family Trust Lawsuit FAC ¶ 25; Jefferson Individual Lawsuit FAC ¶ 26. Jefferson was therefore invoking the protection of Florida law seven months after publishing the August 27, 2022

Defamatory Remcoda Article and approximately six weeks before publishing the May 29, 2023 Defamatory LGBCoin Article. FAC ¶ 31, 45.

Jefferson signed policy delivery receipts on October 12, 2021, and January 10, 2022, requested to review the policies in subsequent months, and received a "snapshot" of the life insurance policy on February 23, 2023. Jefferson Family Trust Lawsuit FAC ¶¶ 22, 25; Jefferson Individual Lawsuit FAC ¶¶ 23, 26. These events occurred while Jefferson was a Florida citizen and resident, both before and after the August 27, 2022, publication of the Defamatory Remcoda Article and two months before the May 29, 2023, publication of the Defamatory LGBCoin Article *FAC* ¶¶ 31, 45. Jefferson's lawyer and agent Ryan Andrews also made the following statement in furtherance of the Jefferson Family Trust Lawsuit,:

> While Defendants may contend that the Policies were Nevada policies, Mr. Jefferson was led to believe including from Grodin, **who Mr. Jefferson had told he would soon be moving to Florida and intended to make Florida his primary and permanent residence)**- and thus safely assumed at all relevant times, including because Grodin and Tomasio (individually and on behalf of Defendants, as their agents) owed Mr. Jefferson fiduciary duties in connection with the Policies (which Mr. Jefferson appropriately relied on), **that the Policies were Florida policies**; and the only Nevada connection Mr. Jefferson was aware of was that the Trust was a Nevada trust, but he was never informed or given any reason to believe that this could or would result in the Policies being Nevada policies. **Regardless, and while Florida law still clearly applies to the Policies and this action**, Plaintiff is entitled to free look rights and rescission of the Policies under any and every state's free look laws, and complied

> with the applicable requirements to exercise any and every state 's law in seeking rescission of the Policies.

Jefferson Family Trust Lawsuit FAC ¶ 7 n. 5 (emphasis added). Jefferson's purposeful and sustained engagement with Florida law, through invoking statutory protections, filing lawsuits in Florida courts, and asserting Florida residency during the relevant time periods, underscores his deliberate availment of the benefits and protections of Florida law, further justifying this Court's exercise of specific personal jurisdiction over him.

### C. Florida Courts Accepted Jefferson's Sworn Residency Claims When Adjudicating Matters of Venue and Jurisdiction.

These admissions were pivotal in allowing Jefferson's lawsuits to proceed in Florida venues under the state's venue statutes, such as Fla. Stat. § 47.051. Accordingly, judicial estoppel applies to prevent Jefferson from now asserting North Carolina residency to avoid liability.

### D. Arizona Courts Also Accepted Jefferson's Sworn Claims of Residency in Florida in a Separate Lawsuit.

Jefferson and his company BRJ Holdings III, LLC are parties in an Arizona lawsuit. In that litigation, Jefferson's company, BRJ Holdings III, LLC, is the Plaintiff in the first of the following lawsuits, and Jefferson, individually, is a Defendant in the second:

> (1) *Ian Lev, Jack Carlisle, John Scannell, OBD Partners, LLC, and BRJ Holdings III, LLC v. Patrick B. Horsman, Jeffrey M. Dreyer, Ari M. Schiff, Integrated Ag XI, LLC, Integrated Ag XII, LLC, Integrated Ag XI AZ LLC, Integrated Ag Holdings LLC, Integrated Ag Holdings*

> *AZ LLC, Integrated Ag LP, Integrated Ag Equipment LLC, IAG Equipment, LLC, Integrated Ag Management LLC, Integrated Ag Operations LLC, Verified Organic LP, Verified Organic LLC, and AZ Farm Management LLC*, Case No. CV2020-12256, in the Superior Court of Arizona of Maricopa County.
>
> (2) *Patrick Horsman v. Brett Jefferson and Ian Lev*, Case No. CV2021-006034, in the Superior Court of Arizona of Maricopa County.

These Arizona cases have been consolidated and shall be collectively referred to as the "Arizona Lawsuit." Jefferson is represented by Defendants Andrews and Andrews Law in all four of these lawsuits. In all four of these lawsuits, Jefferson, individually and through his agents, has made representations to the court establishing that Jefferson is a Florida resident and citizen. As such Jefferson is estopped from denying that he is a Florida resident and citizen in this case.

**E. Jefferson's Should Be Estopped to Prevent an Unfair Advantage.**

Jefferson has proclaimed Florida citizenship four times in two separate lawsuits and has purposefully availed himself of the benefits and protections of Florida law. Jefferson should be estopped from denying his proclamation of his status as a Florida citizen and resident and from denying that he has invoked the benefits and privileges of Florida law.

## IV. If the Burden Shifted to Plaintiff to Prove Jefferson's Florida Residency and Citizenship, Plaintiff Has Submitted Evidence of Jefferson's Florida Property Ownership, Business Activity Through His Florida Attorneys, and an Adoptive Admission by Jefferson's Agent Confirming Jefferson's Florida Residency During the Relevant Period.

If the burden shifted to Plaintiff to establish this Court's exercise of personal jurisdiction over Jefferson, the evidence demonstrates that Jefferson's contacts with Florida are substantial and continuous, making it reasonable for him to anticipate being haled into court in Florida to defend this action. Where conflicts exist between the allegations in Plaintiff's First Amended Complaint, Jefferson's affidavit, and Plaintiff's evidence establishing personal jurisdiction, all reasonable inferences must be drawn in Plaintiff's favor on the issue of personal jurisdiction. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (holding that "[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff").

The Monroe County property records confirm that, on February 17, 2021, Jefferson's company, BRJ Holdings, LLC, purchased a mansion located at 14 Sunrise Cay Drive, Key Largo, Florida 33037. Chase Decl. ¶ 12, Ex. 9. The Monroe County property records confirm that BRJ Holdings, LLC still owns this property. Chase Decl. ¶ 13.

Moreover, Jefferson admitted to being a Florida citizen and resident in the

Complaint and First Amended Complaint filed in the Jefferson Family Trust Lawsuit and the Jefferson Individual Lawsuit, which involve operative facts occurring between January 2021 and August 4, 2023. In both pleadings, Jefferson's attorney represented that Jefferson was a Florida resident "at all relevant times." Jefferson Family Trust Lawsuit Compl. ¶ 11; Jefferson Family Trust Lawsuit *FAC* ¶ 14; Jefferson Individual Lawsuit Compl. ¶ 7; Jefferson Individual Lawsuit *FAC* ¶ 7. Regarding Jefferson's presence in Florida, on August 4, 2023, Jefferson's attorney, Ryan Andrews, sent a second rescission letter to Massachusetts Mutual Life Insurance Company and New York Life Insurance Company invoking § 626.99(4), Fla. Stat. Jefferson Family Trust Lawsuit FAC ¶ 4. This demonstrates that Jefferson invoked the protections of Florida law after the publication of the August 27, 2022, Remcoda Article and the May 29, 2023, Defamatory LGBCoin Article. Jefferson's nephew and trustee of Jefferson's family trust even testified under oath that the allegations in the Jefferson Family Lawsuit Complaint were true. Carlisle Depo. 130:20–132:1. The events alleged in both the Jefferson Family Trust Lawsuit and the Jefferson Individual Lawsuit, occurring between January 2021 and August 4, 2023, establish that Jefferson was present in Florida when he and Andrews conspired to conduct an Internet defamation campaign to destroy Plaintiff's reputation.

## V. Jefferson Is Subject to Specific Personal Jurisdiction in This Court Because He Committed a Tort in the State of Florida.

Under Florida's long-arm statute, § 48.193(1)(a)(2), a defendant is subject to

personal jurisdiction if they commit a tortious act within the state. The threshold question is whether the complaint alleges a cause of action. *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1223 (11th Cir. 2023), quoting *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). The Florida Supreme Court has established that a defendant's physical presence is not required to commit a tortious act in Florida; such acts can occur through telephonic, electronic, or written communications directed into the state. *Id.* In an Internet defamation case, a defendant commits the tortious act of defamation in Florida if the defamatory material posted on the Internet is "both *accessible* in Florida and *accessed* in Florida." *Internet Sols. Corp. v. Marshall*, 611 F.3d 1368, 1370 (11th Cir. 2010) citing *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1214-15, 1216 (Fla. 2010). A defamation claim in federal court may be pled generally if it satisfies Rule 8(a) and *Twombly*. *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1284 (M.D. Fla. 2009), aff'd, 451 Fed. Appx. 862 (11th Cir. 2012). Plaintiff sufficiently states a cause of action for all tort claims against Jefferson.

### A. Plaintiff States a Cause of Action for Defamation per se.

The elements of a defamation claim are: (1) publication, (2) falsity, (3) that the defendant acted with at least negligence regarding a private person, (4) actual damages, and (5) that the statement is defamatory. *Johnston v. Borders*, 36 F. 4th 1254, 1275 (11th Cir. 2022) (quoting *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098,

1105–06 (Fla. 2008). Defamation per se arises when a defendant's statement subjects a plaintiff to hatred, distrust, ridicule, contempt, or disgrace, or harms the plaintiff's business or profession. *Johnston*, 36 F. 4th at 1275 (11th Cir. 2022) (quoting *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d Dist. Ct. App. 2007)). A statement is defamatory per se if it is "so obviously defamatory" and damaging to one's reputation that it gives rise to "an absolute presumption both of malice and damage." *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1247 (S.D. Fla. 2014), aff'd (Feb. 17, 2015) (quoting *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973)); *see also Campbell v. Jacksonville Kennel Club*, 66 So. 2d 495, 497 (Fla. 1953) ("In the case of words actionable per se, their injurious character is a fact of common notoriety, established by the general consent of men, and the court consequently takes judicial notice of it.").

**1. The Court Should Deny the Motion to Dismiss because the Attachments to Defendants' Motion Are Not Properly Considered Because It is not Central to the Complaint.**

Courts may only consider documents outside of the complaint on a motion to dismiss if the plaintiff refers to the external documents and if the documents are central to the plaintiff's claim. *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1238 (11th Cir. 2014). A document is central to a complaint if it is a "necessary part of the plaintiff's effort to make out a claim." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Here, the four attachments to Defendants' motion to dismiss do not

meet this standard. These documents are not central to Plaintiff's claims, as they are unnecessary to Plaintiff's effort to make out a claim for defamation. Additionally, Defendant's case law for the proposition that the documents Andrews attempted to introduce in its motion to dismiss and the Court has already noted are not admissible is inapposite. Jefferson's M. Dismiss at 3-4, ECF No. 32. Defendant's case law relies on the same principles of being "central to Plaintiff's claim," which this Court has already noted "does not help here" because "[i]t is not enough to be important to the case or central to a *defense*." Order Granting M. Dismiss at 4, ECF No. 19; see *Nix v. ESPN, Inc.*, No. 1:18-CV-22208-UU, 2018 WL 8802885, at *6 n.2 (S.D. Fla. Aug. 30, 2018) (not reported) ("The Court may take judicial notice of this document because it is central to Plaintiffs' claims, and Plaintiffs do not dispute its accuracy.").

Defendants' reliance on *Universal Express* for the proposition that court filings in unrelated cases can be judicially noticed without converting the motion to dismiss into one for summary judgment is misplaced because the judicially noticed records in *Universal Express* were Federal Government regulations. *Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (not reported) (citing to *Stahl v. U.S. Dept. of Agric.*, 327 F.3d 697 (8th Cir. 2003) and *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir. 1999) for the proposition that "when considering a motion to dismiss in a securities fraud case" public records can be considered). Defendant's reliance on *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d

805, 812 n.4 (11th Cir. 2015) is also inapposite because like *Universal Express* it cites to *Bryant* that state court documents can be judicially noticed "when considering a motion to dismiss in a securities fraud case, may take judicial notice (for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents)." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

Furthermore, Defendants' assertion that the Remcoda Article and LGBCoin articles are "accurately recite allegations" made in the Remcoda Lawsuit and LGBCoin Lawsuit, respectively, is misplaced. Jefferson's M. Dismiss, ECF No. 32 at 16-18.

**2. Defendants Published the False and Defamatory Remcoda Article**

A plaintiff need only allege the elements of defamation per se generally under Rule 8(a). *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1284 (M.D. Fla. 2009). The allegations in the Complaint satisfy these. Plaintiff asserts that Defendants published false statements in the August 27, 2022 Remcoda Article, which falsely accused Plaintiff of involvement in a fraudulent scheme related to the Remcoda lawsuit. These statements are defamatory per se because they allege fraudulent conduct incompatible with Plaintiff's profession, involve moral turpitude, and expose Plaintiff to contempt and ridicule. Defendants acted negligently—or worse—by altering allegations from the second amended complaint

in the Remcoda lawsuit to falsely implicate Plaintiff. Plaintiff specifies how these changes, such as describing Plaintiff as improperly receiving funds, were both false and defamatory. Additionally, the Complaint alleges that the defamatory statements were published online, accessible in Florida, and accessed by Florida residents. The harm to Plaintiff's reputation and business, including in Florida, satisfies the jurisdictional nexus under *Internet Sols.*

Defendants assert that the Remcoda Article "accurately recites allegations" from the underlying litigation, arguing that the statements about Plaintiff's connection to the Unicorn entity and dealings with co-defendants are based on evidence filed in court. Jefferson's M. Dismiss, ECF No. 32 at 16-18. Defendants assert that the three statements are "accurately recite allegations" because the filings show that Unicorn was Gross' company, Horsman was "a 'Unicorn partner,' submitted evidence reflecting Plaintiff's dealing with co-defendants, and described his own role as agent for Unicorn in brokering sales of PPE" is an affirmative defense that, as explained below, is outside of the four corners of the complaint.

Defendants also assert that the statement that the lawsuit is "ever evolving" is accurate because, "the case was on its third complaint, the court had dismissed some claims and sustained others, and multiple motions to dismiss were still pending." Jefferson's M. Dismiss, ECF No. 32 at 17. This contention is also misplaced at this stage of the litigation. The Court must accept Plaintiff's allegations as true, including

that the statements were materially false and intentionally altered to create a defamatory implication regarding Plaintiff.

**3. Plaintiff has pled the LGBCoin Article is False and Defamatory.**

Plaintiff alleges that Defendants published the May 29, 2023 LGBCoin Article falsely asserting that Plaintiff was a party to the second amended complaint in the LGBCoin lawsuit and accused of fraud therein. However, Plaintiff was not named in the second amended complaint nor accused of fraud. These statements are demonstrably false and defamatory per se, as they impute fraudulent conduct incompatible with Plaintiff's profession and involve moral turpitude.

Defendants acted with at least negligence, if not greater fault. On May 30, 2023, Defendants directed their pseudonym bot, "Jeff Watterman," to contact the plaintiffs' attorney in the LGBCoin lawsuit, suggesting that "[y]ou may want to consider amending your complaint to add Patrick Horsman individually." This demonstrates Defendants' knowledge that Plaintiff was not a party to the lawsuit at the time of the article's publication, undermining any assertion of good faith.

Defendants attempt to argue that the LGBCoin Article is not materially false, claiming it "incorrectly attributes" the statements to the second amended complaint rather than the third amended complaint and "that only means that this attribution is "'technically false'" and not "'substantially and materially false'" because they mirror the allegations asserted in *De Ford* before the LGBCoin Article was

published." Jefferson's M. Dismiss at 17, ECF No. 32. However, this does not absolve Defendants of liability. As Plaintiff alleges, the statements themselves are false regardless of attribution, and Defendants' publication of such allegations creates a false and defamatory impression. FAC ¶47, ECF No. 29 ("The statement is false as Plaintiff was not "accused of fraud" or unjust enrichment in the 104-page class-action lawsuit. Moreover, Plaintiff did not engage in any fraud."). These issues cannot be resolved at the motion to dismiss stage, as they involve factual disputes outside the four corners of the Complaint.

### B. Plaintiff States a Cause of Action for Defamation by Implication.

Defamation by implication arises when "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Johnston,* 36 F. 4th at 1275 (quoting *Jews for Jesus*, *Inc.*, 997 So. 2d at 1108). Defamation by implication "applies in circumstances where literally true statements are conveyed in such a way as to create a false impression." *Jews For Jesus, Inc.*, 997 So. 2d at 1108. In analyzing whether language is defamatory, "[t]he publication made should be construed as the common mind would understand it," and not "in its mildest or most grievous sense." *Id.* (quoting *Loeb v. Geronemus*, 66 So. 2d 241, 245 (Fla 1953)). If "a statement is subject to two possible interpretations and one is defamatory, it is for the jury to decide whether the statement is in fact defamatory." *Johnston,* 36 F. 4th at 1275

(citing *Hallmark Builders, Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1463 (11th Cir. 1984)); *see also Perry v. Cosgrove*, 464 So. 2d 664, 666 (Fla. 2d DCA 1985) ("Where a communication is ambiguous and reasonably susceptible to a defamatory meaning, it is for the trier of fact to decide whether the communication was understood in the defamatory sense.").

**1. The Remcoda Article**

In connection with the August 27, 2022 Defamatory Remcoda Article, Plaintiff demonstrated that even if the article contained some true facts, or even if it was technically true, Defendants juxtaposed the statements in such a way as to falsely imply Plaintiff's involvement in a fraudulent scheme related to the Remcoda lawsuit. The article prominently features a large photograph of Plaintiff directly beneath a headline referencing "involvement in $3.7M alleged fraud." The placement of this image in close proximity to the headline communicates to the ordinary reader the false and defamatory implication that Plaintiff was involved in the fraudulent scheme surrounding the Remcoda lawsuit. Additionally, the article deliberately omits the crucial fact that Plaintiff was never named in the Remcoda lawsuit, further establishing the defamatory implication.

Defendant asserts that there is no false implication that Plaintiff was involved in the PPE scheme in the Remcoda lawsuit, "because Mr. Gross has been sued for perpetrating this scheme and he alleged in his prior court filings that he operated as

an agent of Unicorn in brokering PPE sales, identified Plaintiff as a "Unicorn partner," and submitted documents evidencing Plaintiff's involvement" and the "Remcoda Article qualifies its summary of *Remcoda* by stating that Mr. Gross and Plaintiff were involved in an '*alleged* fraud' and Mr. Gross and their company Unicorn 'were *allegedly* working with defendants from the start' and '*allegedly* received payment of their fee from Remcoda's funds that the defendants wrongfully withheld.'" Jefferson's M. Dismiss at 19-20, ECF No. 32. However, this is analysis is lacking.

Defendants assert that the Remcoda Article's omission of Horsman as a party to the suit does not create a false implication that he is a party to the suit because the Remcoda Article's "factual statements …show that Palintiff was not, in fact, named as a party." Jefferson's M. Dismiss at 20, ECF No. 32. Defendant's assertion that the only implication from the Remcoda Article is that Gross was a party to the lawsuit is laughable, when Horsman's name adorns the title of the article. The court reads a statement the way an ordinary person would read the article.

**2. The LGBCoin Article**

Similarly, regarding the May 29, 2023 Defamatory LGBCoin Article, Plaintiff established that Defendant arranged any true facts within the article to imply Plaintiff's involvement in a fraudulent scheme related to the second amended complaint in the LGBCoin lawsuit. The first sentence of the May 29, 2023

Defamatory LGBCoin Article states that Plaintiff's business partner was "accused of fraud along with unjust enrichment in a 104-page class-action lawsuit." To an ordinary reader, this language conveys the misleading and defamatory impression that Plaintiff was also "accused of fraud" in the 104-page class-action lawsuit. But Plaintiff was not accused of fraud in the 104-page pleading. Additionally, the article implies that Plaintiff was named in the second amended complaint in the LGBCoin lawsuit. This false implication arises from the Defendants' intentional omission of the key fact that Plaintiff was not named in the second amended complaint, from which the Defendants based their statements.

Under established Eleventh Circuit authority of *Johnston* and *Hallmark*, even if the language in these articles can be construed in two ways, one defamatory and the other not, this issue cannot be resolved on a motion to dismiss and it does not render the claim subject to dismissal because it is the jury's role to determine whether the August 27, 2022 Defamatory Remcoda Article and the May 29, 2023 Defamatory LGBCoin Article conveyed defamatory implications about Plaintiff. At this stage, Plaintiff sufficiently pled two counts of defamation by implication, and the Andrews Defendants' motion should be denied as to Counts III and IV.

Defendants assert the LBGCoin article does not falsely imply that Plaintiff in a fraudulent scheme connected to the LGBCoin lawsuit and that Plaintiff was named in the lawsuit's Second Amended Complaint while deliberately omitting the fact that

he was not. Defendants assert that Horsman was named a defendant in the third Amended Complaint and the LGBCoin Article did not state that Horsman was "accused of fraud" only that Horsman's business partner was, which is consistent with the allegations in the LGBCoin Case. Defendant also asserts that the references to the Second Amended Complaint does not change the "gist" of the implication." However, this analysis is weak.

### C. The Motion to Dismiss Should Be Denied Because Plaintiff Has Sufficiently Alleged Falsity and Defendant Does Not Controvert this Issue.

In a defamation action, "[a] statement is considered false if it has a different effect on the mind of the reader than the effect the truth would have produced. *Klayman*, 22 F. Supp. 3d at 1253 (quoting *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991)). Defendant Jefferson's assertion that the statements in the August 27, 2022 Defamatory Remcoda Article and the May 29, 2023 Defamatory LGBCoin Article are true or substantially true constitutes, at best, an affirmative defense. Jefferson Mot. Dismiss at 16*; Klayman*, 22 F. Supp. 3d at 1253 (quoting *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706-7 (Fla. 3d DCA 1999) ("Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true.")); *Grayson v. No Labels, Inc.*, 599 F. Supp. 3d 1184 (M.D. Fla. 2022). Courts generally do not resolve affirmative defenses at the motion-to-dismiss stage unless the defense "clearly

appears on the face of the complaint." *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993) (citing *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067 (11th Cir. 1984), *reh'g granted*, 764 F.2d 1400 (11th Cir. 1985)).

Defendant spent over a page asserting that only "false" statements can serve as a basis for defamation and Plaintiffs arguments in opposition to Andrews' Motion Dismiss regarding "true statements published with ill will." Jefferson's M. Dismiss at 22, ECF No. 32. Defendants assert that while Florida case law and its Constitution address "good motives" as part of truth as a defense, this analysis applies only after a plaintiff has sufficiently pled falsity. Jefferson's M. Dismiss at 22-24, ECF No. 32. However, they say, "[f]or all the reasons above, Plaintiff has failed to do so." Accordingly, Plaintiffs respond that the claims are in the alternative, Defendants have no right to respond to this argument, and Plaintiffs have already answered Defendant's arguments. Thus, Defendant's motion should be denied.

**D. Plaintiff States a Cause of Action for Civil Conspiracy.**

Defendant's sole argument for dismissing Plaintiff's cause of action for civil conspiracy is that Plaintiff fails to state causes of action for the underlying tort claims. As discussed above, Plaintiff has adequately stated causes of action for defamation per se and defamation by implication. Plaintiff incorporates by reference all arguments set forth herein as to why Plaintiff has properly stated a cause of action.

**E. Plaintiff States a Cause of Action for Aiding and Abetting.**

Similar to Defendant's argument for dismissing Plaintiff's claim for aiding and abetting, Defendant reasserts the same argument that Plaintiff has not stated a cause of action for the underlying tort claim. Plaintiff has adequately stated causes of action for defamation per se and defamation by implication. Plaintiff incorporates by reference all arguments set forth herein as to why Plaintiff has properly stated a cause of action.

### F. Jefferson Committed a Tort Within the State of Florida That Caused An Injury to Plaintiff in the State of Florida.

Pursuant to the United States Supreme Court's "effects test," a defendant commits a tort within the state and is subject to personal jurisdiction when the defendant intentionally directs their tortious conduct at the forum state and causes harm that the defendant should have anticipated would be suffered by the plaintiff in that state. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984); see also *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008) (holding that courts have formulated "the Calder test for personal jurisdiction as requiring a tort that was (1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state").

Plaintiff has alleged in the First Amended Complaint that "Jefferson's publication of defamatory material was purposefully directed at Florida." FAC ¶ 8. Plaintiff further alleged that the defamatory statements were accessible in Florida, widely viewed in Florida, read and understood by Florida citizens in Florida, and

accessed by Florida citizens in Florida. *Id.* ¶¶ 8, 10. Plaintiff specifically alleged that Jefferson and Andrews made defamatory statements about Plaintiff to the *USA Herald*'s operator during phone calls and that Andrews drafted, edited, and revised the defamatory articles while in Florida, acting on behalf of himself and Jefferson. *Id.* ¶¶ 29, 43, 44, 45.

Moreover, Jefferson admitted under oath in his declaration in the Arizona lawsuit that he "believed Mr. Horsman [Plaintiff] to be a resident of and located in Florida and/or Puerto Rico at all relevant times." Jefferson Arizona Lawsuit Decl. ¶ 14. This sworn admission demonstrates that Jefferson aimed his conduct toward Florida and intended to harm Plaintiff in Florida. Jefferson's conduct was further targeted at Florida through his use of his long-time Florida attorney, Ryan Andrews of Andrews Law, located in Tallahassee, Florida. *Id.* ¶¶ 4, 5, 8, 10, 11, 29, 43, 44, 45. Plaintiff also alleged that "Jefferson and Andrews' [Defendants] defamation campaign caused millions of dollars in damages to Plaintiff across various areas." *Id.* ¶ 58.

Based on the foregoing, Plaintiff has satisfied the *Calder* "effects test," and this Court may exercise specific personal jurisdiction over Jefferson in Florida. Accordingly, Jefferson's motion to dismiss should be denied.

## VI. The First Amended Complaint Should Not Be Dismissed Under Fed. R. Civ. P. 12(b)(3) Because Venue Is Proper in This Court Pursuant to 28 U.S.C. § 1391(b)(2), as a Substantial Part of the Events Giving Rise to Plaintiff's Claims Occurred in Tallahassee, Florida.

Pursuant to 28 U.S.C. § 1391(b)(2), a plaintiff can bring a civil action in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Plaintiff has alleged that "a significant portion of discussions, transactions, and lawsuit-related activities within Florida." FAC ¶ 8. This includes Andrews drafting, editing, and revising both defamatory articles, while in Florida, for both himself and on behalf of Jefferson. FAC ¶¶ 11, 29, 43, 45.

Jefferson's reliance on *Capital Corp. Merch. Banking, Inc. v. Corp. Colocation, Inc.*, No. 6:07-CV-1626ORL19KRS, 2008 WL 4058014, at *3 (M.D. Fla. Aug. 27, 2008), actually supports Plaintiff's choice of venue. In that case, the court found that venue was proper in the Middle District of Florida based solely on the allegations in the complaint, which stated that the websites were accessed within that district and that the plaintiff suffered harm there. Similarly, Plaintiff alleges that the defamatory statements were "accessible and widely viewed in Florida" and that they were "accessed, read, and understood" by citizens of Florida while they were in Florida. FAC ¶9. Plaintiff alleges that Defendants' campaign has caused millions of dollars in damages to Plaintiff "across various areas." FAC ¶ 58.

**VII. The First Amended Complaint Should Not Be Dismissed Under Fed. R. Civ. P. 12(b)(6) Because Plaintiff Has Stated Causes of Action for Defamation per se (Counts 1 and 2), Defamation by Implication (Counts 3 and 4), Civil Conspiracy (Count 5), and Aiding and Abetting (Counts 6 and 7).**

For the reasons stated above in the section explaining why this Court has specific personal jurisdiction over Jefferson, Jefferson's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be denied because Plaintiff has adequately stated a cause of action in all claims against Jefferson. Plaintiff hereby incorporates by reference all arguments from the section on specific personal jurisdiction regarding the sufficiency of Plaintiff's causes of action against Jefferson as if fully set forth herein.

## CONCLUSION

Defendant Brett Jefferson's Motion to Dismiss should be denied for the reasons discussed herein.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

By: *<u>/s/ Kenneth E. Chase</u>*

Kenneth E. Chase
Florida Bar No. 017661
kchase@chaselaw.com
Chase Law & Associates, P.A.
951 Yamato Road, Suite 280
Boca Raton, FL 33431
Telephone: (305) 402-9800

*Attorneys for*
*Plaintiff Patrick Horsman*

**<u>LOCAL RULE 7.1(F) CERTIFICATE</u>**

Pursuant to N.D. Fla. Local Rule 7.1(F), I hereby certify that this Opposition is in compliance with the Court's word limit. According to the word processing program used to prepare this Motion, the total number of words in the document, inclusive of headings, footnotes and quotations, and exclusive of the case style, signature block, and any certificate of service is 7,407.

By: *<u>/s/ Kenneth E. Chase</u>*
Kenneth E. Chase

**<u>CERTIFICATE OF SERVICE</u>**

I, Kenneth E. Chase, hereby certify that I served the foregoing via CM/ECF, which serves electronic notice to all counsel of record, on December 30, 2024.

By: *<u>/s/ Kenneth E. Chase</u>*
Kenneth E. Chase