IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

PATRICK HORSMAN,

      Plaintiff,

v.                                      Case No. 4:24-cv-342-AW-MAF

BRETT JEFFERSON,
RYAN ANDREWS, and
ANDREWS LAW FIRM, P.A.,

      Defendants.

_____/

## ORDER DENYING MOTION TO DISMISS
## AND LIFTING DISCOVERY STAY

Patrick Horsman sued Brett Jefferson, Ryan Andrews, and the Andrews Law

Firm. ECF No. 29 (FAC). The primary claim is that two purported USA Herald news

articles were really hit pieces Jefferson arranged through his attorney, Andrews. The

first article (the Remcoda article) allegedly associated Horsman with a federal fraud

lawsuit in New York (the Remcoda lawsuit). *Id.* ¶ 37; *see also* ECF No. 32-1. The

second article (the LGBCoin article) allegedly associated Horsman with a different

federal fraud lawsuit (the LGBCoin lawsuit). FAC ¶ 46; *see also* ECF Nos. 32-6 to

32-7.

Horsman claimed defamation per se (counts I and II), defamation by

implication (counts III and IV), aiding and abetting (counts V and VI), and civil

conspiracy (count VII). Jefferson moved to dismiss for lack of personal jurisdiction,

1

failure to state a claim, and improper venue. ECF No. 32 (MTD). This order denies that motion.

## I.

"A court without personal jurisdiction is powerless to take further action." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999). I will thus start with personal jurisdiction even though, as explained below, that issue merges to some extent with the issue of whether Horsman has stated a claim.

In this diversity case, the court has personal jurisdiction over Jefferson "only if two requirements are met: (1) the state long-arm statute, and (2) the Due Process Clause of the Fourteenth Amendment." *Id*. at 1214; *accord United Techs. Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009). Florida's long-arm statute has a general-jurisdiction provision that subjects those "engaged in substantial and not isolated activity within this state" to jurisdiction regardless of whether the claim relates to those activities. Fla. Stat. § 48.193(2). The statute also includes a specific-jurisdiction provision subjecting to jurisdiction those who commit tortious acts within the state. *Id*. § 48.193(1)(a)2. Horsman contends Jefferson is subject to both general and specific jurisdiction. Because I conclude Horsman has shown enough for specific jurisdiction, I need not address the general-jurisdiction issue.[1]

---

[1] I note, though, that Horsman's position on general jurisdiction is a difficult one. Florida courts have recognized that the statute's "substantial and not isolated

For specific jurisdiction, Horsman relied exclusively on the tortious-act provision, so he needed to allege facts that, if true, would establish that Jefferson committed a tortious act. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) ("In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine 'whether the allegations of the complaint state a cause of action.'" (quoting *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)). Thus, the question is whether Horsman has stated a claim "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In addressing that question, I accept all well-

---

activity" language is "the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Fourteenth Amendment Due Process Clause." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 n.6 (11th Cir. 2002). This means a defendant must be "essentially at home" here. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In fact, Horsman's primary argument was that Jefferson was domiciled in Florida. ECF No. 42 at 4. But I concluded at the evidentiary hearing that Horsman had not shown that to be true. I also rejected Horsman's argument that Jefferson should be estopped from disclaiming Florida domicile. Horsman separately argued, though, that there could be general jurisdiction over Jefferson even if he were domiciled elsewhere. *Id.* at 15-16. But he cited no cases finding general jurisdiction over an individual domiciled outside the forum state. *Cf. Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) ("In an 'exceptional case,' an individual's contacts with a forum might be so extensive as to support general jurisdiction notwithstanding domicile elsewhere, but the Second Circuit has yet to find such a case." (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014))). This does not seem to be such an "exceptional case," but I need not further address the issue.

pleaded facts as true and draw all reasonable inferences in Horsman's favor. *See*

*MacPhee v. MiMedx Grp.*, 73 F.4th 1220, 1228 (11th Cir. 2023).

## A.

In contending Horsman has not stated any defamation claim, Jefferson

principally argues there are no plausible allegations that any statement in the articles

was false. *See* MTD at 15. Because falsity is an essential element of Horsman's

defamation claims (counts I-IV), Jefferson argues, Horsman has not alleged enough.

*See id.* (quoting *Turner v. Wells*, 879 F.3d 1254, 1267 (11th Cir. 2018)); *see also*

*Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106, 1108 (Fla. 2008) (noting that

defamation under Florida law requires a false statement and that "defamation by

implication applies in circumstances where literally true statements are conveyed in

such a way as to create a false impression").

With respect to each defamation claim, Jefferson's argument is essentially the

same: that all the purportedly defamatory statements are simply accurate summaries

of ongoing legal matters. Jefferson may be right about that, but "the actual truth or

falsity of a statement seems to be quintessentially a question of fact that ought not

to be determined on a motion to dismiss absent some extraordinary factor not present

in this case." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016). In

some instances, a court can determine statements are not defamatory as a matter of

law. *See, e.g.*, *Turner v. Wells*, 879 F.3d 1254, 1262-63 (11th Cir. 2018) (noting that

courts determine "whether a statement of fact is susceptible to defamatory interpretation"). But this is not one of those instances. As explained below, the complaint alleges that each article includes statements that I cannot say, as a matter of law, are true.

Likely recognizing I must look beyond the complaint to side with him, Jefferson appended several exhibits to his response. ECF Nos. 32-1 to 32-7. He contends I can consider some based on the incorporation-by-reference doctrine and others through judicial notice. MTD at 3-4. But even if I considered all of them, I would still conclude the defamation claims are at least plausible.

First, it is far from clear that the Remcoda article merely describes the lawsuit's goings-on. Its headline states "Patrick Horsman and partner Russel Gross involvement (sic) in $3.7M alleged fraud." FAC at 28. It is at least plausible that a reader would view the headline as a proclamation about Horsman's conduct and not merely a litigation summary.

Allegations about the LGBCoin article are also sufficient—at least at this preliminary stage. According to the complaint, that article falsely said Horsman owned certain companies that "defrauded investors." FAC ¶ 50. If Horsman does not own these entities, as his complaint suggests, or if they did not defraud investors, the alleged statement is at least plausibly defamatory.

Jefferson nonetheless makes several fair points. It is unlikely, for example, that it would be materially false to attribute allegations to a second amended complaint if they appeared only in a third amended complaint. Further, from the incomplete record, it does seem the article includes some arguably fair descriptions of allegations in the lawsuit's third amended complaint. *Compare* ECF No. 32-5 at 2-3 ("Thomas McLaughlin, co-founder of LGBCoin and business partners with Patrick Horsman at Coral Defi (Coral Capital Management, LLC), is accused of fraud along with unjust enrichment in a 104 page class-action lawsuit . . . .") *with* ECF No. 32-7 at 176, 178-80, 181-82 (third amended complaint accusing Horsman of violating Florida's Securities and Investment Protection Act, civil conspiracy, and unjust enrichment). I cannot say, however, that the article is not defamatory as a matter of law because the actual article is not before the court.[2] Thus, at this stage, I must rely entirely on the complaint's description of the article.

---

[2] Although the complaint and motion to dismiss discuss the May 29 LGBCoin article, no party has submitted a complete copy of that article. The operative complaint attached some sort of reprint. *See* FAC at 40-44 (June 28 ValueWalk republication). And Jefferson appended to the motion to dismiss only part of the May 29 article. *See* ECF No. 32-5 at 2-4 (one page of May 29 LGBCoin article). The June 28 republication attached to the complaint does not match up with the first page of the May 29 article (appended to the motion to dismiss), and the complaint attributes to the May 29 article quotes that do not appear verbatim in the republication. *Compare* FAC ¶ 47 ("Thomas McLaughlin, co-founder of LGBCoin and business partners with Patrick Horsman at Coral Defi . . .") *with* FAC at 40.

Finally, separate from the articles, Horsman alleges defamation through a May 2023 email stating Horsman was involved in "a number of scams." FAC ¶¶ 51, 52. Horsman also alleged other phone calls and emails with false and defamatory statements, *see id.* ¶¶ 27-30, 42-44, 64, 71, although some (but not all) were vague and conclusory. Jefferson has not taken issue with any of these allegations, and, at this stage, I assume the nonconclusory ones are true. This is an independent reason to reject Jefferson's contention that Horsman has not stated a claim as to the defamation counts.

As to the civil conspiracy and aiding and abetting claims (counts V, VI, and VII), Jefferson argues only the lack of an underlying tort. *See* MTD at 24-26. Jefferson is correct that both claims require some underlying tortious conduct. *See Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1136 (Fla. 3d DCA 2018) ("Florida does not recognize civil conspiracy as a freestanding tort."); *Taubenfeld v. Lasko*, 324 So. 3d 529, 543-44 (Fla. 4th DCA 2021) (noting that "[t]o state a claim for aiding and abetting a tort in Florida, a plaintiff must allege an underlying violation on the part of the primary wrongdoer" (cleaned up)). But because the complaint states defamation claims, these arguments fail.

**B.**

Having concluded Horsman stated a claim as to each count, I must determine whether he sufficiently alleged committed torts *in Florida*. *See* Fla. Stat.

§ 48.193(1)(a)2 (providing for jurisdiction over those who committed "a tortious act within this state" when the plaintiff's cause of action arises from that conduct).

> A nonresident defendant commits the tortious act of defamation in Florida for purposes of Florida's long-arm statute when the nonresident makes allegedly defamatory statements about a Florida resident by posting those statements on a website, provided that the website posts containing the statements are accessible in Florida and accessed in Florida.

*Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1216 (Fla. 2010). Horsman's complaint alleges the defamatory statements were accessible in Florida and "widely viewed" there. FAC ¶¶ 8, 10.

Jefferson argues, though, that he caused no injury in Florida because Horsman "lives in Puerto Rico, not Florida." MTD at 26. Although *Internet Solutions* involved a Floridian's defamation claim, it did not suggest the outcome would be different if an online publication "widely viewed" in Florida defamed a nonresident plaintiff. Indeed, as a subsequent Florida decision explained, "the focus in *Internet Solutions*" was on "whether 'the material was accessed—and thus published—in Florida.'" *Lowery v. McBee*, 322 So. 3d 110, 116 (Fla. 4th DCA 2021) (quoting *Internet Sols.*, 39 So. 3d at 1215). This is consistent with the fact that the "tort of libel is generally held to occur wherever the offending material is circulated." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 777 (1984); *see also Internet Sols.*, 39 So. 3d at 1214 ("[T]he tort of defamation is committed in the place where the defamatory material is published."); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th

Cir. 2013) (finding the tortious-conduct provision of Florida's long-arm statute applied when a foreign defendant committed trademark infringement in Florida even though the plaintiff was also a foreign corporation); *Lowery*, 322 So. 3d at 117 (finding defamation claim accrued for venue purposes where a third party accessed a Facebook post, without regard to where either party resided); *Marti v. Iberostar Hoteles y Apartamentos S.L.*, 2025 WL 253991, at *7 (S.D. Fla. Jan. 21, 2025) ("That *Internet Solutions* involved a Florida plaintiff was thus not central to the Florida Supreme Court's holding; what was relevant was whether the material was accessed in Florida.") (cleaned up).

Moreover, the complaint alleges the defamation was targeted at Horsman's reputation and business interests. *See, e.g.*, FAC ¶¶ 57-58. A logical inference from the complaint is that Horsman does business in Florida. Part of the article at issue, for example, alleged Horsman violated Florida securities law. FAC at 41-42. And the LGBCoin lawsuit was filed in Florida. *See* ECF No. 32-7 at 2. The bottom line is that Horsman's defamation claims satisfy Florida's long-arm statute.

As to the other claims, the analysis is even more straightforward. The complaint alleges Jefferson hired a Florida law firm to draft the articles in Florida. FAC ¶ 29. It also alleges Andrews (a Floridian) acted as Jefferson's agent to work with the USA Herald to effect the publication. FAC ¶¶ 43-44. This is enough for the non-defamation claims.

The civil conspiracy count satisfies Florida's long-arm statute for another reason. The long-arm statute "can support personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida." *United Techs.*, 556 F.3d at 1281-82.

## C.

Because Florida's long-arm statute reaches Horsman's claims, the remaining question is whether this court's exercise of personal jurisdiction is consistent with the Fourteenth Amendment's Due Process Clause. Exercising jurisdiction is appropriate when a defendant has "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This test focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). Here, I have already concluded the alleged conduct was aimed at Florida and caused harm in Florida. Regardless, Jefferson argued I need not address the due process concerns, MTD at 27, and he never argued that if the long-arm statute were satisfied, there would nonetheless be due process problems. Jefferson has not shown any Due Process issue.

10

## II.

Jefferson next argues improper venue. Venue is proper here if "a substantial part of the events or omissions giving rise to the claim occurred" in this district. 28 U.S.C. § 1391(b)(2). Having already determined the complaint alleges commission of torts in Florida, I cannot conclude venue is improper. Indeed, at the hearing, Jefferson's counsel was unable to explain how, if I rejected his specific-jurisdiction arguments, I could nonetheless side with him on venue.

## III.

Last, to the extent Jefferson presents Rule 12(b)(6) arguments independent of his personal-jurisdiction arguments, I reject them for the reasons set out above.

\* \* \*

The motion to dismiss (ECF No. 32) is DENIED. Jefferson has fourteen days to file an answer.

The stay of discovery (*see* ECF No. 44) is LIFTED, and the parties may resume discovery. The motion to lift the stay in part (ECF No. 56) is DENIED as moot.

SO ORDERED on May 2, 2025.

s/ *Allen Winsor*
United States District Judge

11