# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

Case No. 4:24-cv-342-ACW-MAF

PATRICK HORSMAN,

     Plaintiff,

v.

BRETT JEFFERSON,

     Defendant.

_____/

## PLAINTIFF'S RENEWED MOTION TO COMPEL
## DISCOVERY RESPONSES FROM DEFENDANT BRETT JEFFERSON

Plaintiff Patrick Horsman respectfully moves to compel Defendant Brett Jefferson to provide full and complete answers to specific interrogatories and requests for production.

## INTRODUCTION

This renewed motion is submitted pursuant to the Court's September 24, 2025 Order (ECF No. 98) and is organized request-by-request. The disputed requests are Interrogatories 5, 9, 10, 12, 14, 17, 21, and 22, and Requests for Production 1–5, 6–11, 15–18, 21–24, 26, 28, 33, 35, 41, 43–46, 68, and 80. Jefferson's responses are not Rule-compliant: they rely on boilerplate objections and an arbitrary 2022–2023 cut-off, the responses do not indicate whether responsive documents exist or are being withheld, and Jefferson substitutes "does not recall" for the "full and

complete" answers that Rules 33 and 34 require. The pattern has obstructed discovery into core topics, including payments and communications with Richard Gorman, third-party media outreach, and the ProtonMail account, and has hampered Plaintiff's ability to obtain plainly relevant evidence.

### Prior Dealings Establish Course of Conduct, Intent, Knowledge, Malice

Jefferson's unilateral effort to cabin discovery to 2022–2023 ignores settled law. Evidence of prior conduct is admissible under Rule 404(b) to prove motive, intent, knowledge, plan, preparation, or absence of mistake. If the evidence is potentially admissible, it is discoverable under Rule 26(b)(1). Prior dealings with a co-conspirator are probative of intent and knowledge, even years earlier. *United States v. Lampley*, 68 F.3d 1296, 1300–01 (11th Cir. 1995). Patterns also support actual malice. *St. Amant v. Thompson*, 390 U.S. 727, 731–32 (1968). The Eleventh Circuit permits broad, liberal discovery to develop such proof. *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1264–66 (11th Cir. 2002); see *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 688–89 (S.D. Fla. 2011).

These principles—together with the Supreme Court's directive that the discovery rules "are to be accorded a broad and liberal treatment," *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)—foreclose Jefferson's unilateral time bar and require disclosure from 2019 forward of his payments and communications with Gorman and other media sources, as well as the related ESI (including ProtonMail).

See also *Sallah v. Worldwide Clearing, LLC*, 855 F. Supp. 2d 1364, 1373 (S.D. Fla. 2012) (boilerplate, unsupported burden/relevance objections are insufficient).

### Interrogatory No. 5

**Request**: Did you delete any emails from the joeyrocks99@protonmail.com email address?

**Initial Response** (June 16, 2025): Despite making reasonable efforts to obtain information responsive to this Interrogatory, Jefferson lacks knowledge or information sufficient to respond to this Interrogatory. The joeyrocks99@protonmail.com email account has not been accessed in years and has been deleted pursuant to ProtonMail's standard retention policy.

**Supplemental Response** (July 25, 2025): Jefferson responds that he does not recall deleting any emails from the account, which is one that he rarely used and last accessed approximately two years ago.

**Deficiency and Argument**: First, Jefferson claimed that he does not have knowledge or information sufficient to respond to the question of whether he deleted emails. He specifically stated that the Protonmail account "has not been accessed in years" and "has been deleted pursuant to ProtonMail's standard retention policy." Then he changed his answer and stated that he "does not recall deleting any emails" but he elected to include that he rarely used it and last accessed it approximately two

years ago. Is the account deleted? Are emails deleted? The answer is unclear and a better answer should be compelled.

## Interrogatory No. 9

**Request**: Describe the terms of engagement between you and Richard Gorman, any company operated by Gorman, or the USA Herald with regard to the publication or dissemination of articles about Patrick Horsman.

**Initial Response**: There were no "terms of engagement" between Jefferson and Richard Gorman, any company operated by Gorman, or the USA Herald with regard to the publication or dissemination of articles about Horsman.

**Supplemental Response**: Defendant provided random terms of engagement apparently found on the USA Herald website.

**Deficiency and Argument**: Jefferson decided to proffer terms of engagement which would apply to someone without a prior course of dealing. Jefferson never said those generic terms of engagement were his terms of engagement, and they were not. Jefferson has had many opportunities to answer the question regarding the terms of engagement. Since he will not do so, the prior course of dealing becomes more relevant and important to discover. An answer should be compelled.

**Interrogatory No. 10**

**Request**: Identify the dates and amounts of all payments you made to Richard Gorman, or any company operated by Gorman, including but not limited to the USA Herald, Gorman Economics, or Reputation Management Services.

**Initial Response**: Jefferson responds that he is diligently gathering information to answer this Interrogatory and will provide responsive information when it becomes available.

**Supplemental Response**: Jefferson responds that while he made a payment to Gorman in connection with the Remcoda Article and LGBCoin Article, he does not recall when he made such a payment or any such amount.

**Deficiency and Argument**: The Court should not accept Jefferson's self-serving lack of diligent effort. The dates and amounts of his payments for the acts in question are important and Jefferson could track that information down. His rigid proclamation that "Jefferson will respond only to facts material to the specific issues in this case, which include the USA Herald's publications of the Remcoda Article and the LGBCoin Article" is not the law.

Jefferson is simultaneously failing to provide the necessary details, and unilaterally limiting the scope to what he feels like providing. This is a good example of why it is necessary to know the full context of the relationship between Jefferson and Gorman, including all payments that Jefferson made to Gorman. Since Jefferson

is apparently unable to discern which payments are for the publication of the materials about Plaintiff, then Plaintiff should be entitled to see the context of the financial dealings between those two people so that a fact finder can determine what Jefferson is unable to determine.

### Interrogatory No. 12

**Request**: For each payment you made to Gorman, or any company operated by Gorman, state the reason for the payment. For example, $15,000 paid on May 30, 2023 for Gorman or the USA Herald to "push[] to get the lawyer to add Horsman individually [to the LGBCoin Lawsuit]."

**Initial Response**: Despite making reasonable efforts to obtain information responsive to this Interrogatory, Jefferson lacks knowledge or information sufficient to respond to this Interrogatory.

**Supplemental Response**: Subject to that objection, Jefferson responds that while he made a payment to Gorman in connection with the Remcoda Article and LGBCoin Article, he does not recall when he made such a payment or the amounts.

**Deficiency and Argument**: Jefferson does not get to just say that he "does not recall" when he made the payment or the amount. One of the articles was published in August 2022, the other in May 2023. This lawsuit was filed in 2024. This is not very long ago. Jefferson's proclamation of not "recalling" when he made the payments or the amounts is a simply an insufficient answer for which Jefferson

should be compelled to provide a fulsome response without objection or qualification.

### Interrogatories Nos. 14 and 17

**Request No. 14**: Explain the totality of your involvement in the August 27, 2022 Defamatory Remcoda Article, including but not limited to whether the article was your idea, whether you requested the article, whether you paid for the article, whether you drafted, edited, approved, or contributed to the article, and the names of all persons who drafted, edited, approved, or contributed to the article.

**Initial Response**: Jefferson "informed Gorman of the existence" of the Remcoda lawsuit and "discussed with Gorman the USA Herald publishing an article regarding that lawsuit." The remainder of his interrogatory answer is a diatribe about what he contends Gorman stated.

**Supplemental Response**: The updated response includes an admission that Jefferson "made a payment in connection with the article." But he provides no additional information about his involvement.

**Deficiency and Argument**: Jefferson failed to explain the totality of his involvement. He started to explain, then he admitted to a payment, then he veered off course in a diatribe about what someone else said. The interrogatory pertains to Jefferson's involvement in the publication that he purchased.

**Request No. 17**: Same as 14, for LGBCoin Article.

**<u>Interrogatory No. 21</u>**

**Request**: List each electronic device that you searched in connection with your document production and responses to Horsman's First Set of Requests for Production of Documents.

**Initial/Supplemental Response**: Jefferson responds that searches for documents responsive to Horsman's First Set of Requests for Production of Documents included his email address bjefferson@hildenecap.com, as well as the joeyrocks99@protonmail.com email address and his cellular phone.

**Deficiency and Argument**: Jefferson does not identify the electronic device on which his two email addresses were purportedly searched. He previously stated under oath that his Protonmail account was "closed" and now he is saying that "searches for documents" occurred in the "closed" account. And yet, Jefferson does not state that he searched anything. The interrogatory called for an answer as to which devices *Jefferson* searched, not which devices an unknown person may have purportedly searched on behalf of Jefferson.

**<u>Interrogatory No. 22</u>**

**Request**: How much money did you pay for the publication of negative media content about Patrick Horsman?

**Initial Response**: Jefferson lacks knowledge or information sufficient to respond to this Interrogatory.

8

**Supplemental Response**: Jefferson responds that while he made a payment to Gorman in connection with the Remcoda Article and LGBCoin Article, he does not recall when he made such a payment or any such amounts.

**Deficiency and Argument**: The interrogatory calls for Jefferson to answer the question regarding the total amount of money spent for publication of negative media content about Plaintiff. This subject matter is highly relevant and Jefferson should be ordered to provide a fulsome and candid answer.

## Request Nos. 1–5

**Requests**: Documents concerning the $7,500 payment made by Andrews Law Office to Gorman Economics on or about May 6, 2019, including but not limited to communications or records showing whether that payment was made on Your behalf or using funds You provided; similar for other 2019–2020 payments.

**Initial Response**: Objections (scope, relevance); no production.

**Supplemental Response**: Refusal; no indication of search or withholding.

**Deficiency and Argument**: Jefferson made specific payments to Gorman in 2019 and 2020 through the Andrews law firm. The requests call for documents relative to those payments to Gorman and his companies. Jefferson has refused to produce documents. And nonetheless, Jefferson did not indicate whether he is withholding any responsive documents based on his objections and he does not

indicate that he searched for responsive documents. Jefferson should be ordered to produce all responsive documents.

### Request No. 6

**Request**: Documents related to any payment made by You or on Your behalf to Richard Gorman or any entity affiliated with him, directly or indirectly or through an intermediary, in connection with Patrick Horsman.

**Initial Response**: Based on the foregoing Specific Objections, Jefferson will perform a reasonable search for documents responsive to this Request and produce any non-privileged documents, if any, that are within Jefferson's possession, custody, or control during the time period of January 1, 2022 to December 31, 2023 (the "Relevant Period") relating to the Remcoda Article, the LGBCoin Article, and any republications.

**Supplemental Response**: Same promise to conduct a search in the future relative to a self-described narrow timeframe that is found nowhere in the discovery request.

**Deficiency and Argument**: The response artificially limits the timeframe for very relevant subject matter. The material sought is specialized and not overbroad. The request calls for documents related to payment by Jefferson to Gorman or one of Gorman's companies, directly or through intermediaries, in connection with

Patrick Horsman. The universe of payments could not be that large to merit Jefferson's contortions and self-serving limitations.

This issue dovetails into the course of dealing and character evidence matters. Jefferson has previously been the subject of a reported case where he was found to have defamed a small business owner who remodeled his house. *SBD Kitchens, LLC v. Jefferson*, 157 Conn. App. Ct. 731, 744 (Conn. App. 2015).[1]

These matters are also relevant for punitive damages, intent, and malice. Jefferson was previously found liable for defamation and ordered to pay punitive damages. However, the punitive damages were not sufficiently high to have a deterrent effect on Jefferson's conduct.

### Request No. 7

**Request**: Documents related to any payment or transfer of value by You to any media content provider in connection with media content concerning Patrick Horsman.

---

[1] In entering an award of punitive damages against Jefferson, the arbitrator, after identifying several "false and/or defamatory statements" that he found to have been made on the website, stated: "When coupled with the content and tone of internal e-mails between and among [Brett Jefferson, Russell, Walker] and others, the conclusion is inescapable that publication of the website was motivated in large measure by a desire to embarrass [the plaintiff] and tarnish its reputation in the eyes of those who visited the website. It is also evident that efforts were made by Mr. Jefferson and his agents to optimize the website so that it appears as a prominent search result when the term 'SBD' is the subject of a 'Google' or related search inquiry." *Id.*

**Initial/Supplemental Response**: Boilerplate, self-servingly limited to 2022–2023, no production.

**Deficiency and Argument**: This request pertains to documents regarding payment to any media content provider regarding Plaintiff. Clearly some documents exist and those were not produced. The response does not indicate whether any responsive documents were found, whether any documents are being withheld based on any objections, and what the search entailed. Unless the payment was a hand to hand transaction in cash, in which case a person would perhaps be more likely to remember it, a paper trail, electronic or otherwise, would likely be generated. Jefferson's failure to produce anything is improper and he should be compelled to serve an amended, compliant response along with documents without objections.

## Request No. 8

**Request**: Documents related to any payment made by You or on Your behalf to any individual or media content provider in connection with media content concerning Patrick Horsman.

**Initial/Supplemental Response**: Similar to 7, boilerplate limits, no production.

**Deficiency and Argument**: Same argument as No. 7. The evidence exists, Jefferson just refuses to produce it. He should be compelled to comply with his discovery obligations.

## Request No. 9

**Request**: Documents related to any agreement between You and Richard Gorman or any entity affiliated with Richard Gorman, including but not limited to Reputation Management Consultants and USA Herald in connection with media content concerning Patrick Horsman.

**Initial Response**: Same boilerplate, no production.

**Supplemental Response**: No production, no information on whether documents are being withheld due to objections.

**Deficiency and Argument**: Jefferson's objections should be overruled because the prior dealings in the same context between the same two people who published the content about Plaintiff are relevant. Among the many reasons, this evidence is relevant and admissible to establish motive, intent, knowledge, plan, modus operandi, and malice. The response does not indicate whether any documents are being withheld based on the objections and whether any responsive documents were produced at all. Jefferson should be compelled to provide a proper response.

## Request No. 10

**Request**: Documents between You and any media content provider concerning Patrick Horsman.

**Initial/Supplemental Response**: Same boilerplate as above; limits to articles.

**Deficiency and Argument**: Jefferson provided the same boilerplate response. Jefferson is not entitled to unilaterally limit the scope of a discovery request particularly when it implicates highly relevant subject matter such as documents between Jefferson and media content providers regarding Plaintiff. The universe of discoverable materials there should be limited to the point where Jefferson could obtain the data without much difficulty. Thus, a proper response should be compelled.

## Request No. 11

**Request**: Drafts, outlines, or summaries of articles or press releases, or other media content referencing Patrick Horsman whether published or not.

**Initial/Supplemental Response**: Same boilerplate as above.

**Deficiency and Argument**: Jefferson does not have the right to unilaterally narrow the scope of the request, declare that he intends to search when he gets around to it, and then state that he'll let us know if he finds anything. This is not a proper discovery response.

## Request Nos. 15–18

**Requests**: Communications between You and Richard Gorman concerning media content related to Patrick Horsman; same for specific Gorman-owned companies (e.g., USA Herald, Reputation Management).

**Initial/Supplemental Response**: Same boilerplate as above.

**Deficiency and Argument**: This subject matter is highly relevant and clearly discoverable. The response provided is insufficient and noncompliant.

**Request Nos. 21–24**

**Requests**: Same as 15 but with specific Gorman email addresses rather than companies.

**Initial/Supplemental Response**: Same as 15.

**Deficiency and Argument**: There is no basis for Defendant's noncompliance.

**Request No. 26**

**Request**: Documents relating to SEO, backlinking, or syndication services used in connection with media content mentioning Patrick Horsman.

**Initial/Supplemental Response**: Same boilerplate.

**Deficiency and Argument**: This subject matter is relevant to intent, motive, absence of mistake, and malice. Moreover, these were the instruments of defamation that Defendant utilized in the *SBD Kitchens* case. 157 Conn. App. Ct. at 744.

**Request No. 28**

**Request**: Invoices, receipts, or bank records evidencing any payments made in connection with the publication or dissemination of media content about Plaintiff.

**Initial/Supplemental Response**: Same boilerplate, no production.

**Deficiency and Argument**: These are examples of the paper trail, electronic or otherwise, that would be generated in connection with payments that Jefferson admits to having made.

### Request No. 33

**Request**: Documents and communications reflecting any payments made by You to any media content provider or individual involved in publishing media content about Patrick Horsman.

**Initial/Supplemental Response**: Self-servingly limits scope, no withholding indication.

**Deficiency and Argument**: The request calls for documents and communications relative to any media content provider involved in publishing media content about Plaintiff. Defendant self-servingly seeks to limit the scope. The full scope of Defendant's efforts to harm Plaintiff's reputation by purchasing negative media publications is relevant and discoverable. Moreover, the response does not indicate whether any responsive materials are being withheld pursuant to any objections.

### Request No. 35

**Request**: Documents or communications concerning the drafting, editing, or approval of any media content referencing Patrick Horsman.

**Initial/Supplemental Response**: Seeks to limit scope to narrow time; privilege on Andrews.

**Deficiency and Argument**: Defendant again seeks to limit the scope where the scope was not limited to just a narrow snapshot in time. Defendant's actions in this context went on for years and Plaintiff is entitled to discover the scope of Defendant's actions. Moreover, certain representations were previously made about Ryan Andrews' involvement and yet Jefferson invoked privilege.

## Request No. 41

**Request**: Communications to and from joeyrocks99@protonmail.com concerning Patrick Horsman.

**Initial/Supplemental Response**: Same boilerplate; no deletion address.

**Deficiency and Argument**: Jefferson's response consists of boilerplate, instead of representations about whether the Protonmail account is deleted or emails within it are deleted.

## Request No. 43

**Request**: Financial records, including but not limited to bank statements and wire transfer records, reflecting payments for media content concerning Patrick Horsman.

**Initial/Supplemental Response**: Same boilerplate.

**Deficiency and Argument**: Plaintiff is willing to accept redacted versions of this documentation, which almost certainly exists.

### Request Nos. 44–46

**Requests**: Communications… relating to media content about Patrick Horsman.

**Initial/Supplemental Response**: Same boilerplate "will not produce."

**Deficiency and Argument**: The subject matter is discoverable.

### Request No. 68

**Request**: Communications referencing or proposing the use of negative press to coerce or pressure Patrick Horsman for financial or business purposes.

**Initial/Supplemental Response**: Jefferson will not produce documents in response to Request No. 68.

**Deficiency and Argument**: This subject matter is relevant to demonstrate motive, intent, knowledge, and absence of mistake. Jefferson's motive all along was to strongarm and coerce Plaintiff to pay him money to offset one of Jefferson's investment losses. Prior to defaming him, Defendant specifically threatened Plaintiff with damage to his reputation in the media if Plaintiff did not pay money.

### Request No. 80

**Request**: Documents sufficient to show whether You searched the joeyrocks99@protonmail.com account for emails responsive to these Requests, and

18

if You contend that no emails exist in that account, all documents supporting or explaining that contention.

**Initial Response**: Jefferson states that no emails exist in the joeyrocks99@protonmail.com email account pursuant to ProtonMail's standard retention policy. Jefferson will perform a reasonable search for documents responsive to this Request and produce non-privileged documents, if any, that are within Jefferson's possession, custody, or control that support or explain that contention.

**Supplemental Response**: No production.

**Deficiency and Argument**: The response provided shows the importance of the request. If indeed Defendant's emails were deleted pursuant to a purported "standard retention policy," the request calls for production of all documents which support that (dubious) assertion.

## REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court enter an Order granting this Motion to Compel and providing the following relief:

1. **Compel Interrogatory Answers.** Defendant should be ordered to serve full and complete, sworn, and Rule-compliant answers to Interrogatories Nos. 5, 9, 10, 12, 14, 17, 21, and 22, without objection or limitation, within 14 days of the Court's Order. Each answer must describe all information reasonably available to Defendant after a diligent inquiry and must include, where applicable, the dates, amounts, and methods of payment to Richard Gorman and related entities, and a detailed accounting of the devices searched.

2. **Compel Document Production.** Defendant should be ordered to produce all non-privileged documents responsive to Requests for Production Nos. 1–5, 6–11, 15–18, 21–24, 26, 28, 33, 35, 41, 43–46, 68, and 80 within 14 days. Production must not be limited to Defendant's self-anointed "Relevant Period" of 2022–2023 but must include responsive materials from 2019 to the present and regardless all Responses must comply with Rule 34(b)(2)(C).

3. **ProtonMail Evidence.** With respect to Requests Nos. 41 and 80, Defendant should be required to provide all documents available concerning the creation, use, access, and deletion of the joeyrocks99@protonmail.com account, and to certify under oath the steps taken to preserve and search that account. If Defendant contends that emails were deleted under ProtonMail's retention policy, he must produce all supporting documentation.

4. **Overrule Boilerplate Objections.** Overrule Defendant's boilerplate and unsupported objections of irrelevance, overbreadth, or burden, and deem any untimely objections waived under Rule 33(b)(4) and Rule 34(b)(2).

5. **Expenses and Fees.** Pursuant to Rule 37(a)(5)(A), award Plaintiff his reasonable expenses, including attorneys' fees, incurred in bringing this motion, as Defendant's noncompliance was not substantially justified.

6. **Additional Relief.** Grant such other and further relief as the Court deems just and proper, including remedial measures under Rule 37(e) if it is determined that responsive emails or other electronically stored information were lost or destroyed.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

By:   */s/ Kenneth E. Chase*
Kenneth E. Chase
Florida Bar No. 017661
kchase@chaselaw.com
Chase Law & Associates, P.A.
951 Yamato Road, Suite 280
Boca Raton, FL 33431
Telephone: (305) 402-9800

*Counsel for Plaintiff Patrick Horsman*

## LOCAL RULE 7.1(B) CERTIFICATE

[Plaintiff incorporates by reference his prior certificates].[2]

## LOCAL RULE 7.1(F) CERTIFICATE

The undersigned hereby certifies that this Motion is in compliance with the Court's word limit. According to the word processing program used to prepare this Motion, the total number of words in the document, inclusive of headings, footnotes and quotations, and exclusive of the case style, signature block, and any certificate of service is 3,883.

## CERTIFICATE OF SERVICE

I, Kenneth E. Chase, hereby certify that I served the foregoing via CM/ECF,

which serves electronic notice to all counsel of record, on October 2, 2025.

By:   */s/ Kenneth E. Chase*
Kenneth E. Chase

---

[2] Pursuant to Local Rule 7.1(B), I, undersigned counsel for Plaintiff, certify that Plaintiff has in good faith conferred with Defendant's counsel in an effort to resolve the discovery issues raised in this Motion without Court action, but the parties were unable to reach agreement. On June 25, 2025, Plaintiff circulated 246 pages of detailed meet-and-confer correspondence identifying each discovery request, Defendant's response, and the specific deficiencies. Plaintiff also offered ten Zoom slots for a conference between June 26 and July 1, 2025. Defendant's counsel refused all proposed dates and none appeared at a June 27, 2025 Zoom that Plaintiff scheduled in good faith. On July 9, 2025, the parties held a 105-minute Zoom conference attended by four of Defendant's attorneys. Despite Plaintiff's request-by-request presentations, Defendant refused to commit to curing any deficiencies. No supplemental responses or documents were served until July 25, 2025, and those supplements introduced new objections and unilateral scope limitations while still refusing to search or produce for entire categories of requests.

On July 31, 2025, Defendant produced a small supplemental set and a privilege log, but the production contained almost no responsive emails and failed to resolve the deficiencies raised in Plaintiff's papers. Thereafter, the parties submitted a 36-page Joint Report on September 19, 2025, cataloguing the disputes that remained unresolved. On September 24, 2025 the Court directed Plaintiff to refile a motion organized by specific requests. Despite months of correspondence, multiple meet-and-confer sessions, and the Joint Report process, Defendant has not provided complete, compliant discovery responses.