## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DISTRICT

| | | |
|---|---|---|
| | § | |
| PATRICK HORSMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:24-cv-00342-AW-MAF |
| | § | |
| BRETT JEFFERSON, | § | |
| RYAN ANDREWS, and | § | |
| ANDREWS LAW FIRM, P.A., | § | |
| | § | |
| Defendants. | § | |

---

## DEFENDANT BRETT JEFFERSON'S AMENDED AND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Federal Rules") and the applicable Local Rules for the Northern District of Florida, Defendant Brett Jefferson ("Jefferson"), by and through his undersigned counsel, hereby amends and supplements his responses and objections to Plaintiff Patrick Horsman's ("Plaintiff" or "Horsman") First Set of Interrogatories to Defendant Brett Jefferson, served on May 16, 2025 (each interrogatory therein, individually, a "Interrogatory" and, collectively, the "Interrogatories"). Jefferson's Amended and Supplemental Responses and Objections to each Interrogatory are provided after reasonable inquiry and are based upon information currently known or readily

1

available to him. Jefferson reserves the right to amend, supplement, modify, or correct these Amended and Supplemental Responses and Objections as appropriate.

## OBJECTIONS TO DEFINITIONS

The following Objections to Definitions are incorporated into the responses below as if they are fully repeated therein where the objectionable Definitions are used in the Interrogatory.

1.    Jefferson objects to the term "Document" to the extent it imposes burdens that are inconsistent with, or exceed the requirements of, the Federal Rules of Civil Procedure, Local Rules, and/or other applicable rules or procedure of law.

2.    Jefferson objects to the term "Communications" because it is duplicative of the term "Document."

3.    Jefferson objects to the definition of "You" as vague, overly broad, and unduly burdensome because it includes Jefferson's agents, employees, and attorneys. Jefferson further objects to the definition of "You" to the extent that it seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, and/or other privileges or immunities. Jefferson will construe the term "You" to refer to Jefferson in his individual capacity.

4.    Jefferson objects to the incorporation of terms defined in Plaintiff's First Amended Complaint ("FAC") to the extent they call for legal conclusions or are predicated upon unsupported legal conclusions.

5.     Jefferson objects to the definition of "Media Content" as vague, overly broad, and unduly burdensome, as it includes virtually any material referencing Horsman, regardless of the material's relevance to the claims in this case. Jefferson will construe the term "Media Content" as it is ordinarily interpreted.

6.     Jefferson objects to the definition of "Media Content Provider" as overly broad and unduly burdensome as it includes individuals or entities that may not be engaged in providing media content. Jefferson further objects to the definition to the extent that it includes attorneys, for which their documents and communications would be subject to attorney-client and other relevant privileges. Jefferson will construe the term "Media Content Provider" as it is ordinarily interpreted.

7.     Jefferson objects to the definition of "identify" as overly broad and unduly burdensome to the extent that it seeks information which is not in Jefferson's possession, custody, or control. Jefferson will respond only with information in his possession, custody, or control.

8.     Jefferson objects to the definition of "Rich Gorman or Gorman" as overly broad, as it includes any company operated by Richard Gorman, regardless of whether those entities have any relevance to the claims in this case. Jefferson will construe "Rich Gorman or Gorman" to mean Richard Gorman in his individual capacity.

## SPECIFIC RESPONSES AND OBJECTIONS

**INTERROGATORY NO. 1:**

When did you first create the email address joeyrocks99@protonmail.com?

**RESPONSE:**

Jefferson responds that to his knowledge, he created the email address joeyrocks99@protonmail.com in 2022.

**INTERROGATORY NO. 2:**

Why did you use the email address joeyrocks99@protonmail.com?

**RESPONSE:**

Jefferson responds that he used the email address joeyrocks99@protonmail.com from time to time for any reason he deemed appropriate that did not relate to matters involving Hildene Capital Management, LLC.

**INTERROGATORY NO. 3:**

When was the last time you accessed the email account joeyrocks99@protonmail.com?

**RESPONSE:**

Jefferson responds that to his knowledge, prior to this lawsuit being filed he last accessed the email address joeyrocks99@protonmail.com in 2023.

**INTERROGATORY NO. 4:**

If you have closed the email account joeyrocks99@protonmail.com, state the

date on which you closed it and the reason for the closure.

**RESPONSE:**

Jefferson responds that he did not close the email address joeyrocks99@protonmail.com.

**INTERROGATORY NO. 5:**

Did you delete any emails from the joeyrocks99@protonmail.com email address?

**RESPONSE:**

Jefferson responds that he does not recall deleting any emails from the account, which is one that he rarely used and last accessed approximately two years ago.

**INTERROGATORY NO. 6:**

Did anyone other than you have access to the joeyrocks99@protonmail.com email address?

**RESPONSE:**

Jefferson responds that to his knowledge, no other individual had access to the email address joeyrocks99@protonmail.com.

**INTERROGATORY NO. 7:**

Did you ask Richard Gorman, any company operated by Gorman, or the USA Herald to publish articles about Patrick Horsman?

**RESPONSE:**

Jefferson objects to this Interrogatory on the grounds that it is overbroad and

not limited in scope in a manner that is relevant to the matters in dispute or proportional to the needs of this case. Jefferson will respond only to facts material to the specific issues in this case, which include the USA Herald's publications of the Remcoda Article and the LGBCoin Article.

Subject to that objection, Jefferson responds that he informed Gorman of the existence of two lawsuits, (1) *Remcoda, LLC v. Ridge Hill, et al.*, Case No. 1:21-cv-00979 (S.D.N.Y.); and (2) *De Ford v. Koutoulas, et al.*, No. 6:22-cv-00652 (M.D. Fla.), and requested that Gorman publish articles regarding those lawsuits.

**INTERROGATORY NO. 8:**

Did you pay money to Richard Gorman, any company operated by Gorman, or the USA Herald in exchange for publication or further dissemination of articles about Patrick Horsman?

**RESPONSE:**

Jefferson objects to this Interrogatory on the grounds that it is overbroad and not limited in scope in a manner that is relevant to the matters in dispute or proportional to the needs of this case. Jefferson will respond only to facts material to the specific issues in this case, which include the USA Herald's publications of the Remcoda Article and the LGBCoin Article.

Subject to that objection, Jefferson responds that he made a payment to Gorman in connection with the Remcoda Article and LGBCoin Article.

**INTERROGATORY NO. 9:**

Describe the terms of engagement between you and Richard Gorman, any company operated by Gorman, or the USA Herald with regard to the publication or dissemination of articles about Patrick Horsman.

**RESPONSE:**

Jefferson objects to this Interrogatory on the ground that the phrase "terms of engagement" is vague and ambiguous and subject to multiple interpretations. In responding to this Interrogatory, Jefferson interprets the phrase "terms of engagement" to refer to the USA Herald's terms for guaranteed coverage. Those terms are:

**Submit Your News**

USA Herald firmly believes that the people should have a voice — and we will cover your story, even if no one else will.

We are interested in giving your story a platform. We are especially interested in ongoing court cases, fraud, scams, and financial news that doesn't meet the nearly impossible standards for mainstream media coverage.

There are two ways to get your story covered. Please note the following:

**OPTION 1 — Possible Coverage:**

If you have information on a story, but need a journalist to follow up on it, you can email your tip to Support@USAHerald.com. We'll assign a journalist to look into it. If they think there's a compelling story, we'll cover it.

**Option 2 — Guaranteed Coverage:**

If you would like guaranteed coverage on your story, we offer contract

journalism. You pay for our journalist's time, and we publish your story — with the caveat that our journalist will report on your story honestly and follow it to its conclusion, wherever that may lead them.

<u>What contract journalism is (and isn't)</u>

You pay a fee for our journalist to work on your story and we agree to run your story on USA Herald. The fee only buys you our journalist's time and skills. It does not buy you editorial control and our journalist will not be working for you.

Our journalist will follow up on the story and track down any relevant facts, including those that may not agree with your perception of the events. Once we are satisfied that we have a cohesive and complete story, we will write and publish it. All editorial decisions will remain with the journalist and our editor.

To be clear, you will not have the ability to review the story prior to us publishing it. We will not include any links that are not relevant to the story and this service is not to be used for "link building."

<u>Why pay for guaranteed coverage when I can just submit a tip?</u>

Not all tips will result in USA Herald coverage. We simply don't have the time to track down and write a story on every tip, so we follow up on only those tips we feel our readers are most likely to be interested in. We would love to cover every story our communities feel are important, but we just don't always have the resources.

When you pay for coverage, it allows us to pay our journalists for their time and services in a way that following up on tips doesn't. We are predominantly freelance written and our journalists are professionals who lead busy careers. These fees allow them to pull away from other projects and focus on your story exclusively, which often results in a more in-depth and developed article — you get what your pay for.

If you are interested in contract journalism, contact our Operations team directly at Ops@USAHerald.com. We will set up a meeting to discuss getting your story published as well as outline our fee structure.

**INTERROGATORY NO. 10:**

Identify the dates and amounts of all payments you made to Richard Gorman, or any company operated by Gorman, including but not limited to the USA Herald, Gorman Economics, or Reputation Management Services.

**RESPONSE:**

Jefferson objects to this Interrogatory on the grounds that it is overbroad and not limited in scope in a manner that is relevant to the matters in dispute or proportional to the needs of this case. Jefferson will respond only to facts material to the specific issues in this case, which include the USA Herald's publications of the Remcoda Article and the LGBCoin Article.

Subject to that objection, Jefferson responds that while he made a payment to Gorman in connection with the Remcoda Article and LGBCoin Article, he does not recall when he made such a payment or any such amount. Based on a review of his financial records, Jefferson has no record of any payments directly to Gorman, any company operated by Gorman, or the USA Herald in connection with the USA Herald's publications of the Remcoda Article and the LGBCoin Article.

**INTERROGATORY NO. 11:**

Identify the logistical manner in which each payment you made to Richard Gorman, any company operated by Gorman, or the USA Herald occurred including the sending bank name, account name, and account number and the receiving bank name, account name, and account number for each payment.

**RESPONSE:**

Jefferson objects to this Interrogatory on the grounds that it is overbroad and

not limited in scope in a manner that is relevant to the matters in dispute or proportional to the needs of this case. Jefferson will respond only to facts material to the specific issues in this case, which include the USA Herald's publications of the Remcoda Article and the LGBCoin Article.

Subject to that objection, Jefferson responds that while he made a payment to Gorman in connection with the Remcoda Article and LGBCoin Article, he does not recall when he made such a payment or any such amount. Based on a review of his financial records, Jefferson has no record of any payments directly to Gorman, any company operated by Gorman, or the USA Herald in connection with the USA Herald's publications of the Remcoda Article and the LGBCoin Article.

**INTERROGATORY NO. 12:**

For each payment you made to Gorman, or any company operated by Gorman, state the reason for the payment. For example, $15,000 paid on May 30, 2023 for Gorman or the USA Herald to "push[] to get the lawyer to add Horsman individually [to the LGBCoin Lawsuit]."

**RESPONSE:**

Jefferson objects to this Interrogatory on the grounds that it is overbroad and not limited in scope in a manner that is relevant to the matters in dispute or proportional to the needs of this case. Jefferson will respond only to facts material to the specific issues in this case, which include the USA Herald's publications of the Remcoda Article and the LGBCoin Article. Jefferson further objects to the second sentence of this Interrogatory as argumentative, improper, and factually

incorrect. Jefferson therefore will not respond to the second sentence of this Interrogatory. This answer should not be deemed a response to the second sentence of the Interrogatory.

Subject to that objection, Jefferson responds that while he made a payment to Gorman in connection with the Remcoda Article and LGBCoin Article, he does not recall when he made such a payment or the amounts. Based on a review of his financial records, Jefferson has no record of any payments directly to Gorman, any company operated by Gorman, or the USA Herald in connection with the USA Herald's publications of the Remcoda Article and the LGBCoin Article.

**INTERROGATORY NO. 13:**

Did you hire or pay anyone other than Richard Gorman, any company operated by Gorman, or the USA Herald to publish or disseminate articles about Horsman?

**RESPONSE:**

Jefferson responds in the negative.

**INTERROGATORY NO. 14:**

Explain the totality of your involvement in the August 27, 2022 Defamatory Remcoda Article, including but not limited to whether the article was your idea, whether you requested the article, whether you paid for the article, whether you drafted, edited, approved, or contributed to the article, and the names of all persons who drafted, edited, approved, or contributed to the article.

**RESPONSE:**

Jefferson objects to the use of the term "August 27, 2022 Defamatory

Remcoda Article" because it conveys a legal conclusion that the article in question was defamatory, which Jefferson denies. This answer should not be construed as an admission that any article was defamatory.

Subject to that objection, Jefferson responds that he informed Gorman of the existence of *Remcoda, LLC v. Ridge Hill, et al.*, Case No. 1:21-cv-00979 (S.D.N.Y.) and requested that Gorman publish an article regarding that lawsuit and made a payment in connection with the article. Gorman, as the sole owner and operator of the USA Herald, testified that the articles attached to the FAC, including the Remcoda Article, "were all researched and written by [Gorman] personally," and that "[a]ll decisions on content and publication on the USA Herald website are made solely by [Gorman] and were made by [Gorman] regarding the articles attached to the [FAC]." ECF 55 ¶¶ 5-6. Gorman had full editorial control over the articles attached to the FAC, including the Remcoda Article.

**INTERROGATORY NO. 15:**

Did you pay any money, or agree to pay any money, or convey or agree to convey any item of value in exchange for drafting, editing, or publishing of the August 27, 2022 Defamatory Remcoda Article?

**RESPONSE:**

Jefferson objects to the use of the term "August 27, 2022 Defamatory Remcoda Article" because it conveys a legal conclusion that the article in question was defamatory, which Jefferson denies. This answer should not be construed as an

admission that any article was defamatory.

Subject to that objection, Jefferson responds that he made a payment to Gorman in connection with the Remcoda Article.

**INTERROGATORY NO. 16:**

Identify each person who, to your knowledge, was involved in the drafting, editing, or publishing of the August 27, 2022 Defamatory Remcoda Article of the August 27, 2022 Defamatory Remcoda Article and summarize your knowledge of the scope of each person's involvement.

**RESPONSE:**

Jefferson objects to the use of the term "August 27, 2022 Defamatory Remcoda Article" because it conveys a legal conclusion that the article in question was defamatory, which Jefferson denies. This answer should not be construed as an admission that any article was defamatory.

Subject to that objection, Jefferson responds that, to Jefferson's knowledge, Richard Gorman personally researched and wrote the Remcoda Article, made all decisions on content and publication of the Remcoda Article, and had full editorial control.

**INTERROGATORY NO. 17:**

Explain the totality of your involvement in the May 29, 2023 Defamatory LGBCoin Article, including but not limited to whether the article was your idea, whether you requested the article, whether you paid for the article, whether you drafted, edited, approved, or contributed to the article, and the names of all persons who drafted, edited, approved, or contributed to the article.

**RESPONSE:**

Jefferson objects to the use of the term "May 29, 2023 Defamatory LGBCoin Article" because it conveys a legal conclusion that the article in question was defamatory, which Jefferson denies. This answer should not be construed as an admission that any article was defamatory.

Subject to that objection, Jefferson responds that he informed Gorman of the existence of *De Ford v. Koutoulas, et al.*, No. 6:22-cv-00652 (M.D. Fla.) and requested that Gorman publish an article regarding that lawsuit and made a payment in connection with the article. Gorman, as the sole owner and operator of the USA Herald, testified that the articles attached to the FAC, including the LGBCoin Article, "were all researched and written by [Gorman] personally," and that "[a]ll decisions on content and publication on the USA Herald website are made solely by [Gorman] and were made by [Gorman] regarding the articles attached to the [FAC]." ECF 55 ¶¶ 5-6. Gorman thus had full editorial control over the articles attached to the FAC, including the LGBCoin Article.

**INTERROGATORY NO. 18:**

Did you pay any money, or agree to pay any money, or convey or agree to convey any item of value in exchange for drafting, editing, or publishing of the May 29, 2023 Defamatory LGBCoin Article?

**RESPONSE:**

Jefferson objects to the use of the term "May 29, 2023 Defamatory LGBCoin

Article" because it conveys a legal conclusion that the article in question was defamatory, which Jefferson denies. This answer should not be construed as an admission that any article was defamatory.

Subject to that objection, Jefferson responds that he made a payment to Gorman in connection with the LGBCoin Article.

**INTERROGATORY NO. 19:**

Identify each person who, to your knowledge, was involved in the drafting, editing, or publishing of the May 29, 2023 Defamatory LGBCoin Article and summarize your knowledge of the scope of each person's involvement.

**RESPONSE:**

Jefferson objects to the use of the term "May 29, 2023 Defamatory LGBCoin Article" because it conveys a legal conclusion that the article in question was defamatory, which Jefferson denies. This answer should not be construed as an admission that any article was defamatory.

Subject to that objection, Jefferson responds that, to Jefferson's knowledge, Richard Gorman personally researched and wrote the LGBCoin Article, made all decisions on content and publication of the LGBCoin Article, and had full editorial control.

**INTERROGATORY NO. 20:**

Identify each email address and telephone number you used to communicate about Patrick Horsman.

**RESPONSE:**

Jefferson objects to this Interrogatory on the grounds that it is overbroad and not limited in scope in a manner that is relevant to the matters in dispute or proportional to the needs of this case. Jefferson will respond only to facts material to the specific issues in this case, which include the USA Herald's publications of the Remcoda Article and the LGBCoin Article.

Subject to that objection, Jefferson communicated about Patrick Horsman using two email addresses: bjefferson@hildenecap.com and joeyrocks99@protonmail.com. Jefferson lacks knowledge or information concerning whether he used his cellular phone to communicate about Patrick Horsman relevant to this lawsuit sufficient to respond to this Interrogatory.

**INTERROGATORY NO. 21:**

List each electronic device that you searched in connection with your document production and responses to Horsman's First Set of Requests for Production of Documents.

**RESPONSE:**

Jefferson responds that searches for documents responsive to Horsman's First Set of Requests for Production of Documents included his email address bjefferson@hildenecap.com, as well as the joeyrocks99@protonmail.com email address and his cellular phone.

**INTERROGATORY NO. 22:**

How much money did you pay for the publication of negative media content about Patrick Horsman?

**RESPONSE:**

Jefferson objects to this Interrogatory on the grounds that it is overbroad and not limited in scope in a manner that is relevant to the matters in dispute or proportional to the needs of this case. Jefferson will respond only to facts material to the specific issues in this case, which include the USA Herald's publications of the Remcoda Article and the LGBCoin Article.

Subject to that objection, Jefferson responds that while he made a payment to Gorman in connection with the Remcoda Article and LGBCoin Article, he does not recall when he made such a payment or any such amounts. Based on a review of his financial records, Jefferson has no record of any payments directly to Gorman, any company operated by Gorman, or the USA Herald in connection with the USA Herald's publications of the Remcoda Article and the LGBCoin Article.

**INTERROGATORY NO. 23:**

Identify all witnesses by name and business address who have knowledge of negative media publications about Patrick Horsman?

**RESPONSE:**

Jefferson objects to this Interrogatory on the grounds that it is overbroad and not limited in scope in a manner that is relevant to the matters in dispute or

proportional to the needs of this case. Jefferson will respond only to facts material to the specific issues in this case, which include the USA Herald's publications of the Remcoda Article and the LGBCoin Article.

Subject to that objection, Jefferson identifies the following witnesses who may have knowledge of the Remcoda Article or LGBCoin Article:

1.    Ryan Andrews

2.    Richard Gorman

3.    Patrick Horsman

4.    Aaron Zigler

Jefferson is continuing to diligently gather information to answer this Interrogatory and will provide any additional responsive information when it becomes available.

Dated: July 25, 2025                    Respectfully submitted,


                                        **WOLLMUTH MAHER &**
                                        **DEUTSCH LLP**
                                        500 Fifth Avenue
                                        New York, New York 10110
                                        Phone: (212) 382-3300

                                        */s/ David H. Wollmuth*
                                        David H. Wollmuth (*pro hac vice*)
                                        Joshua M. Slocum (*pro hac vice*)
                                        Maxwell G. Dillan (*pro hac vice*)
                                        dwollmuth@wmd-law.com
                                        jslocum@wmd-law.com
                                        mdillan@wmd-law.com

                                        and

                                        **GREENBERG TRAURIG, P.A.**
                                        David C. Ashburn
                                        Fla. Bar No. 0708046
                                        101 East College Avenue
                                        Post Office Drawer 1838
                                        Tallahassee, FL 32301
                                        Phone 850-222-6891
                                        Fax 850-521-1379
                                        ashburnd@gtlaw.com

                                        ***Attorneys for Defendant Brett***
                                        ***Jefferson***

## **<u>VERIFICATION</u>**

Brett Jefferson verifies that the foregoing Amended and Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories are true and accurate to the best of his knowledge, information, and belief.


Dated:  July 25, 2025

                                                        Brett Jefferson