## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DISTRICT

|  |  |  |
|---|---|---|
| PATRICK HORSMAN, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 4:24-cv-00342-AW-MAF |
| BRETT JEFFERSON, | § § | |
| Defendant. | § § § | |

---

### DEFENDANT BRETT JEFFERSON'S OPPOSITION TO PLAINTIFF PATRICK HORSMAN'S RENEWED MOTION TO COMPEL

Horsman's untimely motion to compel ("Motion" or "Mot.") should be denied.[1] As an initial matter, Horsman has once again failed to comply with Local Rule 26.1(D) because he does not "quote each objection specifically directed to the discovery request" as required. Instead, Horsman provides the Court with his own incorrect or misleading summaries of Jefferson's objections, some of which he merely identifies as "boilerplate" or "self-serving" without any further explanation. That alone is grounds for denying the Motion.

---

[1] The Court ordered Plaintiff to file a new motion to compel by October 1. ECF 98 at 1. The Court explained that "[n]either side should anticipate an extension of the deadlines imposed in this order." *Id.* at 2. Horsman, however, missed this deadline and filed his Motion on October 2. *See* L.R. 5.4(E).

Horsman's Motion also should be denied on the merits. Jefferson has already responded to each Interrogatory to the best of his knowledge, information, and belief. Jefferson also responded to the Requests for Production ("Requests") by searching for documents across a two-year time period covering seven months before and after the alleged events using agreed-upon search terms and, by July 31, 2025, produced all responsive, non-privileged documents that were located and logged all responsive, privileged documents. Indeed, Horsman now admits having received these documents and privilege log, even though he previously told this Court, sworn to by his counsel, that "no additional documents were produced after July 28, and no privilege log was ever served" as of the date of Plaintiff's Rule 56(d) Request (August 26, 2025). ECF 92 ¶8; ECF 92-1 ¶20.

Horsman argues that Jefferson must expand the search to cover a six-year period beginning in 2019—over *three-and-a-half years* before any alleged defamatory statement was published. Horsman's contention that there may be relevant documents predating 2022 is based on pure conjecture that Horsman knows lacks any factual basis. This is because Horsman previously brought claims against Jefferson in Arizona advancing the same theories he asserts in the Motion—that Jefferson allegedly engaged in conduct in 2020 and 2021 to extort and defame Horsman. Horsman (rightly) abandoned many of those claims at summary judgment, and submitted no evidence to support the remaining claims, resulting in his entire

lawsuit against Jefferson getting tossed. His contention that Jefferson may have documents predating 2022 reflecting alleged prior conduct is thus foreclosed.

Horsman offers no other specific reasons to overrule any of Jefferson's objections or compel a different response from what Horsman has already received. His proposed fishing expedition appears to be aimed solely at delaying a ruling on Jefferson's pending (and meritorious) motion for summary judgment, as none of the case-dispositive issues identified in that motion would be affected by the discovery sought here. The Court should deny Horsman's Motion in its entirety.

## ARGUMENT

### I.    Horsman's Argument to Expand the Relevant Time Period is Baseless

Horsman's argument that events predating 2022 are relevant as evidence of prior conduct—something he never raised before filing the Motion—is misguided. Nearly all Horsman's discovery requests lacked a time period, so Jefferson objected on that basis and selected a reasonable range of two years between January 1, 2022 through December 31, 2023. Ex. 1 at 9. Jefferson informed Horsman that he was intending to search within this time period and invited Horsman to propose an alternative time period if he disagreed. Horsman never did so.

Nor has Horsman shown that a different time period would be appropriate. According to his own allegations, the first alleged defamatory statement was made on or about August 27, 2022, and the last on or about May 30, 2023. *See* ECF 29

¶¶31, 51. Jefferson's selected range reasonably extends seven months before and after those dates to capture potentially relevant materials. Horsman has neither alleged that any relevant events occurred outside this time frame nor provided any evidence to support the speculative claim that they might have.

Ignoring his own allegations, Horsman now claims the time period must be expanded to account for some amorphous concept of Jefferson's prior conduct. Mot. at 2. Horsman argues that payments and communications with Gorman—who he now suggests is a "co-conspirator"—are probative of intent, knowledge, and malice. *Id.* Horsman has not alleged that Jefferson was in a conspiracy with Gorman, and his new theory, offered for the first time in his Motion, raises a host of ethical issues because Gorman testified Horsman's counsel was also his counsel. ECF 62 ¶3 ("Plaintiff's counsel, Kenneth Chase, was my attorney at the time I told him the matters contained herein and prior to the filing this lawsuit."). Horsman also has not alleged Jefferson was in a conspiracy with any "other media sources." Accordingly, no allegations support Horsman's argument that the time period must be expanded to collect documents concerning alleged "co-conspirators."

Horsman also claims the time period must be expanded because "patterns" support malice. Mot. at 2. *St. Amant v. Thompson* does not support this proposition, as it merely discusses the standard to be applied in considering whether evidence supports "reckless disregard" in publishing a defamatory statement. 390 U.S. 727,

731-732 (1968). Even if patterns were relevant, Horsman offers no evidence that any such documents involving Jefferson exist beyond the already expansive time frame. In fact, the only adjudicated facts between the parties undermine Horsman's position, as he previously lost a separate lawsuit against Jefferson based on similar theories of Jefferson's conduct in 2020 and 2021.

In particular, after Jefferson's company sued Horsman in the Superior Court of Arizona for fraud relating to an investment in Horsman's company, Horsman countersued Jefferson for civil RICO, aiding and abetting civil RICO, civil conspiracy, defamation, false light invasion of privacy, intentional interference with business expectancies, and intentional infliction of emotional distress. Ex. 2 ¶¶109-160 (First Amended Complaint) (the "Arizona Action"). The thrust of Horsman's claims was the false and later dismissed allegation that Jefferson sought to extort Horsman to return the investment by threatening to use the press and ultimately sending a copy of the complaint in the primary lawsuit to the Miami Herald, which ran a purportedly defamatory story about the primary lawsuit. *Id.* ¶¶68-99. At summary judgment, Horsman *abandoned* his civil RICO and conspiracy claims. Ex. 3 at 33 (Under Advisement Ruling). Horsman also came forward with no evidence to support his other claims and failed to show Jefferson participated in the Miami Herald's publication or otherwise defamed him, resulting in the court dismissing all those claims with prejudice. *Id.* at 33-36. These adjudicated facts directly rebut

Horsman's claim that there may be relevant materials in Jefferson's possession before 2022 concerning any alleged prior conduct.

Horsman's generic challenges to the two-year time period should be rejected.

## II.    Interrogatories

**Interrogatory 5:** Horsman never raised the specific deficiency he now claims exists in Jefferson's response to Interrogatory 5. Interrogatory 5 asks whether Jefferson "delet[ed] any emails from the joeyrocks99@protonmail.com email address." Ex. 4 at 7-8. When Jefferson first responded, Jefferson lacked knowledge or information sufficient to fully respond. *Id.* Jefferson, however, was "diligently gathering information to answer this Interrogatory and [would] provide responsive information when it becomes available." *Id.* Jefferson did not identify any additional responsive information that caused him to recall deleting data in the Proton Mail account and therefore supplemented his response by stating "he does not recall deleting any emails from the account." Ex. 5 at 5. Jefferson's response is appropriate, and Horsman's request to compel a "better answer" should be denied. *Weaver v. Mateer & Harbert, P.A.*, 277 F.R.D. 655, 658 (M.D. Fla. 2011) ("Lack of knowledge or the ability to recollect is, if true, a fair answer.").

**Interrogatory 9:** Horsman's contentions concerning Jefferson's response to Interrogatory 9 are misplaced. Because there were no specific "terms of engagement" between Jefferson and the USA Herald, Jefferson interpreted this

undefined phrase to refer to the USA Herald's terms for guaranteed coverage. Ex. 5 at 7-8. These are not "random"; they are the USA Herald's publicly available terms for contract journalism. Horsman provides no evidence to support his claim that such terms do not apply to parties with an alleged prior course of dealing, nor does Interrogatory 9 seek information concerning any such prior course of dealing. Both Jefferson and Gorman testified that, consistent with the USA Herald's terms for contract journalism, the USA Herald/Gorman at all times wrote the stories and retained full editorial control, and any payments made did not change that. ECF 55 ¶¶4-6; ECF 88 ¶10; ECF 89 ¶¶5-8, 11-12. If Jefferson knew of specific other terms of engagement that applied to the USA Herald's publication of the Remcoda and LGBCoin Articles, he would have been provided them. Horsman's request that a different answer be compelled should be denied.

**Interrogatory 10:** Horsman's contentions concerning Jefferson's response to Interrogatory 10 are without merit. As written, Interrogatory 10 seeks *all* information concerning any payment Jefferson made to "Gorman, or any company operated by Gorman, including but not limited to the USA Herald, Gorman Economics, or Reputation Management Services" at any point in time. Ex. 5 at 9. Jefferson therefore objected to the scope of Interrogatory 10 as overbroad and not limited to seeking information relevant to the matters in dispute—the USA Herald's publications of the Remcoda and LGBCoin Articles. Jefferson *confirmed* to

Horsman in his response and during meet and confers that Jefferson reviewed his financial records and "has no record of any payments directly to [Richard] Gorman, any company operated by Gorman, or the USA Herald in connection with the USA Herald's publications of the Remcoda Article and the LGBCoin Article." *Id.*

Horsman provides no reason to overrule Jefferson's objections as required under Local Rule 26.1(D). Horsman does not address the absence of any time or subject matter limitation in Interrogatory 10, nor does Horsman explain how information concerning payments Jefferson may have made to Gorman or his companies *unrelated* to the USA Herald's publications of these Articles would be relevant. Indeed, Jefferson is an investor in an unrelated company associated with Gorman that has nothing to do with this lawsuit. It would not be proportional to the needs of this case to require Jefferson to identify irrelevant financial transactions relating to that company. *Taylor v. Farm Credit of Nw. Fla., ACA*, 2021 WL 5148019, at *1 (N.D. Fla. June 15, 2021) (Winsor, J.) (request seeking "files for all loan applicants over a five-year period" was overbroad and not "narrowly targeted at all" because it would "cover loans and applicants nothing like the proposed loan and the applicants at issue here"); *aff'd sub nom.*, 2022 WL 4493044 (11th Cir. Sept. 28, 2022); *Yoder v. Bureau,* 2021 WL 4077995, at *2 (N.D. Fla. May 17, 2021) (Winsor, J.) (denying motion to compel financial records that were "at best tangentially relevant to" plaintiff's claim and "unlikely to contain any information

relevant to" plaintiff's proofs).

That is particularly true here because the amount of any payment has no bearing on the reason why Horsman has requested this information: as alleged proof of his theory that Gorman, the sole owner and operator of the USA Herald, acted as Jefferson's agent. ECF 29 ¶ 61 ("At all relevant times, the USA Herald's operator acted as an agent for both Jefferson and Andrews."). Payment is "irrelevant" to this theory because it only "evince[s] control over the ends of the job, not the means of it." *Noshirvan v. Couture*, 2025 WL 1769669, at *19 (M.D. Fla. June 26, 2025); *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 898 F.3d 1110, 1122 (11th Cir. 2018) (courts must "ignore 'mere economic control'" when analyzing agency). Notwithstanding that it is "irrelevant" and should be "ignore[d]" on summary judgment, as a compromise, Jefferson proposed responding to Interrogatory 10 (and others) with the amount and date of any payments he may have made through the Andrews Law Firm in lieu of searching for and producing financial records of payments between Jefferson and Andrews. Horsman rejected this proposal.

**Interrogatory 12:** Horsman is wrong that there is a deficiency in Jefferson's response to Interrogatory 12. Jefferson confirmed to Horsman in the response and during meet and confers that Jefferson reviewed his financial records and has no record of any payments to Gorman, any company operated by Gorman, or the USA Herald in connection with the USA Herald's publications of the Articles. Ex. 5 at 10-

11. Jefferson's response that he does not recall the specifics of any such payment is entirely appropriate. *Weaver*, 277 F.R.D. at 658. As noted above, Horsman rejected Jefferson's proposal to provide information concerning the amount and date of any payments he may have made through Andrews in lieu of searching for and producing financial records of such payments.

**Interrogatories 14 and 17:** Horsman is wrong that Jefferson's responses to Interrogatories 14 and 17 are deficient. As an initial matter, Horsman mischaracterizes Jefferson's responses in his "summary" of them. Mot. at 7. Interrogatories 14 and 17 ask Jefferson to "[e]xplain the totality of your involvement" in the alleged defamatory articles at issue. Ex. 5 at 11-14. Jefferson did so by explaining that he informed Gorman of the lawsuits, requested that Gorman write articles about those lawsuits, and made a payment to Gorman. *Id.* Because both Interrogatories also demanded that Jefferson state whether he "drafted, edited, approved, or contributed to the article," and identify "the names of all persons who drafted, edited, approved, or contributed to the article," Jefferson did so by explaining that he did not have any responsibility for writing those articles. *Id.* Instead, Jefferson responded that Gorman testified that the articles at issue "were all researched and written by [Gorman] personally," and that "[a]ll decisions on content and publication on the USA Herald website are made solely by [Gorman] and were made by [Gorman] regarding the articles attached to the [FAC]." *Id.* (quoting ECF

55 ¶¶5-6). This is not some "diatribe about what someone else said." Mot. at 7. It is the uncontroverted testimony of the individual who wrote the articles at issue and owns and operates the company that published those articles. Horsman's contentions regarding Interrogatories 14 and 17 lack merit and should be rejected.

**Interrogatory 21:** The parties have met and conferred twice, and Horsman never once suggested there was an issue with Jefferson's response to Interrogatory 21 for failing to identify specific "electronic devices" on which his email addresses were searched, rather than the email addresses themselves. If Horsman believed Jefferson's response was deficient on this basis, he should have explained this to Jefferson before raising it with the Court. Horsman did not do so.

In any event, Jefferson has explained to Horsman several times how the search for documents in these email addresses was conducted. With respect to the bjefferson@hildenecap.com email address, Jefferson explained that those emails are retained by Jefferson's company, Hildene Capital Management, LLC, in accordance with its record retention requirements through Global Relay. ECF 95 ¶23. As such, documents from the bjefferson@hildenecap.com email address were collected directly from Global Relay using the search terms as agreed upon by the parties. *Id.* This is a standard process for document collection.

With respect to the joeyrocks99@protonmail.com email address, Jefferson also explained to Horsman that Jefferson personally searched within that email

address to identify responsive documents. Horsman's claim that Jefferson stated that the Proton Mail account was "closed" is false. To the contrary, Jefferson informed Horsman "that he did not close the email address joeyrocks99@protonmail.com." Ex. 5 at 4-5.[2] Jefferson, however, attempted to and was able to access the account after learning of this lawsuit in 2024, permitting Jefferson to search for and produce documents reflecting the account as it exists today. ECF 95-19, 95-20. However, by the time Jefferson did so, prior emails had not been retained, evidently due to Proton Mail's standard policy. Declaration of Brett Jefferson ¶¶2-7.

**Interrogatory 22:** Horsman is wrong that there is a deficiency in Jefferson's response to Interrogatory 22. Jefferson confirmed to Horsman in the response and during prior meet and confers that Jefferson reviewed his financial records and has no record of any payments to Gorman, any company operated by Gorman, or the USA Herald in connection with the USA Herald's publications of the alleged defamatory articles. Ex. 5 at 17. Jefferson's response that he does not recall the specifics of any such payment is entirely appropriate. *Weaver*, 277 F.R.D. at 658. As noted above, Horsman rejected Jefferson's proposal to provide information concerning the amount and date of any payments he may have made through

---

[2] Jefferson's initial responses are no different. For Interrogatories in which Horsman requested information about the Proton Mail account, Jefferson stated that "the joeyrocks99@protonmail.com email account has not been accessed in years and has been deleted pursuant to ProtonMail's standard retention policy." Ex. 4 at 4-5.

Andrews in lieu of searching for and producing financial records of such payments.

## III.    Requests for Production

**Requests 1-5:** Horsman fails to establish that Requests 1-5 seek relevant documents. Requests 1-5 seek documents concerning alleged payments made by the Andrews Law Firm (not Jefferson) to Gorman Economics in 2019 to 2020. Ex. 1 at 3-7. Horsman fails to quote Jefferson's objections to these Requests and does not set out any reason to overrule them other than asserting without evidence that these payments occurred. Mot. at 9.

Jefferson's objections should be sustained because Requests 1-5 seek irrelevant documents. The latest alleged payment identified in these Requests occurred on June 26, 2020. But the Remcoda Article—the earlier of the two articles—was not published until over two years later on August 27, 2022. *See* ECF 29 ¶31. Horsman has yet to explain how alleged payments the Andrews Law Firm made to Gorman Economics at least two years *before* the first alleged defamatory publication could possibly be relevant here. Nor has Horsman explained how it would be proportional to the needs of this case to require Jefferson to search for any documents relating to such payments. Horsman's request to compel production of documents in response to Requests 1-5 should be denied.

**Requests 6-11, 15-18, 21-24, 26, 28, 33, 35, 43-45:** Horsman's arguments about Jefferson's responses to Requests 6-11, 15-18, 21-24, 26, 28, 33, 35, and 43-

13

45 are largely the same. For each Request, Horsman fails to quote Jefferson's objections or even identify which of them he is asking the Court to overrule. Mot. at 10-18. For most Requests, Horsman again asserts the objections are boilerplate or self-serving without further explanation. And for two of them (Requests 44-45), Horsman falsely claims Jefferson stated that he "will not produce" documents, even though Jefferson agreed to search for responsive documents. Ex. 1 at 40-42.

Jefferson has already fully responded to these Requests by searching in his financial records as well as for documents during the relevant time period using the parties' agreed-upon search terms, which were:

- Gorman

- USA Herald

- Horsman

- Zigler

- LGBCoin

- Remcoda

- Catherine Davis

- Jeff Watterman

- Andrews

- joeyrocks99@protonmail.com

- richard.gorman@vitaminenergy.com

- ops@reputationmanagement.net

- impact@directresponse.net

- ops@usaherald.com

ECF 95 ¶23. The search therefore would have captured (i) documents and financial records relating to payments made to Gorman, the USA Herald, or other media content providers "in connection with" Horsman, "media content concerning" Horsman, or "media content about" Horsman (Requests 6-8, 28, 33, 43); (ii) documents and agreements with Gorman, the USA Herald, or other media content providers "in connection with" Horsman or "media content concerning" Horsman (Requests 9-10); (iii) communications with Gorman, his companies, or his email addresses "concerning media content related to" Horsman (Requests 15-18, 21-24); (iv) documents relating to SEO, backlinking, or syndication services "in connection with media content mentioning" Horsman (Request 26); (v) drafts, outlines, or summaries of articles or press releases "referencing" Horsman and communications concerning the "drafting, editing, or approval of any media content referencing" Horsman (Requests 11, 35); and (vi) communications with other media content providers "relating to media content about" Horsman (Requests 44-45). Jefferson confirmed to Horsman several times that no responsive documents from the collection were withheld based on any objection other than privilege. ECF 95 ¶22. To the extent that Jefferson did not produce or log documents responsive to any

of these Requests, that is merely because no responsive documents were located.

Because Jefferson fully responded to these Requests, the only conceivable relief would be requiring Jefferson to expand the time period for his search. As explained above, the time period Jefferson used was reasonable, and Horsman has provided no reason to alter it. Accordingly, Horsman's request to compel responses to Requests 6-11, 15-18, 21-24, 26, 28, 33, 35, and 43-45 should be denied.[3]

**Request 41:** Horsman is wrong that there is a deficiency in Jefferson's response to Request 41. Request 41 seeks "[c]ommunications to and from joeyrocks99@protonmail.com concerning Patrick Horsman." Ex. 1 at 37. Horsman again fails to quote Jefferson's objections to Request No. 41 and only states that the response is deficient. Mot. at 17. In any event, Jefferson searched within the bjefferson@hildenecap.com email address using "joeyrocks99@protonmail.com" as a search term and searched within the Proton Mail account itself and produced documents reflecting the account as it exists today. ECF 95-19, 95-20. Jefferson has already produced all documents in his possession that were located after a reasonably diligent search. Horsman's request to compel further relief in connection with Request 41 should be denied.

**Request 46:** Horsman groups Request 46 with Requests 44-45, but it is

---

[3] Horsman's citation to *SBD Kitchens* as support for Requests 7 and 26 is misplaced. That case is over ten years old, involved different parties, and merely affirmed an arbitration award. It has nothing to do with the overbroad discovery before the Court.

substantively different, which is obscured by Horsman's failure to quote Jefferson's objections. Mot. at 18. While Jefferson agreed to search for documents responsive to Requests 44-45, Jefferson objected to Request 46 in its entirety because it seeks "[c]ommunications, direct or indirect, with any person at the *Miami Herald*, including but not limited to a journalist, operator, or editor, relating to media content about Patrick Horsman." Ex. 1 at 42 (emphasis added). Horsman's request to compel a search for these documents should be denied for at least four reasons.

First, the Miami Herald is irrelevant. Horsman pleads no allegations concerning the Miami Herald and asserts no claim against Jefferson based on anything published by the Miami Herald.

Second, Horsman already litigated and lost this exact claim against Jefferson in the Arizona Action. As described above, Horsman countersued Jefferson in Arizona for, among other things, defamation because the Miami Herald wrote and published an article concerning Jefferson's fraud lawsuit against Horsman. Horsman incorrectly alleged that Jefferson sent a copy of his complaint to the Miami Herald, which he did not. The Superior Court dismissed Horsman's defamation claim at summary judgment with prejudice because, *inter alia*, Horsman came forward with no evidence that Jefferson did what was alleged. Ex. 3 at 35 ("The defamation *per se* claim fails because there is no evidence . . . Jefferson published any highly offensive statement about Horsman. There is no evidence Jefferson . . . provided a

copy of the Complaint to the Miami Herald."). The Superior Court's ruling is *res judicata* and bars Horsman's assertion that documents responsive to Request 46 are relevant and discoverable here. *See, e.g.*, *Chavez v. Tower Hill Signature Ins.*, 278 So. 3d 231, 236 (Fla. 3d DCA 2019) ("Under *res judicata*, a party is barred from re-litigating all matters previously raised and determined as well as all other matters that could have been raised."); *accord Hall v. Lalli*, 194 Ariz. 54, 57 (1999).

Third, the undisputed evidence in the Arizona Action was that Jefferson did not communicate with the Miami Herald, as reflected in the Superior Court's ruling.

Fourth, while Jefferson did not search for Miami Herald communications here, if there were any responsive documents in 2022 or 2023, they likely would have been captured by the search term "Horsman." No such documents were found.

**Request 68:** Horsman's argument about Request 68 suffers from similar defects as his argument about Request 46. Request 68 seeks "[c]ommunications referencing or proposing the use of negative press to coerce or pressure Patrick Horsman for financial or business purposes." Ex. 1 at 61. Horsman again fails to quote Jefferson's objections to Request No. 68 and only states that it was improper for Jefferson to object. Mot. at 18. Jefferson objected to Request 68 on the ground that it sought irrelevant documents, including those "already in the possession, custody, or control of Plaintiff as evidenced in the proceedings involving the same parties to the Arizona Action," among other grounds. Ex. 1 at 61-62. Jefferson

objected on these grounds because Horsman's request for documents in which Jefferson "referenc[ed]" or "propos[ed]" using negative press to coerce Horsman for financial or business purposes is based on the *same* failed theory of extortion that Horsman abandoned at summary judgment in the Arizona Action. *Compare* Ex. 2 ¶1 ("This case is about extortion, defamation, and business disparagement, whereby Defendants threatened Plaintiff that if Plaintiff did not pay them money, Defendants would, among other things, falsely impugn Plaintiff's integrity, accuse him of unlawful conduct, disgrace Plaintiff publicly, and contact investors, government agencies, and the media to falsely tell them that Plaintiff misled investors and engaged in other unlawful acts."), *with* Ex. 3 at 33 ("Because Horsman has abandoned [the civil RICO and conspiracy] Counterclaims, the Court will grant summary judgment on those Counterclaims."). Horsman is thus seeking to relitigate his failed theory of extortion through Request 68, which he concedes in his Motion. Mot. at 18 ("Jefferson's motive all along was to strongarm and coerce Plaintiff to pay him money to offset one of Jefferson's investment losses."). *Res judicata* bars Horsman's attempt to relitigate these issues and makes the discovery irrelevant.

Even so, Jefferson has confirmed on multiple occasions that he collected documents from the relevant time period using the parties' agreed search terms and produced all non-privileged documents located through that process that related to the issues in dispute. As discussed above, those search terms included "Horsman"

and therefore would have captured documents responsive to Request 68, if any existed. Thus, while Jefferson did not perform specific searches for documents responsive to Request 68, no responsive documents concerning the disputed issues were withheld except on the basis of privilege, which have been fully logged.

**Request 80:** Horsman's argument about Request 80 is false. Request 80 seeks "[d]ocuments sufficient to show whether You searched the joeyrocks99@protonmail.com account for emails responsive to these Requests, and if You contend that no emails exist in that account, all documents supporting or explaining that contention." Ex. 1 at 72. Horsman again fails to quote Jefferson's objections to Request No. 68 and only states that Jefferson made "[n]o production." Mot. at 19. That is not true. As explained above, Jefferson searched within the Proton Mail account itself and produced documents responsive to Request 80 reflecting the account as it exists today. ECF 95-19, 95-20. Indeed, Horsman previously admitted to receiving those documents. ECF 97 at 11. Jefferson also searched within the bjefferson@hildenecap.com email address using "joeyrocks99@protonmail.com" as a search term. Jefferson has already produced all documents in his possession that were located after a reasonably diligent search. Horsman's request to compel further relief in connection with Request 80 should be denied.

## CONCLUSION

For all these reasons, Horsman's Motion should be denied in its entirety.

## CERTIFICATE OF COMPLIANCE OF LOCAL RULE 7.1(F)

I HEREBY CERTIFY that, in accordance with Local Rule 7.1(F) of the United States District Court for the Northern District of Florida, the foregoing memorandum of law contains 4,535 words.

Dated: October 8, 2025

Respectfully submitted,

**WOLLMUTH MAHER & DEUTSCH LLP**
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300

*/s/ Joshua M. Slocum*
David H. Wollmuth (*pro hac vice*)
Joshua M. Slocum (*pro hac vice*)
Maxwell G. Dillan (*pro hac vice*)
dwollmuth@wmd-law.com
jslocum@wmd-law.com
mdillan@wmd-law.com

and

**GREENBERG TRAURIG, P.A.**
David C. Ashburn
Fla. Bar No. 0708046
101 East College Avenue
Post Office Drawer 1838
Tallahassee, FL 32301
Phone 850-222-6891
Fax 850-521-1379
ashburnd@gtlaw.com

***Attorneys for Defendant Brett Jefferson***