## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DISTRICT

| | | |
|---|---|---|
| PATRICK HORSMAN, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 4:24-cv-00342-AW-MAF |
| BRETT JEFFERSON, | § § § | |
| Defendant. | § § § | |

## DEFENDANT BRETT JEFFERSON'S AMENDED MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM

Brett Jefferson moves for summary judgment dismissing Plaintiff Patrick Horsman's claims in accordance with Federal Rule of Civil Procedure 56 and Northern District of Florida Local Rule 56.1. This Amended Motion for Summary Judgment amends and replaces the Motion for Summary Judgment filed on August 5, 2025 to amend paragraph 16 consistent with the Amended Declaration of Brett Jefferson filed herewith.

## INTRODUCTION

The central issue here is whether a private citizen can be liable for an independent news company's articles discussing public lawsuits. Horsman asserts torts against Jefferson based on the USA Herald's publication of two such articles:

the "Remcoda Article" and the "LGBCoin Article." He claims the owner and operator of the USA Herald—Richard Gorman—acted as Jefferson's agent in publishing the Articles and making related communications about them. Horsman sues Jefferson for defamation; civil conspiracy with Ryan Andrews and Andrews Law Firm (collectively, "Andrews") to defame; and aiding and abetting Andrews' defamation. Horsman's claims all fail because he cannot establish two essential elements of his primary defamation claims: publication and falsity.

Horsman cannot establish publication because there was no agency relationship between Jefferson and Gorman. To hold Jefferson liable for Gorman's statements, Horsman must prove Gorman was Jefferson's agent. That requires showing Jefferson had a right to control Gorman and the operative details of his work. The record evidence forecloses this showing: Gorman had full editorial control over the Articles and was solely responsible for all decisions concerning the Articles and related communications.

Horsman cannot establish falsity because none of the publications at issue contain a false statement of fact or false implication. These publications consist of Jefferson providing Gorman with publicly available court documents in two lawsuits, Gorman summarizing those two lawsuits in his Articles, Gorman requesting other companies republish his Articles, and Gorman emailing an attorney

in one of the lawsuits. Falsity is lacking in each of these publications because the alleged defamatory statements are either substantially true or non-actionable.

Because Horsman's defamation claims fail, so do his civil conspiracy and aiding and abetting claims. Those claims also fail because Jefferson and Andrews had no agreement to defame Horsman, and Jefferson did not support any primary defamation by Andrews, who were not responsible for the writing publications at issue and have been voluntarily dismissed from this lawsuit.

Because Horsman cannot establish any tortious conduct, the Court lacks specific jurisdiction over Jefferson under Florida's long-arm statute. Personal jurisdiction is also lacking because Horsman is unwilling or unable, despite specific discovery requests, to produce any evidence that anyone viewed the publications in Florida or that he suffered a resulting injury in Florida. These additional reasons warrant summary judgment on all claims for lack of personal jurisdiction.

Jefferson respectfully requests that the Court grant summary judgment on all claims, enter judgment as a matter of law, and dismiss this case with prejudice.

## STATEMENT OF FACTS

In accordance with Local Rule 56.1(B), Jefferson provides this Statement of Facts ("SF"):

### A.    Parties and Non-Parties

#### 1.    Plaintiff Patrick Horsman

1.    Horsman is a resident of Puerto Rico. ECF 29 ¶2; ECF 85-35 ¶2.

#### 2.    Defendant Brett Jefferson

2.    Jefferson is a resident of North Carolina. Amended Declaration of Brett Jefferson ("Jefferson Decl.") ¶2.

#### 3.    Non-Parties Ryan Andrews and Andrews Law Firm

3.    Ryan Andrews is a resident of Florida and an attorney with Andrews Law Firm. ECF 29 ¶¶4-5; Declaration of Ryan Andrews ("Andrews Decl.") ¶2. Andrews represents Jefferson in various matters, including *Lev v. Horsman*, No. CV2020-012256 (Super. Ct. Ariz.) and the consolidated case, *Horsman v. Jefferson*, No. CV2021-006034 (Super. Ct. Ariz.), where Horsman countersued Jefferson for defamation based on a Miami Herald article concerning the lawsuit.[1]

---

[1] The Court entered summary judgment for Jefferson, ruling that Horsman failed to come forward with any evidence Jefferson defamed Horsman. Under Advisement Ruling, *Horsman v. Jefferson*, No. CV2021-006034 (Super. Ct. Ariz. Apr. 2, 2025).

4.     Jefferson did not enter into any agreement with Andrews to defame Horsman or assist Andrews to accomplish any defamation. Jefferson Decl. ¶13; Andrews Decl. ¶¶8-9.

### 4.     Non-Parties Richard Gorman and the USA Herald

5.     The USA Herald is an independent news company owned and operated by Richard Gorman. Declaration of Richard Gorman ("Gorman Decl.") ¶2.

6.     The USA Herald publishes articles on USAHerald.com. *Id.* ¶3.

7.     Like most news companies, the USA Herald accepts information for potential stories. ECF 85-1.

8.     The USA Herald also offers guaranteed coverage through contract journalism. *Id.* The USA Herald retains **full editorial control**:

> If you would like guaranteed coverage on your story, we offer contract journalism. You pay for our journalist's time, and we publish your story — with the caveat that our journalist will report on your story honestly and follow it to its conclusion, wherever that may lead them.
>
> . . .
>
> You pay a fee for our journalist to work on your story and we agree to run your story on USA Herald. The fee only buys you our journalist's time and skills. **It does not buy you editorial control and our journalist will not be working for you.**
>
> Our journalist will follow up on the story and track down any relevant facts, including those that may not agree with your perception of the events. Once we are satisfied that we have a cohesive and complete story, we will write and publish it. **All editorial decisions will remain with the journalist and our editor.**

*Id.* at 1-2 (emphasis added).

5

**B.    The *Remcoda* Lawsuit and Related Publications**

9.    On February 3, 2021, Remcoda filed a Complaint in the Southern District of New York. *Remcoda v. Ridge Hill Trading (PTY) Ltd.*, No. 21-cv-00979 (S.D.N.Y.) ("*Remcoda*"). Remcoda alleged defendants defrauded it into paying them over $4 million to acquire personal protective equipment (PPE) on its behalf during COVID-19. Remcoda sued for fraudulent inducement, aiding and abetting fraud, breach of contract, money had and received, and unjust enrichment. ECF 85-2.

10.    On June 30, 2021, Remcoda filed an Amended Complaint naming Russell Gross as a defendant. ECF 85-3. Remcoda alleged Gross facilitated the scheme, including informing Remcoda he had manufacturing and supply relationships in the PPE industry he would introduce to Remcoda for a 5% fee for any resulting transaction. *Id.* ¶¶20-22; *see id.* ¶¶23-70. Remcoda sued Gross for fraudulent inducement and aiding and abetting fraud. *Id.* ¶¶73-88.

11.    On November 10, 2021, Gross moved to dismiss the Amended Complaint and addressed his involvement in the scheme:

> [Gross'] company Unicorn . . . has manufacturing and supply relationships for PPE . . . . On behalf of Unicorn, Gross offered to introduce Plaintiff to manufacturers and suppliers of nitrile gloves in exchange for a fee of 5% of the total purchase price for any successful transaction, to be paid by Plaintiff to Unicorn.

ECF 85-4 at 1. Gross identified Unicorn Health, LLC ("Unicorn") as his company in other filings. ECF 85-5 at 2; 85-6 at 5; 85-7 ¶2; 85-8 at 5. Gross' motion was

granted in part and denied in part on March 1, 2022. *Remcoda*, ECF 131.

12.    On April 25, 2022, Remcoda filed a Second Amended Complaint with substantially similar allegations and claims against Gross. ECF 85-9 ¶¶20-88.

13.    On June 30, 2022, Gross moved to dismiss the Second Amended Complaint, again explaining Unicorn was his company and operated as broker between the plaintiff and Gross' co-defendants. ECF 85-10 at 1.

14.    Gross submitted an attorney declaration in support of his motion, averring: "Shortly before Mr. Gross introduced Remcoda to Ridge Hill [a co-defendant] on June 9, 2020, Ridge Hill had represented to Unicorn that it could provide the subject PPE." ECF 85-11 ¶19. To support that statement, Gross' attorney attached a May 20, 2020 email from Vincent Fletcher (a prior co-defendant) to "Unicorn partner" Horsman, at Horsman's "PH@Unicorn-Health.com" email address. *Id.* ¶19(i); ECF 85-12.

15.    Horsman admitted in this action that Unicorn was his company. ECF 1 ¶101 (referring to "Plaintiff's company, 'Unicorn Health,' (in which Plaintiff held a minority interest as a passive investor")). He is also listed as a partner of Unicorn on his FINRA BrokerCheck Report. ECF 85-13 at 6.

16.    In summer 2022, Jefferson informed Gorman of *Remcoda*, provided Gorman with public court records from the lawsuit, and requested Gorman write an article about the lawsuit. Jefferson Decl. ¶¶4-5.

17.    Jefferson "did not instruct [Gorman] to publish any false statements or otherwise make any statements that would violate any law about the allegations in the lawsuit[]." Gorman Decl. ¶7. "Nor did Ryan Andrews or anyone else employed by the Andrews Law Firm request, suggest, or direct [Gorman] to do so on behalf of Mr. Jefferson." *Id.*

18.    On August 27, 2022, the USA Herald published the Remcoda Article. ECF 85-14. Horsman alleges the headline and two statements were defamatory:

(i)    "Patrick Horsman and partner Russel Gross involvement in $3.7M **alleged** fraud.";

(ii)    "A lawsuit between plaintiff Remcoda, LLC, and defendants Ridge Hill Trading (PTY) LTD, Ataraxia Capital Partners PTY LTD, Russel Gross, and the involvement of his partner, Patrick Horsman, is ever evolving.";

(iii)    "Russel Gross, and his business partner Patrick Horsman's company Unicorn . . . were **allegedly** working with the defendants from the start when they introduced Remcoda to Ridge Hill as part of their overall **alleged** scheme. Russel Gross and Horsman's company **allegedly** received payment of their fee from Remcoda's funds that the defendants wrongfully withheld."

ECF 29 ¶¶32, 34, 36 (emphasis added). The rest of the Remcoda Article discussed other allegations in *Remcoda*. In describing these allegations, the Remcoda Article did not refer to any specific filing.

19.    On August 29, 2022, the Remcoda Article was revised with the following headline: "Russell Gross of Unicorn Health, owned by Patrick Horsman, sued for alleged 3.7M fraud." ECF 85-15.

20.    When the Remcoda Article was published, the case was on its third complaint, the court had dismissed some claims and sustained others, and multiple motions to dismiss were still pending. ECF 85-16.

21.    Gorman made "[a]ll decisions on content and publication" of the Remcoda Article and was "solely responsible for researching and writing [the Remcoda Article], including the headlines." Gorman Decl. ¶¶6, 8; *accord* ECF 85-17 ¶¶4-6; ECF 85-18 ¶1.[2] "In writing the article[] and headlines in question, [Gorman] intended to accurately summarize the lawsuit[] and the allegations made in the lawsuit[]." Gorman Decl. ¶8.

22.    Gorman published the Remcoda Article under the penname "Catherine Davis." ECF 85-14; 85-15. Gorman testified he may use pennames when "publish[ing] articles for the USA Herald website and conducting business relating to those articles, and did so" for the Remcoda Article. Gorman Decl. ¶11. "All decisions regarding the use of pennames were made by [Gorman] regarding" the Remcoda Article. *Id.*

23.    Other than informing Gorman of *Remcoda* and requesting he write an article, Jefferson had no responsibility for writing the Remcoda Article, nor any control over Gorman's publication of the Remcoda Article. Jefferson Decl. ¶6;

---

[2] Gorman explained this to Horsman's counsel before this lawsuit was filed, who was also his attorney at the time. ECF 85-18 ¶¶2-3. Horsman refused to produce communications with Gorman on privilege grounds. ECF 85-19 at Requests 26-27.

Gorman Decl. ¶¶6-8. Andrews did not write the Remcoda Article and had no control over Gorman's publication of the Remcoda Article. Andrews Decl. ¶¶4-5; ECF 85-20 ¶¶2-3.

24.     Horsman alleges Gorman contacted ValueWalk—a New Jersey company—to republish the Remcoda Article. ECF 29 ¶40; ECF 85-21. Gorman testified he sometimes "contact[s] other media outlets" when publishing articles for the USA Herald and did so for the Remcoda Article. Gorman Decl. ¶12. "All decisions regarding the USA Herald's communications with other media outlets were made by [Gorman] regarding" the Remcoda Article. *Id.* Horsman has not produced this alleged republication. Declaration of Josh Slocum ("Slocum Decl.") ¶22.

25.     Despite specific discovery requests, Horsman refused to produce evidence that anyone viewed the Remcoda Article or its republications within Florida. ECF 85-22 at Interrogatories 3-4, 11-12, 14-15. Horsman also refused to produce evidence of injury he suffered in Florida as a result of the Remcoda Article or its republications. *Id.* at Interrogatories 5-6.

**C.     The *LGBCoin* Lawsuit and Related Publications**

26.     On April 1, 2022, Eric De Ford filed a Class Action Complaint in the Middle District of Florida. *De Ford v. Koutoulas, et al.*, No. 6:22-cv-00652 (M.D. Fla.) ("*LGBCoin*"). De Ford alleged a pump-and-dump scheme involving an

unregistered cryptocurrency coin known as LGBCoin. ECF 85-23. The defendants allegedly made representations to drive up the price of LGBCoin and sold their holdings at its peak before its price plummeted to zero. *See, e.g.*, *id.* ¶¶1-5. De Ford sued for securities fraud and unfair trade practices, aiding and abetting, and unjust enrichment. *Id.* ¶¶146-198.

27.   On June 6, 2022, De Ford filed a First Amended Class Action Complaint naming Thomas McLaughlin and Coral Capital LLC, Coral Capital Management LLC, and Coral DeFi LP (the "Coral Entities") as defendants. ECF 85-24. McLaughlin and Horsman were alleged to be co-founders and/or executives for the Coral Entities. *Id.* ¶¶32-35. McLaughlin and the Coral Entities were sued for civil conspiracy for fraud and unjust enrichment in connection with the alleged scheme. *Id.* ¶¶135-160, 180-185, 265-276.[3]

28.   On July 19, 2022, De Ford filed a Second Amended Class Action Complaint. ECF 85-28. The allegations concerning McLaughlin, the Coral Entities, and Horsman remained the same. *Id.* ¶¶31-34, 132-157, 177-182, 263-274.

---

[3] Horsman is the Authorized Person, Administrator, and President of Coral Capital LLC and Coral Capital Management LLC on their Certificates of Formation. ECF 85-25 at 1-2; 85-26 at 1-2. Horsman is listed as Managing Partner of Coral DeFi in their Form D with the SEC. ECF 85-27 at 6.

29.    On April 14, 2023, De Ford filed a Third Amended Class Action Complaint naming Horsman as a defendant. ECF 85-29.[4] De Ford alleged Horsman was the "Managing Partner and Co-Founder of Coral DeFi, LP," "a co-founder/creator of LGBCoin, served as a consultant, developer, and spokesman for LGBCoin; is an LGBCoin holder; and exercised control of LGBCoin and directed and/or authorized, directly or indirectly, the initial offering, sale, and/or solicitations of LGBCoin to the public." *Id.* ¶¶31, 34. In that role, De Ford alleged Horsman engaged with others, including McLaughlin, in the scheme. *Id.* ¶¶31-34, 77-143, 167-168, 173, 210-214, 243-272, 334-337. De Ford sued Horsman for state securities violations, civil conspiracy to violate state and federal securities laws by falsely promoting the cryptocurrency as part of the pump-and-dump scheme, and unjust enrichment. *Id.* ¶¶382-403, 408-411.

30.    On May 26, 2023, Zigler Law Group, LLC—attorneys for De Ford— published a press release announcing "it has filed a class action lawsuit against . . . Patrick Horsman" and describing allegations that Horsman and his co-defendants "conspired to violate provisions of the Securities Act and its Florida State law analog

---

[4] On March 30, 2023, the court granted a motion to dismiss for lack of personal jurisdiction by McLauglin and the Coral Entities. *De Ford v. Koutoulas*, 2023 WL 2709816, at *8-10 (M.D. Fla. Mar. 30, 2023). De Ford noted he was "evaluating bringing claims against the Coral corporate entities and Thomas McLaughlin within the District of Puerto Rico." ECF 85-29 ¶77 n.8.

by selling the unregistered LGBCoins" and made "false and misleading statements . . . to lure in unsuspecting investors." ECF 85-30 at 1-2.

31.    On May 27, 2023, Jefferson learned of *LGBCoin*, provided Gorman with public court records from the lawsuit, and requested Gorman write an article about the lawsuit. Jefferson Decl. ¶¶7-8.

32.    Jefferson "did not instruct [Gorman] to publish any false statements or otherwise make any statements that would violate any law about the allegations in the lawsuit[]." Gorman Decl. ¶7. "Nor did Ryan Andrews or anyone else employed by the Andrews Law Firm request, suggest, or direct [Gorman] to do so on behalf of Mr. Jefferson." *Id.*

33.    On May 29, 2023, the USA Herald published the LGBCoin Article.[5] Horsman alleges the headline and two statements were defamatory:

(i)    "Patrick Horsman & Business Partner Thomas McLaughlin Wrapped up in LGBCoin Class Action Lawsuit."

(ii)   "Thomas McLaughlin, co-founder of LGBCoin and business partners with Patrick Horsman at Coral Defi (Coral Capital Management, LLC), is **accused** of fraud along with unjust enrichment in a 104 page class action lawsuit filed on behalf of investors that lost money in an **alleged** cryptocurrency scam."

(iii)  "The class action lawsuit **alleges** that Coral Defi, Coral Capital LLC, Coral Capital Management LLC, all owned by Patrick Horsman (he is listed at the Managing Member/Co-Founder), defrauded investors in

---

[5] A full copy of the LGBCoin Article is not available and Horsman failed to produce one in response to Jefferson's specific document request. He instead produced a partial copy and two alleged republications. ECF 85-31; 85-32; 85-33.

the LGBCoin Cryptocurrency Pump & Dump scheme and attempted to hide their role through a complex web of transactions."

ECF 29 ¶¶45-49 (emphasis added).

34.     Gorman made "[a]ll decisions on content and publication" of the LGBCoin Article and was "solely responsible for researching and writing [the LGBCoin Article], including the headlines." Gorman Decl. ¶¶6, 8; *id.* ¶6; *accord* ECF 85-17 ¶¶4-6; ECF 85-18 ¶1.[6] "In writing the article[] and headline[] in question, [Gorman] intended to accurately summarize the lawsuit[] and the allegations made in the lawsuit[]." Gorman Decl. ¶8.

35.     Gorman published the LGBCoin Article under the penname "Catherine Davis." ECF 29 ¶45. Gorman testified he may use pennames when "publish[ing] articles for the USA Herald website and conducting business relating to those articles, and did so" for the LGBCoin Article. Gorman Decl. ¶11. "All decisions regarding the use of pennames were made by [Gorman] regarding" the LGBCoin Article. *Id.*

36.     Other than informing Gorman of *LGBCoin* and requesting he write an article, Jefferson had no responsibility for writing the LGBCoin Article, nor any control over Gorman's publication of the LGBCoin Article. Jefferson Decl. ¶9;

---

[6] Gorman explained this to Horsman's counsel before this lawsuit was filed. ECF 85-18 ¶¶2-3. Horsman refused to produce communications with Gorman on privilege grounds. ECF 85-19 at Requests 26-27.

Gorman Decl. ¶¶6-8. Andrews did not write the LGBCoin Article and had no control over Gorman's publication of the LGBCoin Article. Andrews Decl. ¶¶6-7; ECF 85-20 ¶¶2-3.

37.    Horsman alleges Gorman contacted Jacobson Strategy to republish the LGBCoin Article through Menafn—a Delaware company. ECF 29 ¶¶54-55; ECF 85-34. Gorman testified he may "contact other media outlets" when publishing articles for the USA Herald and did so for the LGBCoin Article. Gorman Decl. ¶12. "All decisions regarding the USA Herald's communications with other media outlets were made by [Gorman] regarding" the LGBCoin Article. *Id.*

38.    Horsman also alleges Gorman contacted Aaron Zigler, attorney for De Ford, on May 30, 2023 ("Gorman's Email")—over one month after Horsman was named in that lawsuit. ECF 29 ¶51. As alleged, the email stated:

> Our publication has previously covered a number of scams that Patrick Horsman, the Managing Member of Coral DeFi, has been involved in. We published an article yesterday on the case and would appreciate if you would give us updates on the case so we can keep it in the news cycle:
>
> https://usaherald.com/patrick-horsman-business-partner-thomas-mclaughlin-wrapped-up-in-lgbcoin-class-action-lawsuit/
>
> You may want to consider amending your complaint to add Patrick Horsman individually since he is the one that is operating the Coral companies but largely stays behind the scenes.

39.    For this email, Gorman testified Jefferson "did not instruct [Gorman] to make any false statements, to use the word 'scams,' or to make any statements

that would violate any law in that email." Gorman Decl. ¶9. Nor did Andrews "request, suggest, or direct [Gorman] to do so on behalf of [] Jefferson." *Id.*

40.    Zigler lives and works in Illinois and received Gorman's email there. Declaration of Aaron Zigler ("Zigler Decl.") ¶¶2, 8. He testified it did not change his opinion of Horsman or cause him to take any action in relation to Horsman. *Id.* ¶9. Rather, Zigler had already named Horsman in the lawsuit and alleged Horsman falsely promoted LGBCoin as part of the pump-and-dump scheme. *Id.* Zigler also received an email from Jefferson in Illinois on August 24, 2023. *Id.* ¶10. Zigler testified that it did not change his opinion of Horsman or cause him to take any action in relation to Horsman. *Id.* ¶12.

41.    Despite specific discovery requests, Horsman refused to produce evidence that anyone viewed the LGBCoin Article or its republications within Florida. ECF 85-22 at Interrogatories 1-2, 11-12, 14-15. Horsman also refused to produce evidence of injury he suffered in Florida as a result of the LGBCoin Article or its republications. *Id.* at Interrogatories 5-6.

## STANDARD OF REVIEW

To succeed on summary judgment, a party must show "there is no genuine issue as to any material fact" and it "is entitled to judgment as a matter of law." *Gilder-Lucas v. Garland*, 2024 WL 2151719, at *1 (N.D. Fla. Apr. 5, 2024) (Winsor, J.) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A

defendant can meet its burden by showing the plaintiff "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* (quoting *Celotex*, 477 U.S. at 323). If the defendant does, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of [plaintiff's] case necessarily renders all other facts immaterial." *Id.* (quoting *Celotex*, 477 U.S. at 323).

## ARGUMENT

### I.   Summary Judgment Should Be Granted on the Defamation Claims Because Horsman Cannot Establish Essential Elements

Horsman sues Jefferson for defamation *per se* and defamation by implication for (1) the Remcoda Article and its republications, (2) the LGBCoin Article and its republications, (3) and Gorman's Email. ECF 29 ¶¶62-91.[7] Summary judgment is warranted on these claims because Horsman cannot establish the essential elements of publication or falsity.

#### A.   Horsman Cannot Establish Jefferson Published Any False Statement Because Gorman Was Not His Agent

Horsman cannot establish the element of publication. A claim for defamation—regardless of whether it is *per se* or by implication—requires

---

[7] Horsman brings the same claims against Jefferson for alleged defamatory statements he made directly to Gorman. ECF 29 ¶¶64, 71, 78, 86. Because Jefferson is alleged to have made those statements in his own capacity, they are addressed separately in Section I.B.5, below.

publication of a defamatory statement to a third party. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). "Because the publication of a statement is a necessary element in a defamation action, only one who publishes can be subject to this form of tort liability." *Zimmerman v. Buttigieg*, 521 F. Supp. 3d 1197, 1212 (M.D. Fla. 2021) (quoting *Doe v. Am. Online, Inc.*, 783 So. 2d 1010, 1017 (Fla. 2001)). Except for Jefferson's communications to Gorman (discussed below), it is undisputed that Gorman published or sought republication of all the alleged defamatory statements. SF ¶¶21-24, 34-39. To hold Jefferson liable for these publications, Horsman must prove his allegation that Gorman acted as Jefferson's agent. ECF 29 ¶61 ("At all relevant times, the USA Herald's operator acted as an agent for both Jefferson and Andrews.").[8]

---

[8] For an individual posting content on AOL "chat rooms," the Florida Supreme Court stated in *Doe* that AOL could be considered a publisher under 47 U.S.C.§ 230 because "[e]very one who takes part in the publication . . . is charged with publication." 783 So. 2d at 1017 (quoting Keeton et al., *Prosser and Keeton on the Law of Torts* § 113, at 799 (5th ed. 1984)). The Court, and the treatise it relied on, were considering entities that make their facilities available for disseminating content—"the owner, editor, printer, vendor, or even carrier of a newspaper." Keeton, § 113, at 799. Neither espoused a broader rule that an individual who provides public records to a newspaper "takes part in the publication" where the newspaper **independently** researches, writes, and publishes an article after investigating those records. Instead, general agency principles should apply to determine whether such an individual can be liable for the newspaper's alleged defamation. *See, e.g.*, *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1120-21 (S.D. Fla. 2021) (analyzing defamation liability under general agency principles).

In Florida, "[t]he essential elements necessary to establish an actual agency relationship are (1) acknowledgment by the principal that the agent will act for him, (2) acceptance by the agent of the undertaking, and (3) control by the principal over the agent's actions." *Taylor Grp., Inc. v. Indus. Distribs. Int'l Co.*, 859 F. App'x 439, 448 (11th Cir. 2021) (quoting *Roman v. Bogle*, 113 So. 3d 1011, 1016 (Fla. 5th DCA 2013)). Horsman cannot establish an agency relationship between Jefferson and Gorman because the "key element in establishing actual agency" is lacking: control by Jefferson over the actions of Gorman. *Hickman v. Barclay's Int'l Realty, Inc.*, 5 So. 3d 804, 806 (Fla. Dist. Ct. App. 2009).

In determining whether control exists, the inquiry focuses not on whether there was "actual control" but rather whether there was a "right of control." *Id.* As a result, "an agency relationship does not exist unless the principal has a right to control the operative details of the agent's work." *Orlinsky v. Patraka*, 971 So. 2d 796, 800 (Fla. Dist. Ct. App. 2007). Mere compensation is "irrelevant" to this element because it only "evince[s] control over the ends of the job, not the means of it." *Noshirvan v. Couture*, 2025 WL 1769669, at *19 (M.D. Fla. June 26, 2025).

This issue is properly decided at summary judgment "where the evidence is capable of but one determination and there is no evidentiary question for the jury to resolve." *Johnson v. Unique Vacations, Inc.*, 498 F. App'x 892, 894 n.3 (11th Cir. 2012) (affirming summary judgment where plaintiff "failed to show sufficient

evidence" of agency relationship); *Cabrera v. GEICO*, 452 F. Supp. 3d 1305, 1318 (S.D. Fla. 2014) (granting summary judgment on agency theory of liability because there was no evidence company "controlled, or had the right to control, [collection agency] in any manner").

The record evidence shows Jefferson had no right to control, and did not control, the operative details of Gorman's work. At all relevant times, Gorman was solely responsible for:

(i)    Researching, writing, and publishing the Articles on the USA Herald's website, including selecting their content and headlines and deciding to publish them under pennames;

(ii)   Emailing Zigler on behalf of the USA Herald; and

(iii)  Contacting other media outlets about republication of the Articles.[9]

SF ¶¶21-24, 34-39. The evidence supports one inescapable conclusion: there was no agency relationship between Jefferson and Gorman because Jefferson had no right of control over Gorman and his independent news company for these publications. As a result, the defamation claims should be dismissed because Horsman cannot establish Jefferson published these statements. *See Noshirvan*, 2025 WL 1769669, at *18-19 (dismissing agency theory of defamation where plaintiff failed to

---

[9] The alleged republications also fail this element because "[a]part from a few outlier cases, Florida law does not recognize defamation claims based on third-party republication." *Markle v. Markle*, 2023 WL 2711341, at *7 (M.D. Fla. Mar. 30, 2023).

sufficiently allege control by defendants over paid "representative, marketing, social media, and online reputation manager" that made defamatory statements).

### B. Horsman Cannot Establish Any False Statement or False Implication Was Published

Horsman also cannot establish the element of falsity. "A false statement of fact is the <u>sine qua non</u> for recovery in a defamation action." *Turner v. Wells*, 879 F.3d 1254, 1267 (11th Cir. 2018) (emphasis in original); *accord Rapp*, 997 So. 2d at 1106. A statement is not actionable as "pure opinion" where a party "makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." *Turner*, 879 F.3d at 1262. Defamation *per se* and defamation by implication are variations of defamation, with the former requiring a false statement and the latter requiring a false impression. *Reed v. Chamblee*, 2023 WL 6292578, at *8 (M.D. Fla. Sept. 27, 2023), *aff'd sub nom.*, 2025 WL 1874638 (11th Cir. July 8, 2025). Horsman can establish neither a false statement nor a false impression for any publication.

### 1. The Remcoda Article

The Remcoda Article contains no false statement or false implication. Horsman claims the original headline and two statements are defamatory *per se*:

(1)   "Patrick Horsman and partner Russel Gross involvement in $3.7M **alleged** fraud";

(2)   "A lawsuit between Remcoda, LLC, and defendants Ridge Hill Trading (PTY) LTD, Ataraxia Capital Partners PTY LTD, Russel Gross, and the involvement of his partner, Patrick Horsman, is ever evolving"; and

(3)    "Russel Gross, and his business partner Patrick Horsman's company Unicorn . . . were **allegedly** working with the defendants from the start when they introduced Remcoda to Ridge Hill as part of their overall **alleged** scheme. Russel Gross and Horsman's company **allegedly** received payment of their fee from Remcoda's funds that the defendants wrongfully withheld."

SF ¶18. Horsman claims the revised headline, "Russell Gross of Unicorn Health, owned by Patrick Horsman, sued for alleged 3.7M fraud," is also defamatory. *Id.* ¶19. These statements are not false because they are substantially true. *Clowdus v. Am. Airlines, Inc.*, 2022 WL 18458134, at *3 (S.D. Fla. Oct. 12, 2022) ("Falsity exists only if 'the publication is substantially and materially false, not just if it is technically false.'" (citation omitted)), *aff'd*, 2023 WL 5011731 (11th Cir. Aug. 7, 2023).

Before the Remcoda Article was published, the *Remcoda* plaintiff alleged a scheme in which the defendants, including Gross, fraudulently induced the plaintiff to buy PPE during the COVID-19 pandemic. SF ¶¶9-10, 12. Gross explained in numerous filings that Unicorn was his company, described his role as an agent for Unicorn in brokering sales of PPE for the plaintiff, identified Horsman as a "Unicorn partner," and submitted evidence reflecting Horsman's dealings with other defendants in the action through his "PH@Unicorn-Health.com" email address. *Id.* ¶¶11, 13-14. Horsman was a partner and owner of Unicorn. *Id.* ¶15.

That this information does not all appear in the Second Amended Complaint, as Horsman contends, is irrelevant because the Remcoda Article does not refer to

any specific filing. *Id.* ¶18. The Remcoda Article's statements were substantially true because they accurately recited information from publicly available filings in *Remcoda* and correctly identified Horsman as a partner and owner of Unicorn.

For the original headline, the Court observed at the pleading stage it was "at least plausible that a reader would view the headline as a proclamation about Horsman's conduct and not merely a litigation summary." ECF 63 at 5. But on the merits, "a publication must be considered in its totality." *Byrd v. Hustler Mag., Inc.*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983). The Court "must consider all the words used, not merely a particular phrase or sentence. . . . Articles are to be considered with their illustrations; pictures are to be viewed with their captions; *stories are to be read with their headlines*." *Id.* (emphasis added); *accord Parekh v. CBS Corp.*, 820 F. App'x 827, 835 (11th Cir. 2020); *Folta v. New York Times Co.*, 2019 WL 1486776, at *10 (N.D. Fla. Feb. 27, 2019). Here, the Remcoda Article contextualizes its headline by making clear to any reader that Horsman's involvement arose from allegations that his business partner Gross and their company Unicorn participated in the alleged fraud (which was a substantially true description of the filings in *Remcoda*). As a result, the original headline, read in context with the full story, is not substantially and materially false.

Horsman alleges the statement that the lawsuit was "ever evolving" was false. ECF 29 ¶39. This statement is not actionable as an opinion. *Turner v. Wells*, 198 F.

Supp. 3d 1355, 1366 (S.D. Fla. July 29, 2016) ("Commentary or opinion based on facts that are set forth in the [allegedly defamatory communication] or which are otherwise known or available to the reader or listener are not the stuff of libel."), *aff'd*, 879 F.3d 1254 (11th Cir. 2018). It is also not actionable because it is not defamatory toward Horsman and, given the status of the case when the Remcoda Article was published, SF ¶20, it was substantially true.

The Remcoda Article also contains no false implication to support a defamation by implication claim. Horsman alleges it:

(i)    Juxtaposes facts in a manner that falsely implies Horsman was involved in the PPE scheme in *Remcoda*; and

(ii)   Falsely implies he was a party in *Remcoda* by omitting he was not named as a party.

ECF 29 ¶80. Neither is true.

The Remcoda Article does not juxtapose facts to falsely imply Horsman was involved in the PPE scheme at issue in *Remcoda*. It accurately reports on public filings in *Remcoda* indicating Horsman's business partner Gross, their company Unicorn, and even Horsman himself were, in fact, involved in the alleged scheme, as reflected in numerous filings in that case. SF ¶¶11, 13-14. And it does not falsely imply Horsman was a party in *Remcoda* by omitting that he was not named. It specifically identifies the named parties and Horsman is not one of them. *Id.* ¶18. ("A lawsuit between **plaintiff** Remcoda, LLC, **and defendants** Ridge Hill Trading

24

(PTY) LTD, Ataraxia Capital Partners PTY LTD, Russel Gross, **and the involvement of his partner**, Patrick Horsman, is ever evolving." (emphasis added)). That statement, read together with the rest of the Remcoda Article discussing allegations against Gross and other defendants, makes clear Horsman was not a named party. The Remcoda Article therefore contains no false implication because the "gist" of it is true: *Remcoda* concerns allegations of fraud relating to Horsman's business partner and company; and Horsman's involvement in the underlying facts was reflected in the case filings. *Turner*, 198 F. Supp. 3d at 1376 (for defamation by implication, "[t]he inquiry turns on whether the 'gist' of the publication is false" and "[t]he gist of any statement within a publication . . . is found only by reference to the entire context.").

The absence of falsity in the Remcoda Article is further underscored by the fact that it uses the terms "alleged" and "allegedly," which are qualifying terms indicating it is summarizing judicial proceedings rather than asserting definitive facts. *See Wallis v. Cueto*, 2017 WL 6388914, at *5 (S.D. Fla. Aug. 9, 2017) ("[T]he challenged factual statements include the phrases, 'the suit alleges,' or 'the suit named.' Consequently, to plead falsity, Plaintiffs must allege that the [] complaint does not say what the Article attributes to it.").

### 2.    The LGBCoin Article

The LGBCoin Article likewise contains no false statement or false

implication. Horsman claims the headline and two statements are defamatory *per se*:

(i)     "Patrick Horsman & Business Partner Thomas McLaughlin Wrapped up in LGBCoin Class Action Lawsuit."

(ii)    "Thomas McLaughlin, co-founder of LGBCoin and business partners with Patrick Horsman at Coral Defi (Coral Capital Management, LLC), is **accused** of fraud along with unjust enrichment in a 104 page class action lawsuit filed on behalf of investors that lost money in an **alleged** cryptocurrency scam."

(iii)   "The class action lawsuit **alleges** that Coral Defi, Coral Capital LLC, Coral Capital Management LLC, all owned by Patrick Horsman (he is listed at the Managing Member/Co-Founder), defrauded investors in the LGBCoin Cryptocurrency Pump & Dump scheme and attempted to hide their role through a complex web of transactions."

SF ¶33. Horsman has the burden of proof and failed to produce a full copy of the LGBCoin Article. Slocum Decl. ¶22. Horsman's claim should be dismissed on that basis alone. Even so, these statements, as alleged, are not defamatory because they are substantially true.

Indeed, the Court found at the pleading stage that the LGBCoin Article "includes some arguably fair descriptions of allegations in the lawsuit's third amended complaint." ECF 63 at 6. That is indisputably true. As explained above, Horsman was alleged to be a co-founder and/or executive of the Coral Entities along with McLaughlin in the Second Amended Complaint, each of which was named as a defendant for their alleged involvement in the cryptocurrency scheme. SF ¶¶27-28. And Horsman himself was named as a defendant in the Third Amended Complaint—filed over a month before the LGBCoin Article—and alleged to be

personally involved in the cryptocurrency scheme. *Id.* ¶29. In fact, before the LGBCoin Article was published, the Zigler law firm issued a press release making similar statements about Horsman's involvement. *Id.* ¶30.

While Horsman complains the LGBCoin Article incorrectly attributes these statements to the Second Amended Complaint, that only means this attribution is "technically false"; it does not mean the statements themselves are "substantially and materially false" because they accurately reflect the allegations in *LGBCoin* before the LGBCoin Article was published. *Clowdus*, 2022 WL 18458134, at \*3; *see* ECF 63 at 6 ("It is unlikely, for example, that it would be materially false to attribute allegations to a second amended complaint if they appeared only in a third amended complaint."). Accordingly, the LGBCoin Article's statements alleged to be defamatory were not false because they accurately recited information from publicly available filings in *LGBCoin*.

The LGBCoin Article also contains no false implication. Horsman alleges it:

(i)    Employs deceptive tactics to falsely implicate Horsman in a fraudulent scheme connected to *LGBCoin*; and

(ii)    Implies Plaintiff was named in *LGBCoin*'s Second Amended Complaint while omitting that he was not.

ECF 29 ¶88. He cannot sustain his claim based on these alleged implications.

Horsman was implicated in the fraudulent scheme and named as a defendant well before the LGBCoin Article was published. SF ¶¶27-30. That the LGBCoin

Article may imply he was named in the Second Amended Complaint, rather than the Third Amended Complaint, does not change the outcome because the "gist" of the implication is the same: Horsman was named as a defendant and alleged to be involved in the fraudulent scheme in *LGBCoin*. The LGBCoin Article therefore contains no false implication. *Turner*, 198 F. Supp. 3d at 1376.

And like the Remcoda Article, the absence of falsity in the LGBCoin Article is underscored by the fact that it uses the qualifying terms "accused," "alleges," and "allegedly" to indicate it is summarizing judicial proceedings. *Wallis*, 2017 WL 6388914, at *5.

### 3.    Gorman's Email

Gorman's Email contains no actionable defamatory statement. Horsman claims Gorman's Email was defamatory because it stated he was involved in "a number of scams." ECF 29 ¶52. This is wrong as a matter of law for two reasons.

*First*, Gorman's use of "scams" is rhetorical hyperbole that is not actionable as a false statement. *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002) (statement is "not [] actionable when the alleged defamatory statement is based on non-literal assertions of fact" or "rhetorical hyperbole that cannot reasonably be interpreted as stating actual facts about an individual."). That is because the word "scam" is incapable of a precise meaning. *Akai Custom Guns, LLC v. KKM Precision, Inc.*, 707 F. Supp. 3d 1273, 1296 (S.D. Fla. 2023) (statements that plaintiffs "were perpetrating

a scam . . . cannot be the basis for [] defamation claims . . . because these statements represent non-literal assertions of fact and rhetorical hyperbole."); *Santilli v. Van Erp*, 2018 WL 2172554, at *5–6 (M.D. Fla. Apr. 20, 2018) ("cunning scam artist" constituted opinion because that statement is not objective or falsifiable); *McCabe v. Rattiner*, 814 F.2d 839, 842 (1st Cir. 1987) ("The lack of precision makes the assertion 'X is a scam' incapable of being proven true or false"). Horsman cannot show Gorman's use of "scams" constitutes an actionable false statement.

*Second*, Gorman's Email is not defamatory because it did not harm Horsman's reputation. Florida law is clear that a statement is defamatory if it "tends to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated . . . exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Rapp*, 997 So. 2d at 1108-09 (Fla. 2008). There is no evidence that any third party other than Zigler saw Gorman's Email until Horsman quoted it in this lawsuit. As a result, the only relevant inquiry is whether Gorman's Email lowered Horsman's reputation in the estimation of Zigler. It did not. Zigler testified the email did not change his opinion of Horsman or cause him to take any action against Horsman—indeed, Zigler had already named Horsman as a defendant in *LGBCoin* when Zigler received Gorman's Email. SF ¶40. For this additional reason, Gorman's Email contains no actionable statements to support

Horsman's defamation claims.[10]

### 4. Republications by Other Media Outlets

Horsman claims Gorman had other media outlets republish the Articles. ECF 29 ¶¶64, 71, 78, 86. Because there were no false statements or implications in the Articles, the republications—for which Horsman has not identified any different false statement or implication—also lack proof of this essential element.

### 5. Jefferson's Communications to Gorman

Finally, Horsman alleges Jefferson made unspecified defamatory statements to Gorman. ECF 29 ¶¶64, 71, 78, 86. When asked to identify all statements Horsman alleges to constitute defamation in the State of Florida, Horsman was unwilling or unable to respond. ECF 85-22 at Interrogatory 14. Horsman has therefore failed to carry his burden of proof that any alleged defamatory statements were ever made. *Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328-29 (S.D. Fla. 2012) ("In the absence of the necessary facts—when the statements were made—and an adequate description of the statements, the defamation claim as it relates to [defendant's] statements must be dismissed[.]"); *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 834 (Fla. Dist. Ct. App. 2007) (entering judgment for defendant because

---

[10] Jefferson's email to Zigler was not defamatory, either. Zigler Decl. ¶10. The only statement relative to Horsman—he is "a real Gem"—is opinion and rhetorical hyperbole and did not change Zigler's opinion of Horsman or cause him to take any action against Horsman. *Id.* ¶¶11-12.

"[n]either the complaint nor the evidence presented at trial identifies the precise statements alleged to have been defamatory").

Jefferson made no false statements to Gorman. Jefferson merely provided Gorman with public court documents and requested Gorman write articles about them. SF ¶¶16, 31. It is a foundational principle of defamation law that the transmission or publication of information in public records is not defamatory. *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495, (1975) ("[T]he States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection."). As a result, Horsman cannot show Jefferson made any false statement to Gorman by providing him with public records from *Remcoda* and *LGBCoin*.

## II. Summary Judgment Should Be Granted on the Non-Defamation Claims Because Horsman Cannot Establish the Essential Elements

Horsman brings two non-defamation claims against Jefferson: civil conspiracy and aiding and abetting. ECF 29 ¶¶92-102. As a threshold matter, both fail because Horsman cannot establish his defamation claims. *Corsi*, 519 F. Supp. 3d at 1120 n.6 ("There being no defamation—the gist of the defamation conspiracy—there can be no conspiracy claim."); *Hickman v. Variable Annuity Life Ins.*, 2019 WL 5802661, at *3 (M.D. Fla. June 5, 2019) (aiding and abetting claim "fails for the same reasons, i.e., there is no underlying tort remaining in this case.");

*see also* ECF 63 at 7 ("Jefferson is correct that both claims require some underlying tortious conduct").

These claims also fail on other essential elements. For civil conspiracy, Horsman must prove "an agreement" between Jefferson and Andrews to do an "unlawful act" (here, defamation). *Restless Media GmbH v. Johnson*, 2024 WL 5433129, at *5 (S.D. Fla. Dec. 4, 2024) (citation omitted). Horsman cannot prove this because there was no such agreement. SF ¶4. Summary judgment should be granted on the civil conspiracy claim. *Restless,* 2024 WL 5433129, at *5-7 (granting summary judgment on civil conspiracy claim where there was no evidence of agreement).

The same is true for aiding and abetting. Horsman must prove, in addition to an underlying violation by Andrews, that Jefferson knew of it and substantially assisted in its accomplishment. *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012). There was no underlying violation by Andrews because there was no defamation. Indeed, Andrews, whom Horsman voluntarily dismissed from this case, had no responsibility for writing the publications at issue and did not request or instruct Gorman make those publications. SF ¶¶17, 23, 32, 36. Jefferson did not know of any violation by Andrews (because there was none) and did not substantially assist in its accomplishment (because there was no violation to assist). Summary judgment should be granted on the aiding and abetting claim. *Restless,*

2024 WL 5433129, at *5 (granting summary judgment on aiding and abetting claim

where there was no evidence defendant knew of underlying violation or substantially

assisted in its accomplishment).

### III. Summary Judgment Should Be Granted on All Claims for Lack of Personal Jurisdiction

Because Horsman cannot prove a tort occurred, as required by Florida's long-

arm statute, Fla. Stat. § 48.193(1)(a)(2), summary judgment is appropriate on

Jefferson's affirmative defense of lack of personal jurisdiction. ECF 66 at 17. *See,*

*e.g., Pearson v. Deutsche Bank AG*, 2023 WL 2610271, at *31 (S.D. Fla. Mar. 23,

2023) (granting summary judgment for lack of personal jurisdiction where evidence

did not support application of long-arm statute); *Santilli v. van Erp*, 2018 WL

3956309, at *3 (M.D. Fla. Aug. 17, 2018) (granting summary judgment for lack of

personal jurisdiction where evidence showed defendant had no involvement in the

defamatory publications at issue).[11]

This Court lacks personal jurisdiction over the defamation claims for another

reason: there is no evidence that anyone accessed the publications in Florida or that

Horsman suffered an injury in Florida. To establish specific jurisdiction over a non-

---

[11] The Court explained, "Horsman's position on general jurisdiction is a difficult one" because this does not appear to be an "exceptional case" where Jefferson, as a non-resident, can be deemed to be at home in this state. ECF 63 at 2-3 n.1. Nothing has changed since to transform this case into an exceptional one. The relevant inquiry remains whether specific jurisdiction is appropriate.

resident for a defamation claim, a plaintiff must show the statements were accessed by a third party in Florida. *See Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1215 (Fla. 2010). Horsman has not done so:

- For the Articles, there is no evidence anyone accessed them in Florida;

- For Gorman's Email, Zigler received and viewed it in Illinois;

- For the republications by non-Florida based companies, there is no evidence anyone accessed them in Florida; and

- For Jefferson's communications to Gorman, there is no evidence that Gorman accessed them in Florida.

SF ¶¶25, 40-41. Because Horsman cannot show these publications were accessed in Florida, he must show they caused injury in Florida for jurisdiction to attach. *Santilli*, 2018 WL 3956309, at *2 (non-resident defendant subject to jurisdiction for defamation if it causes injury in Florida). Horsman has failed to come forward with any evidence he suffered injury in Florida or did business in Florida. SF ¶¶25, 41.

There is also no evidence to support specific jurisdiction under an agency theory based on Andrews' conduct. While Andrews is a Florida resident, Andrews had no agreement with Jefferson to defame Horsman, were not responsible for writing the publications at issue, and did not request or instruct Gorman make those publications individually or on behalf of Jefferson. SF ¶¶4, 17, 23, 32, 36. Horsman has no contrary evidence and conceded as much by voluntarily dismissing Andrews. That defeats specific jurisdiction on civil conspiracy and aiding and abetting because Andrews committed no tortious act in Florida in agreement with, on behalf of, or

with support from Jefferson.

## **CONCLUSION**

There are no genuine disputes as to any material fact, and Jefferson is entitled to judgment as a matter of law on each claim. The Court should grant summary judgment for Jefferson on all claims, enter judgment as a matter of law, and dismiss the action with prejudice.

**CERTIFICATE OF COMPLIANCE OF LOCAL RULE 7.1(F)**

I HEREBY CERTIFY that, in accordance with Local Rules 7.1(F) and 56.1(F) of the United States District Court for the Northern District of Florida, the foregoing motion and supporting memorandum of law contain 7,996 words.

**CERTIFICATE OF ATTORNEY CONFERENCE - NOT REQUIRED**

I HEREBY CERTIFY that, pursuant to Local Rule 7.1(D), no attorney conference is required because this motion would determine the outcome of a case or claim.

Dated: February 5, 2026                    Respectfully submitted,


                                            **WOLLMUTH MAHER &
                                            DEUTSCH LLP**
                                            500 Fifth Avenue
                                            New York, New York 10110
                                            Phone: (212) 382-3300

                                            */s/ Joshua M. Slocum*
                                            David H. Wollmuth (*pro hac vice*)
                                            Joshua M. Slocum (*pro hac vice*)
                                            Maxwell G. Dillan (*pro hac vice*)
                                            dwollmuth@wmd-law.com
                                            jslocum@wmd-law.com
                                            mdillan@wmd-law.com

                                            and

                                            **GREENBERG TRAURIG, P.A.**
                                            David C. Ashburn
                                            Fla. Bar No. 0708046
                                            101 East College Avenue
                                            Post Office Drawer 1838
                                            Tallahassee, FL 32301
                                            Phone 850-222-6891
                                            Fax 850-521-1379
                                            ashburnd@gtlaw.com

                                            ***Attorneys for Defendant Brett
                                            Jefferson***